UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------x

SAFECO INSURANCE COMPANY
OF AMERICA,

                        Plaintiff,

-against-

M.E.S., INC., et al.,

                        Defendants.
----------------------------------------------------------------x

09-cv-3312 (ARR) (ALC)

NOT FOR PRINT OR
ELECTRONIC
PUBLICATION

ORDER

ROSS, United States District Judge:

On July 30, 2009, plaintiff Safeco Insurance Company of America ("Safeco" or "plaintiff") filed a complaint in the instant case against defendants M.E.S., Inc. ("MES"), M.C.E.S., Inc. ("MCES"), George Makhoul, Hirani Engineering & Land Surveying, P.C., Hirani/MES JV, Jitendra S. Hirani, and Sarita Hirani. The complaint asserts multiple claims arising from written indemnity agreements among the parties.

On May 18, 2010, I granted plaintiff's motion for partial summary judgment with respect to its right to collateral security, and plaintiff's motion for access to defendants' books and records. In that Order, I determined that defendants' allegations of plaintiff's bad faith in bringing about the defaults on the underlying construction contracts were to be addressed at the ultimate liability stage, and were thus irrelevant to the enforcement of the collateral security provision.[1] Plaintiff's motion with respect to its assignment and attorney-in-fact clauses was denied without prejudice. While plaintiff's motion was granted with respect to its right to

---

[1] Specifically, I stated that "[m]y finding with respect to collateral security does not foreclose a later assertion of bad faith as to the ultimate issue of liability under the agreements."

1

collateral security, I reserved judgment on the amount of the collateral security until the plaintiff provided support for the reasonableness of its demand. (May 18, 2010 Order, Dkt. No. 80 at 27.) Defendants subsequently sought a stay pending appeal in the Court of Appeals. I denied defendants' motion on June 7, 2010, but granted a limited stay for twenty-one days so that defendants could seek a further stay in the Court of Appeals. (Dkt. No. 83.) The Second Circuit subsequently stayed the May 18, 2010 Order pending a determination on defendants' motion for a stay, (Dkt. No. 87), but ultimately denied the stay and dismissed the appeal for lack of jurisdiction. (Dkt. No. 101 at 2.)

Defendants now move for reconsideration of the May 18, 2010 Order, arguing that recent document production shows that plaintiff's collateral security demand is not based on estimated loss exposure, but rather on "actual claimed losses." (Sept. 2, 2010 Letter, Dkt. No. 91 at 1.) Plaintiff states that on August 24, 2010, it provided a renewed collateral demand to the defendants seeking $13,325,000.00 in collateral from the MES Defendants, and $8,800,000 from the Hirani Defendants. Plaintiff states that it is entitled to the full amount of the collateral sought despite the fact that it has made payments in connection with the completion of the bonded projects, and disputes the amount of "actual" losses incurred. Plaintiff seeks an order: (1) establishing the amount of collateral and setting a deadline by which MES and Hirani Defendants must comply; and (2) providing for a formal assignment of defendant's affirmative claims in the event defendants fail to post collateral by the court's deadline.

## DISCUSSION

The terms of parties' indemnity agreements make clear that they have distinguished actual losses, which trigger the surety's indemnification right, from claims yet to be paid or

2

anticipated, which are included in the agreements' collateral security provisions. This agreement among the parties is wholly consistent with the way courts have themselves distinguished between the remedy of indemnification under an agreement and the remedy of specific performance to enforce a collateral security provision. Thus, for the reasons discussed below, I find that actually paid claims are to be subtracted from the August 24, 2010 collateral security demand made on defendants.

I. The Parties' Indemnity Agreements

As discussed in the Order dated May 18, 2010, the Agreements at issue state:

INDEMNITY TO SURETY: Undersigned agree to pay to Surety upon demand:

1. All loss, costs and expenses of whatsoever kind and nature, including court costs, reasonable attorney fees . . . consultant fees, investigative costs, and any other losses, costs or expenses incurred by Surety by reason of having executed any Bond, or incurred by it on account of any Default under this agreement by any of the Undersigned. . . .

2. An amount sufficient to discharge any claim made against Surety on any Bond. This sum may be used by Surety to pay such claim or be held by Surety as collateral security against loss on any bond. . . .

(Aff. of Caryn Mohan-Maxfield, Ex. A, ("Agreement"), Dkt. No. 64-4 at 1.) Paragraph five of the "General Provisions" section of the agreements also provides that:

5. The undersigned will, on request of Surety, procure the discharge of Surety from any Bond and all liability by reason thereof. If such discharge is unattainable, the Undersigned will, if requested by Surety, either deposit collateral with Surety, acceptable to Surety, sufficient to cover all exposure under such bond or bonds, or make provisions acceptable to Surety for the funding of the bonded obligation(s).

(Agreement at 2) (emphasis added).

Safeco argues that these agreements "provide that Safeco can hold the collateral in trust to cover anticipated losses or apply it to present losses." (Sept. 7, 2010 Letter, Dkt. No. 93.) However, such a reading does not follow from the terms of the agreement.

3

Paragraph 1 of the Indemnity to Surety section relates to indemnification, and requires the defendants to pay upon demand for all loss, costs and expenses of whatsoever kind and nature. (Agreement, "Indemnity to Surety" at ¶ 1.) Paragraph 2 of that section, which Safeco acknowledges refers to collateral security, (Mem. in Support of Partial Summ. J. at 10), does not use the term loss, but rather "claim made" against the Surety. (Agreement, "Indemnity to Surety" at ¶ 2.) The fact that the second sentence of Paragraph 2 states that the "sum may be used by Surety to pay such claim" indicates that "claim" refers to something not yet paid. Additionally, that same sentence states that collateral security may be "*held* by Surety as collateral security against loss" (emphasis) indicates that collateral security is envisioned to be used against future losses, not as reimbursement for paid claims. Thus, the parties' own agreement makes a distinction between actual loss, such as a payment already made, which would require indemnification, and an unpaid "claim" or future loss, which would entitle the Surety to collect collateral security in that amount to be used to pay the claim.

Paragraph 5 of the General Provisions provides that, upon demand, the defendants are required to post collateral security sufficient to cover all "exposure" under the bond in the event that discharge is unattainable. "Exposure" is not a term that is defined in the agreement, but that does not render the term ambiguous. Whether a contract is clear or ambiguous is a question of law. Kass v. Kass, 91 N.Y.2d 554, 566 (1998). "Ambiguity is determined by looking within the four corners of the document, not to outside sources." Id. "An ambiguous term is one that is reasonably susceptible to more than one reading, or one as to which reasonable minds could differ." Allianz Ins. Co. v. Lerner, 416 F.3d 109, 114 (2d Cir. 2005) (citing Van Wagner Adver. Corp. v. S & M Enters., 67 N.Y.2d 186, 191 (1986). The Circuit has also explained that "[c]ontract language is not ambiguous if it has a definite and precise meaning, unattended by

4

danger of misconception in the purport of the [contract] itself, and concerning which there is no reasonable basis for a difference of opinion." Hugo Boss Fashions, Inc. v. Federal Ins. Co., 252 F.3d 608, 617 (2d Cir. 2001) (citing Hunt Ltd. v. Lifschultz Fast Freight, Inc., 889 F.2d 1274, 1277 (2d Cir. 1989)).

Courts begin with the terms of the contract itself to see if the intent of the parties can be gleaned without resort to extrinsic evidence. Id. (citing W.W.W. Assocs., Inc. v. Giancontieri, 77 N.Y.2d 157, 565 N.Y.S.2d 440, 566 N.E.2d 639, 642 (1990) ("A familiar and eminently sensible proposition of law is that, when parties set down their agreement in a clear, complete document, their writing should as a rule be enforced according to its terms.")).

Here, as discussed above, one of the two provisions dealing with collateral security, Paragraph 2 of the Indemnity to Surety section, clearly specifies that collateral security is to be provided by the indemnitor for unpaid claims, not for existing losses already incurred. In light of this clarity, the subsequent use of the term "exposure" in Paragraph 5 of the General Provisions section introduces no ambiguity into the agreement concerning the parties' intent as to the purpose of collateral security, as it is wholly consistent with the intent of the parties as expressed in Paragraph 2. The term "exposure" in Paragraph 5 unambiguously refers to the risk of loss or future loss faced by Safeco, not to losses already sustained, and the amount of such "exposure," if reasonable, is to be ascertained in calculating collateral security.

## II. The Parties' Agreements are Consistent with Courts' Interpretations of Indemnity Agreements

The unambiguous language of the parties' agreements as to when indemnification is triggered and when collateral security is required is drawn into focus when examined through the lens of existing cases. The cases discussed below examine the available remedies to sureties

under bargained for indemnification agreements, and, as applied here, are consistent with the parties' agreement that as to claims already paid, indemnification is the proper and only remedy. First, the cases are clear that specific performance to enforce a collateral security provision is available for losses under a bond that are uncertain but anticipated at some point in the future. At the other end of the spectrum, the case law confirms that where an obligation is certain and paid, the surety has an adequate remedy at law, that is, enforcing the indemnification clause of the bargained for agreement, and thus specific performance under a collateral security provision is unavailable. Finally, where some claims have been paid and some remain unpaid, courts have specifically distinguished between indemnification and collateral security – that is, the only remedy available for paid claims is the surety's indemnification right, while the surety is entitled to collateral security for unpaid or future claims.

More specifically, the case law is clear, and the parties do not dispute, that *expected* and *anticipated* claims that may arise under an indemnity agreement fall under collateral security provisions of the agreement, as they do not give rise to a right to seek an award for indemnification. The Second Circuit has recognized that where liability of a surety under an indemnification agreement has not yet been determined but claims were expected, the surety has no legal remedy under the indemnification provision of the agreement for an indemnification award, but it does have an equitable remedy for specific performance of a collateral security provision of the agreement. American Motorists Ins. Co. v. United Furnace Co., Inc., 876 F.2d 293, 300 (2d Cir. 1989) ("payment by [defendant] of collateral security would be held in trust by [plaintiff] while . . . claims are pending"); see also La Mirada Products Co., Inc. v. Wassall PLC, 823 F.Supp. 138, 141 (S.D.N.Y. 1993) (lack of legal remedy where damages uncertain); BIB Constr. Co. v. Fireman's Ins. Co. of Newark, N.J., 214 A.D.2d 521, 523 (N.Y. App. Div. 1995)

("The damage resulting from the failure to give security is not ascertainable, and the legal remedy is therefore inadequate.").

By contrast, where there is no question as to the full amount of loss incurred, and a sum is made certain and *paid* by the time the surety seeks relief, courts have found indemnification to be the only proper remedy. In Commercial Ins. Co. v. Pacific-Peru Construction Corp., a dispute arose between the defendant and the entity with which defendant contracted to construct public housing. 558 F.2d at 950. A Peruvian judge entered a judgment against the defendant, who refused to pay. Id. at 951. A Peruvian court then attached the bond of one surety, El Pacifico, which paid the award. Id. Plaintiff, CIC, then *actually* reimbursed El Pacifico under a reinsurance agreement, and subsequently sought indemnification from defendant under the indemnity agreements and reinsurance contract for the amount *actually* paid. Id. The Ninth Circuit affirmed the district court's grant of summary judgment to CIC, but held that the district court's "specific enforcement of the collateral security provisions . . . was erroneous. CIC had an adequate remedy at law, and specific performance was therefore not available. . . . CIC may sue, as it has here, for money damages for breach of the indemnity clause in the indemnity agreement." Id. at 954. The court further held:

> There is nothing uncertain about the liability that El Pacifico or CIC incurred under their respective surety and reinsurance agreements. The sum was made certain by a Peruvian judgment; and the amount of interest can be determined by a simply mathematical computations. Under these circumstances, no resort to equitable remedies is necessary to protect appellee and specific performance is unavailable.

Id. at 955.

Other authorities address situations, like the one at hand, where the surety has actually made *some* payments, and also expects additional future losses. These cases have made the distinction, much like the parties themselves have, between the remedy of indemnification for

7

claims already paid, and specific performance under a collateral security provision for unpaid or future claims. For example, in Hartford Fire Insurance Company v. Universal Import, LLC, 2009 WL 4042699 (D. Nev. 2009), the court drew a distinction between amounts paid by the surety and its anticipated losses. The surety, Hartford, sought specific performance for reimbursement of $50,000 already paid to United States Customs and Border Protection ("CBP") for defendant's unpaid taxes, and sought $50,000 in collateral for future anticipated losses. The court held that "where, as here, a surety may sue for money damages stemming from breach of an indemnity clause, the surety is not entitled to specific performance. . . . As Hartford has paid out $50,000, there is nothing uncertain about the liability that Hartford has incurred under the indemnity provision." 2009 WL 4042699 at *4. The court granted Hartford $50,000 under an indemnification theory. The court also granted $50,000 to Hartford under specific performance pursuant to a collateral security provision, stating that "[u]nlike Hartford's claim for the sums already paid to Customs, Hartford does not have an adequate remedy at law for recovery of the $50,000 it seeks under the collateral security provision. Because Hartford has yet to pay out the sum, it cannot recover the additional $50,000 under the indemnity provision." Id. at *5.

Similarly, in Travelers Casualty and Surety Co. of America v. Southwest Contracting, Inc., the surety sought partial summary judgment on claims paid, and specific performance for collateral security for unpaid claims. 2006 WL 276942, at *3 (E.D. Mo. 2006). Under the terms of the agreement, the surety was "entitled to immediate reimbursement for any and all payments made by it under the belief it was necessary or expedient to make such payments." Id. at *1. Additionally, the collateral security provision provided that "Indemnitors agree to pay the Company, upon demand, an amount sufficient to discharge any claim or demand made against

8

the Company on any Bond ... These sums may be used by the Company to pay such claim or be held by the Company as collateral security against any loss, claim, liability or unpaid premium on any Bond." Id. at *3.

In addition to providing the court with the paid claims for which it was entitled to indemnification, Travelers submitted a list of additional pending claims against the Bonds for which it sought specific performance of its collateral security provision. Additionally, "in the course of the briefing of the instant motion, Travelers has reduced its initial request for $225,000 in collateral security . . . to $200,000 in view of Travelers' payment of additional claims." Id. at *3, n.2. Based on the terms of the agreement, the court granted summary judgment on the paid claims as indemnification, and because the court found the collateral security request reasonable and not excessive, it granted specific performance as to those amounts. Id.

Thus, based on the parties own agreements, and the interpretation by courts of the remedies of indemnification and specific performance for collateral security provisions, I find that where claims have actually been paid, Safeco has an adequate remedy at law in the enforcement of the indemnification clause of the agreement and is not entitled to the equitable remedy of specific performance.

Safeco relies on U.S. Fidelity and Guaranty Co. v. J. United Electrical Contracting Corp., which granted a group of sureties collateral security which included approximately $1.3 million in losses already paid because "their obligations under the bonds [were] continuing" and thus "the total loss to Sureties is not yet ascertainable." 62 F.Supp.2d 915, 922-23 (E.D.N.Y. 1999). However, in J. United Electrical Contracting Corp., the provision of the indemnity agreement that the court read as the collateral security provision, paragraph III(B), stated that the undersigned would "exonerate, indemnify, and keep indemnified SURETY from and against any

and all liabilities, *losses* and expenses of whatsoever kind or nature . . . ." Id. at 921 (emphasis added). There is no evidence in J. United Electrical Contracting Corp. that the indemnity agreement made a distinction between losses already incurred and existing claims or future losses. Thus, the agreement in J. United Electrical Contracting Corp. differed from the one at hand, and the court's ruling is inapplicable.[2]

Accordingly, I find that Safeco is not entitled to specific performance of the collateral security provisions of the indemnity agreements for claims that have actually been paid.

III. The Amount of Collateral Security Sought

On August 24, 2010, Safeco served on defendants the specific demand for collateral security that the court requested in its May 18, 2010 Order. Specifically, as of that date, Safeco demanded $13,325,000.00 in collateral from MES defendants and $8,800,000 from Hirani defendants. (Sept. 7, 2010 Letter, Dkt. No. 93 at 2.) Safeco is directed to eliminate from that demand all amounts for losses attributable to each project already paid as of that date, and justify the reasonableness of its resulting demand for collateral security by any necessary explanation and documentation.

Unless the calculation of collateral security is limited to amounts demanded and payments made as of a fixed date, the ongoing nature of the contracts and payments will render it impossible for the court to finally resolve this issue, which the parties have been actively litigating for almost seven months. Under the circumstances, I have concluded that it is reasonable, in order to reach the determination as to the appropriate amount of collateral security,

---

[2] Safeco further argues that eliminating paid claims from the amount of collateral security sought would reward indemnitors who delay posting such collateral. On one hand, such an approach does seem to incentivize a surety to stop work on the bonded projects or refrain from paying invoices from subcontractors while it seeks to enforce its collateral security rights, or risk losing those rights as projects go forward and invoices from subcontractors are paid. However, given that the terms of the agreement are clear, such a policy rationale cannot overcome the parties' bargained for terms. Because some claims have actually been paid, Safeco's remedy under the agreements is clear: it must seek indemnification.

to adopt Safeco's formal demand of August 24, 2010, adjusted by amounts actually paid by Safeco as of that date, subject to a showing sufficient to demonstrate that the amount sought is reasonable.

## CONCLUSION

Pursuant to this court's Order of May 18, 2010, Safeco is directed to provide the court with the August 24, 2010 demand served on defendants seeking an amount of collateral security, and is directed to subtract from that demand any claims that have actually been paid as of that date. At this time, Safeco shall not include additional claims not previously sought. Defendants are directed to respond to Safeco's request within 14 days of filing. Plaintiff's motion for a formal assignment of defendants' affirmative claims is denied at this time.

SO ORDERED.

                                                                  s/ ARR

                                                      Allyne R. Ross
                                                      United States District Judge

Dated: September 30, 2010
       Brooklyn, New York