UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------------x

SAFECO INSURANCE COMPANY                    09-CV-3312 (ARR) (ALC)
OF AMERICA,

                              Plaintiff,                    <u>NOT FOR PRINT OR</u>
                                                            <u>ELECTRONIC</u>
                                                            <u>PUBLICATION</u>
            -against-


M.E.S., INC., et al.,                                       <u>OPINION & ORDER</u>

                              Defendants.
--------------------------------------------------------------------x

ROSS, United States District Judge:

        On July 30, 2009, plaintiff Safeco Insurance Company of America ("Safeco" or

"plaintiff") filed a complaint in the instant case against defendants M.E.S., Inc., M.C.E.S., Inc.,

and George Makhoul (collectively, "MES defendants"), and defendants Hirani Engineering &

Land Surveying, P.C., Hirani/MES JV, Jitendra S. Hirani, and Sarita Hirani (collectively, "Hirani

defendants" and, together with MES defendants, "defendants").  The complaint asserts multiple

claims arising from written indemnity agreements among the parties.  Presently before the court

is Safeco's motion to establish the amount of collateral security that defendants must provide to

Safeco under the indemnity agreements.

<u>**BACKGROUND**</u>

        This litigation involves defendants' alleged default under three bonded contracts with the

U.S. Army Corps of Engineers ("Corps") for the completion of construction projects at the

Picatinny Arsenal in Dover, New Jersey.[1]  MES defendants contracted with the Corps to

complete the Pyrotechnics Research Technology Facility ("PRTF") Project and the Explosives

---
[1] A more detailed factual background is set forth in the court's May 18, 2010 Order in this case. Dkt. No. 80 at 2-12.

Research and Development Loading Facility ("ERDLF") Project. MES and Hirani defendants formed a joint venture, which contracted with the Corps, to complete the High Energy Propellant Formulation Facility ("HEPFF") Project. Safeco issued performance and payment bonds for all three construction contracts. In 2008, the Corps declared default on each bonded contract and terminated defendants from all three projects. Subsequently, pursuant to its bonds on the projects, Safeco entered into Takeover Agreements with the Corps for the HEPFF and PRTF Projects. To complete the work on those projects, Safeco entered into a Completion Agreement with the Perini Corporation ("Perini"). The Corps elected to complete the ERDLF Project. Safeco contends that it will incur substantial losses on all three projects as a result of defendants' defaults, and it asserts that it is entitled to indemnity for those losses from defendants in accordance with the indemnity agreements between Safeco and defendants. Safeco seeks collateral security under the indemnity agreements for its losses until the ultimate issue of indemnification is resolved.

I.      Relevant Provisions of the Parties' Indemnity Agreements

        Safeco entered into an indemnity agreement with MES defendants on February 2, 2003, and it entered into an identical indemnity agreement with MES and Hirani defendants on June 23, 2003.[2] March 4, 2010 Affidavit of Caryn Mohan-Maxfield, Esq., Ex. A-B, Dkt. No. 64-4, 64-5 ("Indemnity Agreements"). For purposes of this motion, there are several key provisions of the Indemnity Agreements, all of which relate to Safeco's right to indemnification and right to collateral security under those agreements.

        The "Indemnity to Surety" section of the Indemnity Agreements addresses both Safeco's right to indemnification and its right to collateral security. It states:

---

[2] M.C.E.S., Inc. was not a party to the June 23 indemnity agreement.

INDEMNITY TO SURETY:  Undersigned agree to pay to Surety upon demand:

1. All loss, costs and expenses of whatsoever kind and nature, including court costs, reasonable attorney fees . . . , consultant fees, investigative costs, and any other losses, costs or expenses incurred by Surety by reason of having executed any Bond, or incurred by it on account of any Default under this agreement by any of the Undersigned.
   . . .

2. An amount sufficient to discharge any claim made against Surety on any Bond.  This sum may be used by Surety to pay such claim or be held by Surety as collateral security against loss on any bond.

Indemnity Agreements at 1.

The Indemnity Agreements also contain several other relevant provisions related to collateral security.  The "Security to Surety" section states:

SECURITY TO SURETY: As collateral security to Surety for the agreement of the Undersigned to repay all loss and expense to Surety, the Undersigned:

1. Assigns to Surety, as of the date of execution of any Bond, all rights of the Contractor in, or in any manner growing out of:
   . . .

   c. Monies due or to become due Contractor on any Contract, including all monies earned or unearned which are unpaid at the time of notification by Surety to the Obligee of Surety's rights hereunder;
   . . .

   The Surety agrees to forbear exercising the rights granted to it in (a) through (f) until there is a Default under this agreement.
   . . .

5. Agree that this agreement may at any time be completed and filed by Surety in such a manner that it will qualify as a financing statement under the applicable provisions of any statute of any state which has adopted The Uniform Commercial Code, and that Surety may add such schedules to this agreement, describing specific items of security covered hereunder as shall be necessary under such statutes.

Indemnity Agreements at 2.  The "General Provisions" section of the Indemnity Agreements provides:

GENERAL PROVISIONS:
. . .

> 5.  The undersigned will, on request of Surety, procure the discharge of Surety from any Bond and all liability by reason thereof.  If such discharge is unattainable, the Undersigned will, if requested by Surety, either deposit collateral with Surety, acceptable to Surety, sufficient to cover all exposure under such bond or bonds, or make provisions acceptable to Surety for the funding of the bonded obligation(s).

Indemnity Agreements at 2.

II.    Procedural History

On May 18, 2010, I granted Safeco's motion for partial summary judgment with respect to its right to collateral security under the Indemnity Agreements.[3]  Dkt. No. 80.  In that Order, I determined that defendants' allegations of Safeco's bad faith in bringing about the defaults on the underlying construction contracts were to be addressed at the ultimate liability stage, and thus were irrelevant to the enforcement of the collateral security provision.  Id. at 20-25.  While I granted Safeco's motion with respect to its right to collateral security, I reserved judgment on the amount of the collateral security until the plaintiff provided support for the reasonableness of its demand.  Id. at 27.  Defendants subsequently sought a stay pending appeal in the Court of Appeals.  I denied defendants' motion on June 7, 2010, but granted a limited stay for twenty-one days so that defendants could seek a further stay in the Court of Appeals.  Dkt. No. 83.  The Second Circuit subsequently stayed the May 18 Order pending a determination on defendants' motion for a stay.  Dkt. No. 87.  It ultimately denied the stay and dismissed the appeal for lack of jurisdiction.  Dkt. No. 101 at 2.

On August 24, 2010, in separate letters to MES defendants and Hirani defendants, Safeco served on defendants the specific demand for collateral security that this court requested in its May 18 Order.  Safeco demanded $13,325,000.00 in collateral from MES defendants and

---

[3] I also granted Safeco's motion for access to defendants' books and records.  I denied without prejudice Safeco's motion with respect to the assignment and attorney-in-fact clauses of the Indemnity Agreements.  Dkt. No. 80 at 29.

$8,800,000.00 from Hirani defendants. Oct. 8, 2010 Affidavit of Caryn Mohan-Maxfield, Esq., ("Mohan-Maxfield Aff."), Dkt. No. 110-1, Ex. 1-2.[4] Safeco's collateral demand to MES defendants reflected its "actual and anticipated losses" on each of the three bonded projects at issue in this litigation. Id. Ex. 1. Safeco's collateral demand to MES defendants also included its projected legal and consulting fees related to the three projects. Id. Because Hirani defendants were only involved in the HEPFF Project, Safeco's collateral demand to them reflected its "actual and anticipated losses" solely on that project. Id. Ex. 2. Safeco's demand to Hirani defendants did not include projected legal and consulting fees. Id. To each letter, Safeco attached backup documentation for its demand for collateral security, including accounting spreadsheets detailing expenditures and receipts on each bonded project. Id. ¶¶ 5-10.

On September 30, 2010, in response to defendants motion for reconsideration of the May 18 Order, I issued an Order directing Safeco to revise its August 24 demand for collateral security and to submit that revised demand to the court. Dkt. No. 107. I directed Safeco to eliminate from its August 24 demand "all amounts for losses attributable to each project already paid as of that date . . . ." Id. at 10. That ruling was grounded in the provisions of the Indemnity Agreements that afford Safeco the right to demand collateral security from defendants "to discharge any claim against Surety on any Bond" and "to cover all exposure under such bond or bonds." Indemnity Agreements at "Indemnity to Surety" ¶ 2, "General Provisions" ¶ 5. I determined that those provisions drew a distinction between anticipated losses (i.e. unpaid

---

[4] In its letter to MES defendants, Safeco stated that, although its calculations indicated its losses could exceed $13.5 million dollars, it was limiting its demand for collateral security to $13.325 million. Id. Ex. 1. Likewise, in its letter to Hirani defendants, Safeco stated that, although its calculations indicated its losses could exceed $9.5 million, it was limiting its collateral demand to $8.8 million. Id. Ex. 2.

claims) and existing losses already incurred (i.e. paid claims).[5] Dkt. No. 107 at 3-5. Based on that distinction, and an analysis of the relevant case law, I found that "specific performance to enforce a collateral security provision is available for losses under a bond that are uncertain but anticipated at some point in the future." Id. at 6. However, "where an obligation is certain and paid, the surety has an adequate remedy at law, that is, enforcing the indemnification clause of the bargained for agreement, and thus specific performance under a collateral security provision is unavailable." Id. Accordingly, because Safeco had an adequate remedy at law for paid claims, I ordered elimination of those claims from its collateral demand, such that the resulting demand only consisted of Safeco's anticipated losses. Id. at 10. I also ordered Safeco to "justify the reasonableness of its resulting demand for collateral security by any necessary explanation and documentation," and I directed Safeco not to include in its revised demand additional claims not previously sought. Id. at 10-11. In light of the ongoing nature of the contracts and payments, I adopted August 24, 2010, the date of Safeco's formal demand, as the date on which to fix paid versus unpaid claims and to calculate the amount of collateral security. Id. at 10-11.

III.    The Instant Motion

Presently before the court are the parties' submissions regarding the appropriate amount of collateral security to be provided by defendants in light of the court's September 30 Order. In its motion to establish collateral security, Safeco has revised its August 24 collateral demand. Safeco contends that it has eliminated from that demand all losses actually incurred as of August 24, 2010, and it asserts that its resulting demand reflects only its anticipated losses as of that date. It now seeks $7,712,170.91 in collateral security from MES defendants and $6,932,603.94

---

[5] Specifically, I stated: "Paragraph 2 of the Indemnity to Surety section[] clearly specifies that collateral security is to be provided by the indemnitor for unpaid claims, not existing losses already incurred . . . . The term "exposure" in Paragraph 5 [of the General Security section] unambiguously refers to the risk of loss or future loss faced by Safeco, not to losses already sustained . . . ." Id. at 5.

in collateral security from Hirani defendants. Safeco's demand to MES defendants is comprised of its anticipated losses of (i) $6,057,603.94 on the HEPFF Project, (ii) $779,566.97 on the PRTF Project, and (iii) $875,000 in projected legal and consulting fees.[6] Safeco's demand to Hirani defendants is comprised of its anticipated losses of $6,057,603.94 on the HEPFF Project and its projected legal and consulting fees of $875,000.00. In response to Safeco's motion, defendants argue for reduction of the amount of Safeco's revised demand based on numerous theories.

The reasonableness of Safeco's revised demand for collateral security is addressed below. For the reasons that follow, the court holds that reasonable estimates of Safeco's anticipated losses are: (i) $4,960,067.44 on the HEPFF Project, (ii) $779,566.97 on the PRTF Project, and (iii) $875,000 in projected legal and consulting fees. I hold that Safeco is entitled to collateral security from MES defendants to cover all of those anticipates losses, for a total amount of $6,614,634.41. I hold that Safeco is entitled to collateral security from Hirani defendants to cover Safeco's anticipated losses on the HEPFF Project, for a total amount of $4,960,067.44.

**DISCUSSION**

I.    Legal Standard

As stated in this court's May 18 and September 30 Orders, Safeco's demand for collateral security is assessed under a "reasonableness" standard. Dkt. No. 80 at 26; Dkt. No. 107 at 9-10; see also BIB Constr. Co. v. Fireman's Ins. Co. of Newark, N.J., 214 A.D.2d 521, 523 (N.Y. App. Div. 1995) ("So long as the sum demanded is reasonable, plaintiff 'dealing at arm's length with relative equality of bargaining power' must abide by this term of contract.") (citations omitted); United States Fidelity & Guarantee Co. v. J. United Electric Contracting Corp., 62 F.Supp.2d 915, 922 (E.D.N.Y 1999) (same). Thus, if the amount of collateral security demanded by Safeco to cover its anticipated losses is reasonable, the court will uphold its demand.

---

[6] Safeco does not claim any anticipated losses on the ERDLF Project.

Contrary to defendants' assertions, Safeco's demand for collateral security is not assessed under the summary judgment standard; the court is not required to delay setting an amount of collateral security due to the existence of factual disputes. Inherently, it is impossible to determine ex ante the precise amount of future losses Safeco will incur on the three bonded projects. That amount can only be ascertained upon the completion of all three projects and the resolution of the pending disputes related thereto. Thus, in determining what constitutes a reasonable amount of collateral security, the function of the court is not to seek mathematical certainty. Rather, the function of the court is to determine, in light of the circumstances of the case and the supporting documentation submitted by the parties, whether Safeco's demand is a reasonable estimate of its anticipated losses. It is not necessary for the court to resolve factual disputes prior to setting the amount of collateral security. Indeed, because the issue of collateral security is distinct from the ultimate issue of indemnity, the existence of factual disputes regarding liability is irrelevant to this determination. See Dkt. No. 80 at 26; BIB Constr., 214 A.D.2d at 523. As plaintiff notes, "[i]f it were a prerequisite for the surety and indemnitors to agree upon all the material facts pertaining to future payments . . ., then no surety would ever succeed in enforcing its interim right to collateral." Plaintiff's Reply in Support of Motion ("Pl. Reply"), Dkt. No. 117, at 8. There is no such prerequisite here. Safeco is simply required to show that its demand for collateral security is reasonable.

II.    Safeco's Revised Collateral Security Demand for the HEPFF Project

Safeco contends that it has revised its August 24 collateral demand for the HEPFF Project to eliminate all losses already incurred, and it argues that the $6,057,603.94 it now seeks from MES and Hirani defendants represents its anticipated losses on that project.[7] Defendants argue

---

[7] Safeco acknowledges that it made a mathematical error in its opening brief when calculating its anticipated losses on the HEPFF Project. Safeco corrected that error in its reply. Pl. Reply at 6.

that this amount should be reduced because: (i) the projected cost to complete the HEPFF Project is less than Safeco contends, (ii) Safeco failed to take into account certain payments that it will receive from the Corps, (iii) Perini invoiced Safeco for additional costs prior to August 24, 2010, and (iv) Safeco's collateral security demand includes costs for work that was not bonded.[8]  For the reasons set forth below, I find that $4,960,067.44 is a reasonable amount of collateral security for the HEPFF Project.

   A.    *Safeco's Reduction of Its August 24 Demand*

In each of its August 24 demand letters to defendants, Safeco included an identical table summarizing the components of its collateral demand for the HEPFF Project.  That table is reproduced below, in relevant part:

| Description | Amount |
|---|---|
| Payment Bond Payments (through 8/19/10) | $899,754.29 |
| Perini Projected Cost to Complete | $9,466,694.13 |
| Perini Pre-Construction Services | $172,543.92 |
| Safeco Costs (through 8/19/10) | $16,142.95 |
| Safeco's Legal & Consulting Costs (through June 2010) | $593,823.01 |
| Remaining Contract Funds Corps Agreed to Pay under Takeover Agreement | ($1,612,518.80) |
| **Total HEPFF Loss Exposure** | **$9,536,439.50** |

Mohan-Maxfield Aff. Ex. 1-2.  In its revised demand, Safeco eliminated the four categories of losses listed in this table that consisted entirely of actual costs already incurred by Safeco on the HEPFF Project.  Specifically, Safeco eliminated: $899,754.29 in payment bond payments,

---

[8] Although MES and Hirani defendants have each submitted separate briefs and affidavits with respect to Safeco's collateral security demand for the HEPFF Project, their arguments regarding that issue substantially overlap.  Thus, unless otherwise noted, the court will address their arguments simultaneously.

$172,543.92 in Perini pre-construction services, $16,142.95 in Safeco costs, and $593,823.01 in legal and consulting fees. Safeco reduced the other category of losses listed in the table – Perini's $9,466,694.13 projected cost to complete the HEPFF Project – in its revised demand. It eliminated from that projected cost the $3,409,090.19 actually paid to Perini for work on the HEPFF Project as of August 24, 2010. That reduction left $6,057,603.94 in anticipated losses on the HEPFF Project. With respect to the $1,612,518.80 in payments from the Corps listed in the table, Safeco asserts that those payments, as authorized by the Indemnity Agreements, have been or will be used to "'to repay' its losses and expenses already incurred" on the project. Pl. Reply at 8. Safeco claims that those payments do not further reduce its anticipated losses. Thus, in its revised demand, Safeco seeks $6,057,603.94 in collateral security for the HEPFF Project.

B.      *Reduction of the Perini Budget*

Defendants argue that the $9,466,694.13 projected cost of completion relied upon by Safeco in its calculations is inflated. They point out that this projection is derived from Perini's December 1, 2009 cost of completion budget for the HEPFF Project ("Perini Budget"). They contend that Safeco failed to revise the cost estimates in the Perini Budget to reflect the actual amounts of the subcontracts awarded for the project. The actual subcontract amounts, defendants assert, were often lower than the estimated costs in the Perini Budget. Thus, when the actual subcontract amounts are taken into account, the total projected cost of the HEPFF Project is less than the Perini Budget. Defendants calculate the projected cost of the HEPFF Project to be $7,700,827.57. Defendants' contend that elimination of the $3,409,090.19 actually paid to Perini as of August 24, 2010 from their projected completion cost would reduce Safeco's anticipated losses on the HEPFF Project to $4,291,737.38.

Although the amount of the reduction is not as great as defendants suggest, the court agrees that the Perini Budget must be reduced to reflect the actual amounts of the subcontracts awarded for the HEPFF Project. The Perini Budget includes cost estimates for numerous tasks to be completed on the HEPFF Project. After reviewing the subcontracts awarded to complete those tasks, it is apparent that the actual amounts of the subcontracts awarded were often less than the amounts estimated in the Perini Budget. See Mohan-Maxfield Aff. Ex.1, Tab B, Ex. B; Oct. 22, 2010 Affidavit of George Makhoul ("Makhoul Aff."), Dkt. No. 113, Ex. 7-8, 43-44.[9] Taking into account the actual subcontracts awarded by Perini, the projected cost to complete the HEPFF Project is less than the estimate in the Perini Budget. See id. A projected cost to complete that relies upon actual costs is likely to be more accurate than one that relies solely upon estimates. Thus, to make a reasonable calculation of Safeco's anticipated losses on the HEPFF Project, the court finds that the Perini Budget must be reduced to reflect the actual subcontracts awarded. After reviewing the actual subcontracts awarded by Perini, I find that a reasonable estimate of the projected cost to complete the HEPFF Project is $8,369,157.63.[10] Subtracting the $3,409,090.19 paid to Perini prior to August 24, 2010 for work on the HEPFF Project reduces Safeco's anticipated losses on that project to $4,960,067.44.

---

[9] For instance, the Perini Budget estimated the subcontract with Amman & Whitney Consulting Engineers, PC for "design" to cost $175,000.00. Mohan-Maxfield Aff. Ex.1, Tab B, Ex. B. The actual sub-contract with Amman & Whitney, entered into on Dec. 23, 2009, was for an amount not to exceed $100,000.00. Makhoul Aff. Ex. 43. Likewise, the Perini Budget estimated the subcontract with Stony Brook Lightning Rods for "lightning protection" to cost $62,510.00. Mohan-Maxfield Aff. Ex.1, Tab B, Ex. B. The actual sub-contract with Stony Brook Lightning Rods, entered into on Dec. 10, 2009, was for $58,550.00. Makhoul Aff. Ex. 43

[10] The calculations that form the basis of defendants' argument for a reduction of the Perini Budget are poorly presented. See Makhoul Aff. Ex. 7. However, based upon its independent review of the amounts of the subcontracts awarded by Perini, the court agrees with defendants that $6,131,468.43 is a reasonable estimate of the projected cost to complete the tasks listed in the Perini Budget. See id. Ex. 7-8, 43-44; Mohan-Maxfield Aff. Ex.1, Tab B, Ex. B. The court also finds that the additional costs listed in the Perini Budget should be included in the current calculation of the projected cost to complete the HEPFF Project. See id. The court rejects defendants' speculative argument that "because the project is more than 75% complete [the 10% contingency fee] is no longer needed." See Makhoul Aff. Ex. 7. Adding a 10% contingency fee ($613,146.84), the general conditions cost ($839,015.00), and the insurance cost ($94,495.99) to $6,131,468.43 yields a subtotal of $7,678,126.26. Adding a 2.5% overhead ($191,953.16) and a 6.5% profit ($499,078.21) to that number yields a total of $8,369,157.63.

C.    *The Remaining Funds Due to Safeco from the Corps*

Defendants argue that Safeco's collateral security demand should be reduced by a portion of the payments due to Safeco from the Corps on the HEPFF Project.  Under Safeco's Takeover Agreement with the Corps on that project, the Corps agreed to pay Safeco the remaining $1,612,518.80 balance on the HEPFF contract.  Mohan-Maxfield Aff. Ex.1, Tab B, Ex. C.  As of August 24, 2010, Safeco had received $859,995.00 from the Corps and had invoiced the Corps for an additional $108,470.00.  Makhoul Aff. Ex. 1 at 2.  Defendants do not assert that Safeco's anticipated losses should be reduced by that $968,465.00; they assume that amount has been used to cover "the completed work for which Safeco made payments to Perini as of [August 24, 2010]."  Id.  But defendants contend that Safeco's anticipated losses on the HEPFF Project should be reduced by the remaining $644,053.80 due from the Corps.  Defendants argue that amount should be used to cover "the remaining amount of payments to be made to Perini by Safeco on the HEPFF Completion Contract."  Id.

The court disagrees.  Under Paragraph 1.c. of the "Security to Surety" section of the Indemnity Agreements, as of the date of the execution of Safeco's HEPFF Project bond, defendants assigned all of their rights in "[m]onies due or to become due Contractor on any Contract" as "collateral security to Surety for the agreement of the Undersigned to repay all loss and expense to Surety . . . ."  Indemnity Agreements at 2.  Safeco agreed to forebear exercising its right to those funds until there was a default under the Indemnity Agreements.  Indemnity Agreements at "Security to Surety" ¶ 1.  However, upon the Corps' declaration of default, Safeco was entitled to the monies due on defendants' HEPFF bonded contract as collateral security "to repay all loss and expense."  Id.

This collateral security provision of the Indemnity Agreements stands in contrast to the collateral security provisions analyzed in the court's September 30 Order. In that Order, the court discussed Paragraph 2 of the "Indemnity to Surety" section and Paragraph 5 of the "General Provisions" section of the Indemnity Agreements. Dkt. No. 107 at 3-5. Paragraph 2 states that Safeco may demand collateral security from defendants "to discharge any claim against Surety on any Bond," while Paragraph 5 states that Safeco may request collateral security "to cover all exposure under such bond or bonds." Indemnity Agreements at "Indemnity to Surety" ¶ 2, "General Provisions" ¶ 5. As explained in the September 30 Order, those provisions require defendants to provide Safeco with collateral security upon demand to cover Safeco's anticipated losses. Dkt. No. 107 at 3-5. However, those provisions do not entitle Safeco to demand collateral security for previously incurred costs. Id.

Conversely, at the moment of defendants' default, Paragraph 1.c. entitled Safeco to payments due on defendants' contracts as collateral security "to repay all loss and expense." The provision's use of the word "repay" indicates that the collateral security provided under that provision is for costs already incurred by Safeco, not unpaid costs.[11] Likewise, the Indemnity Agreements' use of the words "loss" and "expense" in this provision – as opposed to their use of "claim" and "exposure" in the aforementioned provisions – indicates that the provision refers to costs already incurred.[12] Indeed, the indemnity provision of the Indemnity Agreements uses the words "loss" and "expense" to identify the previously paid claims for which Safeco is entitled to indemnity. Indemnity Agreements at "Indemnity to Surety" ¶ 1. As such, collateral security received by Safeco under this provision can only be applied to costs already incurred by Safeco,

---

[11] Merriam-Webster's Dictionary defines "repay," in part, as "to pay back." Merriam-Webster's Online Dictionary, at http://www.merriam-webster.com/dictionary/repay (last visited Nov. 15, 2010).

[12] Merriam-Webster's Dictionary defines "loss," in part, as "a person, thing, or amount that is lost." Merriam-Webster's Online Dictionary, at http://www.merriam-webster.com/dictionary/loss (last visited Nov. 15, 2010). It defines "expense," in part, as a "financial burden or outlay." Id. at http://www.merriam-webster.com/dictionary/expense (last visited Nov. 15, 2010).

not anticipated losses.  Thus, the entirety of the $1,612,518.80 due to Safeco from the Corps on

the HEPFF Project is collateral security to cover costs already incurred by Safeco.  Safeco's

revised collateral demand for its anticipated losses is not reduced by any portion of that amount.

      D.     *Billed versus Paid Claims*

 Defendants contend that $2,381,718.07 billed to Safeco prior to August 24, 2010, but not

paid as of that date, must be eliminated from Safeco's collateral demand for the HEPFF Project.

From June to August 2010, Perini sent Safeco three invoices, totaling that amount, for work done

on the HEPFF Project.  As of August 24, 2010, Safeco had not paid those invoices.  Nonetheless,

defendants contend that, because the invoiced amount is a "sum certain," Safeco's collateral

demand must be reduced by that amount.  Defendants also state that they "respectfully disagree[]

with the Court's [September 30 Order] to the extent that it bases the amount of collateral security

on the vagaries of Safeco's payments, when, in fact they were tardy and out of keeping with the

history of its payments to Perini."  Memorandum of Law of MES, MCES, and George Makoul in

Opposition to Safeco's Motion ("MES Def. Mem."), Dkt. No. 113-49, at 6.  Indeed, defendants

argue that Safeco's demand for collateral security must be reduced by the $2,381,718.07

invoiced to Safeco because Safeco "delayed payments for costs incurred and owed to Perini after

May 2010."  Makhoul Aff. ¶ 43.

     Again, the court disagrees with defendants.  In its September 30 Order, this court drew a

clear distinction between paid and unpaid claims under the collateral security provisions of the

Indemnity Agreements there at issue.  Dkt. No. 107 at 3-5; <u>see</u> Indemnity Agreements at

"Indemnity to Surety" ¶ 2, "General Provisions" ¶ 5.  That distinction recognized the fact that,

until Safeco actually pays a claim, it is not entitled to indemnification for that claim.  The

Indemnity Agreements provide that Safeco is entitled to indemnity for "[a]ll loss, costs, and

expenses . . . incurred by Surety . . . ."  Indemnity Agreements at "Indemnity to Surety" ¶ 1.

Thus, "where an obligation is certain *and paid*, the surety has an adequate remedy at law, that is,

enforcing the indemnification clause of the bargained agreement . . . ."  Dkt. No. 107 at 6

(emphasis added).  However, where a claim is not yet paid, Safeco has not yet incurred a loss,

cost, or expense.  Thus, Safeco is not entitled to indemnification for unpaid claims, and it has no

adequate remedy at law for such claims.  Id. at 6-10; see Hartford Fire Ins. Co. v. Universal

Import, LLC, 2009 U.S. Dist. LEXIS 108771, at *14 (D. Nev. Nov. 19, 2009) ("Because

Hartford has yet to pay out the sum, it cannot recover the additional $50,000 under the indemnity

provision.").  Accordingly, in its September 30 Order, this court held that Safeco was entitled to

collateral security for claims unpaid as of August 24, 2010.  Dkt. No. 107 at 6.

Under the court's September 30 Order, Safeco is entitled to collateral security for the

$2,381,718.07 that Perini billed to Safeco as of August 24, 2010, but which Safeco had not yet

paid as of that date.  The Indemnity Agreements do not permit Safeco to obtain indemnification

for claims that are invoiced, but not yet paid.  Until an invoiced claim is paid, Safeco has not

incurred any loss, cost, or expense on that claim.  It is irrelevant that an invoiced sum is certain.

Safeco is not entitled to indemnification once the amount of a future claim becomes certain.

Rather, Safeco is entitled to indemnification after it has incurred a loss, cost, or expense, i.e. after

it has paid a claim.  Because an invoiced claim is not yet paid, it is an anticipated loss, and

Safeco has no adequate remedy at law for that claim.  Safeco therefore is entitled to collateral

security for claims that are invoiced, but not yet paid.  Its revised collateral security demand is

not reduced by the $2,381,718.07 invoiced by Perini on the HEPFF project.

Defendants rely upon Nat'l Surety Corp. v. Titan Constr. Corp., 26 N.Y.S.2d 227 (N.Y.

Sup. Ct. 1940), aff'd, 24 N.Y.S.2d 141 (N.Y. App. Div. 1st Dep't 1940), for their argument that

a surety is entitled to indemnification for a "sum certain." That reliance is misplaced. In Nat'l Surety, the surety agreement at issue stated that the surety was entitled to indemnification for any "*liability*, loss, costs, damages, fees of attorneys and other expenses . . . ." Id. at 228 (emphasis added; internal quotation marks omitted). The court, in its opinion, analyzed the circumstances in which the surety was entitled to indemnification for "liability" under that provision. The court stated: "Under clause 1 defendant undertook to indemnify plaintiff against liability after it has arisen. That liability means a present obligation to pay a sum certain, and not a mere exposure to the hazard of unliquidated claims which may or may not ripen in the future." Id. at 230. As previously discussed, the Indemnity Agreements at issue in this case provide that Safeco is entitled to indemnity for "[a]ll loss, costs, and expenses . . . incurred by Surety . . . ." Indemnity Agreements at "Indemnity to Surety" ¶ 1. The Indemnity Agreements do not permit Safeco to obtain indemnification for "liability." Nat'l Surety is inapposite.

Defendants also claim that Safeco's collateral security demand must be reduced because Safeco "delayed payments for costs incurred and owed to Perini after May 2010." Makhoul Aff. ¶ 43. That argument is meritless. Prior to the court's September 30 Order, Safeco did not know that it would be required to eliminate paid claims from its collateral security demand. Thus, defendants have no basis to argue that Safeco delayed making payments until after August 24, 2010 so that it would not be required to eliminate those payments from its collateral demand.

Because the court selected August 24, 2010 as the date on which to fix paid versus unpaid claims, I recognize that payments Safeco has made since that date will not be eliminated from its collateral security demand. As stated in the September 30 Order, "[u]nless the calculation of collateral security is limited to amounts demanded and payments made as of a fixed date, the ongoing nature of the contracts and payments will render it impossible for the

court to finally resolve this issue . . . ." Dkt. No. 107 at 10. I reiterate that point here. Collateral security is designed to be an interim remedy to secure Safeco's anticipated losses until the ultimate issue of indemnity is resolved. To effectuate Safeco's right to collateral security, an amount of collateral security must be established, and defendants must be required to deposit it in trust until the merits of this case are litigated. This is the court's third Order on the issue of collateral security, an issue that the parties have been actively litigating for eight months. To resolve this issue, and to enable the litigation to proceed, it is reasonable to fix paid versus unpaid claims, and to calculate the amount of collateral security, as of a particular date.

>     E.    *"Un-bonded" New and Additional Work*

Defendants argue for an unspecified reduction of Safeco's collateral security demand on the HEPFF Project because Safeco "has incurred new and additional change order work that was not part of the terminated Contract and not covered by the performance bond." Makhoul Aff. ¶ 98. Defendants assert that they cannot ascertain the amount of the required reduction because "Safeco has refused to produce a breakdown that identifies and separates Safeco's cost to perform the terminated Contract from its cost to perform the new work . . . ." Id. Defendants estimate the cost of the "un-bonded" work to be as high as $5.2 million. Id. at 103. Safeco disputes that it has conducted any work outside the scope of its bond for the HEPFF Project.

The dispute over the scope of Safeco's bond does not relate to the amount of collateral security necessary to cover Safeco's anticipated losses on the HEPFF Project. Rather, it relates to the amount of damages to which Safeco ultimately will be entitled on its indemnification claim. See Hartford Casualty Ins. Co v. Cal-Tran Assoc., Inc., 2008 U.S. Dist. LEXIS 71736, at *17 (D.N.J. Sept. 4, 2008) (holding defendant's argument regarding "costs incurred by Plaintiff for extra work that was not required under the contract" applied "to the amount of damages to

which Plaintiffs will ultimately be entitled," not the collateral security demand). Thus, that dispute will not be resolved until the ultimate issue of indemnity is litigated. Until that time, the cost of the allegedly "un-bonded" work is an anticipated loss for which defendants are potentially liable to Safeco under the Indemnity Agreements. Defendants' argument that Safeco's collateral security should be reduced by the cost of the allegedly "un-bonded" work presumes that defendants will prevail on the merits of their claim that the work was outside the scope of Safeco's bond. Such a presumption is unwarranted, and it is not a basis to reduce Safeco's collateral demand. Should defendants "demonstrate at trial that the amount of damages to which Plaintiff is entitled is less than the amount of posted collateral security, they will be entitled to repayment." Cal-Tran, 2008 U.S. Dist. LEXIS 71736, at *18.[13]

In sum, I find that Safeco's revised demand for collateral security on the HEPFF Project must be reduced, because the Perini Budget did not take into account the actual subcontracts awarded by Perini. However, Safeco's revised collateral security demand is not reduced by: (i) the amount of the additional funds due to Safeco from the Corps, (ii) the amount of Perini's invoices that were submitted to Safeco, but not yet paid, as of August 24, 2010, or (iii) the costs

_____

[13] For the same reasons, the court also rejects defendants' arguments that Safeco's collateral security demand on the HEPFF Project should be reduced because defendants are entitled to certain payments from Safeco and its parent Liberty Mutual related to that project. See Makhoul Aff. ¶¶ 58, 61-63 (pre-termination work payments), 67-68 (post-termination work payment), 70-72 (insurance cost payment), 78-84 (Liberty Mutual bond payments); Oct. 21, 2010 Affidavit of Jitendra S. Hirani ("Hirani Aff."), Dkt. No. 112-1, ¶¶ 17-18 (pre-termination work payment). Those counterclaims, which Safeco contests, are properly resolved when the ultimate issue of liability is litigated. Defendants' presumption that they will prevail on their counterclaims is not a basis to reduce the amount of Safeco's collateral security.

Likewise, the court rejects defendants' argument that Safeco's collateral demand should be reduced by the amount of payments the Corps may make to Safeco for completion costs resulting from the Corps' improper administration of the HEPFF contract. See Makhoul Aff. ¶¶ 91-93; Hirani Aff. ¶ 20. That argument relates to damages, and it is properly addressed at the liability stage of litigation.

Lastly, the court disagrees with defendants' argument that Safeco's collateral security demand on the HEPFF Project should be reduced by Safeco's potential claims against the Corps related to that project. See Makhoul Aff. ¶¶ 86-90; Hirani Aff. ¶ 19. Safeco asserts that the Corps disputes Safeco's claims against it. There is no guarantee that Safeco's anticipated losses on the HEPFF project will be reduced by payments from the Corps on these claims. Thus, Safeco's collateral demand is not reduced by the amount of those claims.

of allegedly "un-bonded" new and additional work.  Based upon the foregoing, I find that a reasonable estimate of Safeco's anticipated losses on the HEPFF Project is $4,960,067.44.

III.    Safeco's Revised Collateral Security Demand for the PRTF Project

Safeco contends that it has revised its August 24 collateral demand for the PRTF Project to eliminate all losses already incurred, and it argues that the $779,566.97 it now seeks from MES defendants represents its anticipated losses on that project.  MES defendants contend that this amount should be eliminated from Safeco's revised demand because: (i) Perini billed this amount to Safeco prior to August 24, 2010, (ii) this amount was billed for Perini's performance of "un-bonded" work, and (iii) Safeco waived its right to collateral security on the PRTF Project. MES defendants' also argue that the collateral security amount should be reduced because Safeco has placed a lien on the construction equipment MES purchased for the PRTF Project. For the reasons set forth below, I find that $779,566.97 is a reasonable amount of collateral security for the PRTF Project.

A.      Safeco's Reduction of Its August 24 Demand

Safeco's August 24 letter to MES defendants included a table summarizing the components of Safeco's collateral security demand for the PRTF Project.  That table is reproduced below, in relevant part:

| Description | Amount |
|---|---|
| Performance & Payment Bond Payments (through 8/19/10) | $10,461,912.17 |
| Pending Perini Invoice (Work Performed through 6/30/10) | $779,566.97 |
| Safeco Costs (through 8/19/10) | $26,425.67 |
| Safeco's Legal & Consulting Costs (through June 2010) | $907,116.77 |
| Receipts from Corps | ($10,074,531.81) |
| **Total [PRTF] Loss Exposure** | **$2,100,489.77** |

Mohan-Maxfield Aff. Ex. 1. In its revised demand, Safeco eliminated the three categories of losses from this table that consisted entirely of costs already incurred by Safeco on the PRTF Project. Specifically, Safeco eliminated: $10,461,912.17 in performance and payment bond payments, $26,425.67 in Safeco costs, and $907,116.77 in legal and consulting fees. With respect to the $10,074,531.81 in receipts from the Corps, Safeco states that it utilized those funds to offset its losses already incurred on the PRTF Project.[14] Safeco still seeks collateral security for the pending Perini invoice in the amount of $779,566.97. That amount represents Safeco's entire revised demand for collateral security for the PRTF Project.

### B.  *Billed versus Paid Claims*

MES defendants contend that the $779,566.97 must be eliminated from Safeco's revised collateral demand because it "is a cost that was incurred and invoiced by Perini to Safeco before August 24, 2010." Makhoul Aff. ¶ 20. They contend that this "amount is not a future loss exposure to Safeco on the [PRTF] Project but rather a fixed and ascertainable payment amount that is owed to Perini but unpaid by Safeco." Id. Thus, even though Safeco has not paid this claim, MES defendants argue that it should be eliminated from Safeco's collateral demand. For the reasons set forth in Section II.D. supra, the court rejects that argument. Under the Indemnity Agreements, Safeco is not entitled to indemnification for an invoiced claim that has not yet been paid. Safeco has no adequate remedy at law for that anticipated loss; therefore, it is entitled to collateral security for it.

### C.  *"Un-bonded" New and Additional Work*

MES defendants argue that the $779,566.97 must be eliminated from Safeco's revised collateral demand because "it represents the cost of new and additional work directed by the

---

[14] For the reasons discussed in Section II.C. supra, under the Indemnity Agreements, Safeco is entitled to utilize receipts from the Corps on the PRTF contract "to repay all loss and expense" incurred on that project.

Government, work that was not part of the terminated Contracts and not covered by the performance bond." Makhoul Aff. ¶ 21. For the reasons set forth in Section II.E. supra, the court rejects that argument. The dispute over the allegedly "un-bonded" work will not be resolved until the ultimate issue of indemnity is litigated on the merits. Until that time, the cost of that work remains an anticipated loss for Safeco on the PRTF project for which MES defendants are potentially liable under the Indemnity Agreements. Safeco is entitled to collateral security for that anticipated loss.[15]

D.    *Waiver of Collateral Security*

MES defendants claim that Safeco waived its right to the $779,566.97 as collateral security for the PRTF Project. They claim that, following MES defendants' termination from the PRTF Project in March 2008, "MES made Safeco aware that MES was willing and able to post any reasonable collateral requested by Safeco for Safeco not to complete the project and defer any defense and resolution of the termination to MES." Makhoul Aff. at ¶ 37. However, "Safeco decided to reject MES' request and complete the work . . . ." Id. at ¶ 39. MES defendants argue that Safeco declined to accept collateral at "a time when active participation by MES was crucial to challenging the Corps efforts to proceed with a project for which it lacked funding and could have averted subsequent terminations for which Safeco seeks collateral security." MES Def. Mem. at 8. Thus, they allege that Safeco waived its right to collateral

---

[15] For the same reasons, the court rejects MES defendants' arguments that Safeco's collateral security demand on the PRTF Project should be reduced because MES defendants are entitled to certain payments from Safeco related to that project. See Makhoul Aff. ¶¶ 57 (pre-termination work), 64-66 (post-termination work). Those counterclaims, which Safeco contests, are properly resolved when the ultimate issue of liability is litigated. MES defendants' presumption that they will prevail on their counterclaims is not a basis to reduce the amount of Safeco's collateral security.

Likewise, the court disagrees with MES defendants' argument that Safeco's collateral demand should be reduced by the amount of payments the Corps may make to Safeco for completion costs resulting from the Corps' improper administration of the PRTF contract. See Makhoul Aff. ¶¶ 91-93. That argument relates to damages, and it is properly addressed at the liability stage of litigation.

security for the PRTF Project and that "Safeco's inequitable conduct is a bar to its renewed claim for collateral at a time when MES no longer has the resources."  Id.; Makhoul Aff. at ¶ 38.

MES defendants' waiver claim is foreclosed by their Indemnity Agreements with Safeco. In the event a contractor is declared to be in default by an obligee, the Indemnity Agreements give Safeco the right to "[t]ake possession of the work under any and all Contracts and to arrange for its completion by others or by the Obligee of any Bond."  Indemnity Agreements at "Surety's Remedies in Event of Default" ¶ 1.  Thus, under the Indemnity Agreements, after the Corps declared MES to be in default, Safeco was entitled to reject MES defendants' request that Safeco forego completing the PRTF Project in favor of taking collateral security from MES.  Moreover, after Safeco rejected MES' offer to provide collateral security, Safeco was entitled to demand collateral security at a later time.  The Indemnity Agreements require MES defendants to provide collateral security for Safeco's anticipated losses upon demand, and the agreements do not provide for waiver of that right.  Indemnity Agreements at "Indemnity to Surety" ¶ 2, "General Provisions" ¶ 5.  Thus, MES defendants' claim that Safeco waived its right to collateral security by not accepting MES' offer of collateral security is unfounded.  Safeco did not waive its right to demand the $779,566.97 in collateral security, and Safeco has not engaged in inequitable conduct with respect to that demand.

E.      *Safeco's Lien on MES' Equipment*

MES defendants contend that the amount of collateral security on the PRTF Project should be reduced because, in 2008, through a Uniform Commercial Code ("UCC") filing, Safeco placed a lien on the construction equipment that MES purchased for the PRTF Project. MES defendants allege that it purchased that equipment for approximately $730,000; thus, they claim the amount of collateral security should be reduced by that amount.

The court rejects this argument. Paragraph 5 of the "Security to Surety" section of the Indemnity Agreements entitles Safeco to encumber MES' equipment through a UCC filing as collateral security "to repay all loss and expense" to Safeco. Thus, for the reasons stated in Section II.C. supra, that collateral is to be applied against Safeco's previously incurred losses, not its anticipated losses. The amount of Safeco's collateral demand for the PRTF Project is not reduced because of the lien.[16]

In sum, the pending Perini invoice in the amount of $779,566.97 should not be eliminated from Safeco's collateral security demand for the PRTF Project. Specifically, the court rejects MES defendants' arguments that the amount should be eliminated because: (i) that amount was billed to Safeco, but not yet paid, as of August 24, 2010, (ii) that amount represents the cost of "un-bonded" work, and (iii) Safeco waived its right to that collateral security. The court also rejects MES defendants' argument that that the amount of collateral should be reduced due to Safeco's lien on MES' construction equipment. I find that $779,566.97 is a reasonable estimate of Safeco's anticipated losses on the PRTF Project.

IV.    Safeco's Revised Collateral Security Demand for Its Projected Legal and Consulting Fees

In its revised demand, Safeco seeks collateral security from MES and Hirani defendants to cover $875,000 in projected legal and consulting fees. Safeco contends that this budget encompasses two categories of legal and consulting services:

(i)    the services of Safeco's consultant, Cashin, Spinelli & Feretti, to assist in overseeing the [PRTF] and HEPFF completion work, responding to the Government's bond claim on the ERDLF Project, resolving disputes with the Government on all three projects, and resolving this indemnity action; and

---

[16] The court notes that the amount of collateral security provided by the lien is uncertain. MES defendants claim that it provides $730,000 in collateral, because that was the amount for which MES purchased the equipment. However, the value of the equipment has likely depreciated since MES purchased it.

(ii)    the services of Safeco's legal counsel to assist in responding to issues requiring legal assistance on the [PRTF] and HEPFF completion work, as well as responding to the Government's bond claim on the ERDLF Project, resolving disputes with the Government on all three Projects, and litigating this indemnity action.

Plaintiff's Motion to Establish Collateral Amount ("Pl. Mem."), Dkt. No. 110, at 12.  Safeco sought collateral security for this $875,000 in its August 24 demand to MES defendants, but it did not seek that collateral security in its August 24 demand to Hirani defendants.  Both MES and Hirani defendants assert that Safeco is not entitled to collateral security for projected legal and consulting fees under the Indemnity Agreements.  Hirani defendants also argue that, because they were only involved in the HEPFF Project, they should not be required to provide collateral security for projected legal and consulting fees related to all three projects.

As an initial matter, the court holds that Safeco is not entitled to collateral security from Hirani defendants to cover its projected legal and consulting fees.  In its September 30 Order, the court clearly stated that, in its revised demand to be submitted to this court, "Safeco shall not include additional claims not previously sought."  Dkt. No. 107 at 11.  Safeco's August 24 demand to Hirani defendants did not include a demand for $875,000 in projected legal and consulting fees.  See Mohan-Maxfield Aff. Ex. 2.  Thus, Safeco may not seek collateral security for those fees in its revised demand to Hirani defendants.

With respect to Safeco's demand to MES defendants for collateral security to cover its projected fees, MES defendants claim Safeco is not entitled to collateral security for those fees under the Indemnity Agreements.  In support of their argument, MES defendants cite Safeco Ins. Co. of America v. Oakland Excavating Co., 2009 U.S. Dist. LEXIS 50324 (E.D. Mich. June 12, 2009).  In Oakland, Safeco sought collateral security for legal fees and costs under an indemnity agreement with defendants in that case.  That indemnity agreement contained a collateral

security provision identical to Paragraph 2 of the "Indemnity to Surety" section of the Indemnity Agreements at issue in this case. The court in Oakland found that Safeco was not entitled collateral security for its legal fees and costs under that provision. The court stated:

> "While plaintiff has demanded an additional $20,000 as collateral security for fees and expenses incurred in the Galaxy litigation, the Indemnity Agreement only provides for payment on demand as collateral security of 'An amount sufficient to discharge any claim made against Surety on any Bond . . . [which] may be used by Surety to pay such claim or be held by Surety as collateral security against loss on any bond,' and does not require collateral security for attorneys fees and costs."

Id. at *11-*12 (alteration in original; citation omitted). MES defendants contend that the Oakland court's interpretation of that collateral security provision should apply in this case.

Even if this court accepted the Oakland court's interpretation, Safeco would still be entitled to collateral security from MES defendants for its projected legal and consulting fees. The Oakland court's interpretation only bears upon one collateral security provision at issue in this case: Paragraph 2 of the "Indemnity to Surety" section. The court's interpretation does not relate to Paragraph 5 of the "General Provisions" section of the Indemnity Agreements. That provision entitles Safeco to collateral security "sufficient to cover all exposure under such bond or bonds . . . ." In its September 30 Order, this court held that "[t]he term 'exposure' in Paragraph 5 unambiguously refers to the risk of loss or future loss faced by Safeco . . . ."[17] Dkt. No. 107 at 5. "Loss," in turn, is broadly defined in the Indemnity Agreements to include "court costs, reasonable attorney fees . . . consultant fees, [and] investigative costs . . . ." Indemnity Agreements at "Indemnity to Surety" ¶ 1. Thus, regardless of how Paragraph 2 is interpreted, Safeco is entitled to collateral security for projected legal and consulting fees under Paragraph 5.

---

[17] Merriam-Webster's Dictionary defines "exposure," in part, as "the condition of being at risk of financial loss." Merriam-Webster's Online Dictionary, at http://www.merriam-webster.com/dictionary/exposure (last visited Nov. 16, 2010).

Safeco's collateral security demand for $875,000 to cover its projected legal and consulting fees is reasonable.  Safeco asserts that its projections are derived from "consultation with counsel and Safeco's consultants and are reasonable in light of the expected time and effort to litigate these matters as well as the length and complexity of the construction projects that Safeco is presently completing."  Pl. Mem. at 12.  It contends that these "budgeted amounts for future costs are also consistent with the legal and consulting costs incurred to-date . . . ."  Id.  The court agrees.  Given the protracted nature of this litigation, and the ongoing construction on the HEPFF and PRTF Projects, Safeco is likely to incur significant legal and consulting fees going forward.  Its projected budget for those fees was derived through consultation with legal counsel and Safeco's consultants, and that budget is consistent with the fees that Safeco has already incurred, which were approximately $1.8 million as of Safeco's August 24 demand.  See Mohan-Maxfield Aff. Ex. 1.  Safeco's collateral security demand of $875,000 is a reasonable estimate of Safeco's projected legal and consulting fees.  It is entitled to collateral security to cover those anticipated losses from MES defendants.[18]

---

[18] Based on the holdings in Sections II.-IV. supra, the court rejects defendants' argument that Safeco's revised demand for collateral security was made in bad faith.  See MES Def. Mem. at 5-6.

## CONCLUSION

The court holds that Safeco is entitled to $6,614,634.41 in collateral security from MES defendants and $4,960,067.44 in collateral security from Hirani defendants. Under the Indemnity Agreements, defendants are jointly and severally liable for the $4,960,067.44 in collateral security for the HEPFF Project. Defendants therefore are directed to reach an agreement regarding apportionment of that amount and to provide a total of $4,960,067.44 in collateral security for the HEPFF project to Safeco by December 1, 2010. If defendants do not reach an agreement regarding apportionment, MES and Hirani defendants shall each provide Safeco with $2,480,033.72 in collateral security for the HEPFF Project on that date. MES defendants shall provide Safeco with the additional $779,566.97 in collateral security for the PRTF Project and $875,000 in collateral security for projected legal and consulting fees by December 1, 2010. SO ORDERED.

/s/ ARR_____
Allyne R. Ross
United States District Judge

Dated: November 22, 2010
Brooklyn, New York