UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------------x

SAFECO INSURANCE COMPANY                          09-CV-3312 (ARR) (ALC)
OF AMERICA,

                          Plaintiff,             <u>NOT FOR PRINT OR
                                                 ELECTRONIC
                                                 PUBLICATION</u>

        -against-


M.E.S., INC., et al.,                            <u>OPINION & ORDER</u>

                          Defendants.
--------------------------------------------------------------------x

ROSS, United States District Judge:

On July 30, 2009, plaintiff Safeco Insurance Company of America ("Safeco" or

"plaintiff") filed a complaint in the instant case against defendants M.E.S., Inc. ("MES"),

M.C.E.S., Inc. ("MCES"),  and George Makhoul (collectively, "MES defendants"), and

defendants Hirani Engineering & Land Surveying, P.C. ("Hirani Engineering"), Hirani/MES JV,

Jitendra S. Hirani, and Sarita Hirani (collectively, "Hirani defendants" and, together with MES

defendants, "defendants").  The complaint asserts multiple claims arising from written Indemnity

Agreements among the parties.  Presently before the court are (i) defendants' motion for a stay of

the court's November 22, 2010 Order pending their appeal of that Order to the Second Circuit

and (ii) Safeco's motion for enforcement of its right to an assignment of defendants' claims on

the three bonded projects at issue in this litigation, and its right to a power-of-attorney to

effectuate that assignment, under the Indemnity Agreements.  For the reasons set forth below,

and under the conditions described herein, both motions are granted.

# BACKGROUND[1]

I.    <u>Relevant Provisions of the Parties' Indemnity Agreements</u>

Safeco entered into an indemnity agreement with MES defendants on February 2, 2003, and it entered into an identical indemnity agreement with MES and Hirani defendants on June 23, 2003.[2] March 4, 2010 Affidavit of Caryn Mohan-Maxfield, Esq., Ex. A-B, Dkt. No. 64-4, 64-5 ("Indemnity Agreements"). For purposes of this Order, there are several key provisions of the Indemnity Agreements, all of which relate to Safeco's right to indemnification and right to collateral security under those agreements.

The "Indemnity to Surety" section of the Indemnity Agreements addresses both Safeco's right to indemnification and its right to collateral security. It states:

INDEMNITY TO SURETY: Undersigned agree to pay to Surety upon demand:

1.    All loss, costs and expenses of whatsoever kind and nature, including court costs, reasonable attorney fees . . . , consultant fees, investigative costs, and any other losses, costs or expenses incurred by Surety by reason of having executed any Bond, or incurred by it on account of any Default under this agreement by any of the Undersigned.
. . .

2.    An amount sufficient to discharge any claim made against Surety on any Bond. This sum may be used by Surety to pay such claim or be held by Surety as collateral security against loss on any bond.

Indemnity Agreements at 1.

The Indemnity Agreements also contain several other relevant provisions related to collateral security. The "Security to Surety" section states:

SECURITY TO SURETY: As collateral security to Surety for the agreement of the Undersigned to repay all loss and expense to Surety, the Undersigned:

---

[1] A more detailed factual background is set forth in the court's May 18, 2010 Order. Dkt. No. 80 at 2-12. Familiarity with that background is presumed.
[2] MCES was not a party to the June 23 indemnity agreement.

1.  Assigns to Surety, as of the date of execution of any Bond, all rights of the Contractor in, or in any manner growing out of:

    . . .

    d.  Any actions, causes of action, claims or demands whatsoever which Contractor may have or acquire against any party to the Contract, or arising out of or in connection with any Contract including but not limited to those against obligees and design professionals and any surety or sureties of any obligee, and Surety shall have the full and exclusive right, in its name or in the name of the Contractor, but not the obligation, to prosecute, compromise, release or otherwise resolve such actions, causes of action, claims or demands;

    . . .

    The Surety agrees to forbear exercising the rights granted to it in (a) through (f) until there is a Default under this agreement;

2.  Irrevocably nominate and appoint any officer of Surety as the true and lawful attorney-in-fact of the Undersigned, with full right and authority in event of Contractor's default to:

    a.  Sign the name of the Undersigned to any voucher, release, satisfaction, check, bill of sale of property referred to herein, or any other paper or contract necessary or desired to carry into effect the purpose of this agreement;

    b.  Dispose of performance of any Contract by subletting it in Contractor's name or otherwise.

Indemnity Agreements at 2. The "General Provisions" section of the Indemnity Agreements

provides:

GENERAL PROVISIONS:

. . .

5.  The undersigned will, on request of Surety, procure the discharge of Surety from any Bond and all liability by reason thereof. If such discharge is unattainable, the Undersigned will, if requested by Surety, either deposit collateral with Surety, acceptable to Surety, sufficient to cover all exposure under such bond or bonds, or make provisions acceptable to Surety for the funding of the bonded obligation(s).

Indemnity Agreements at 2.

II.   Procedural History

On May 18, 2010, the court granted Safeco's motion for partial summary judgment with

respect to its right to collateral security under Paragraph 2 of the "Indemnity to Surety" section and Paragraph 5 of the "General Provisions" section of the Indemnity Agreements. Dkt. No. 80.[3] In awarding specific performance of that right, the court reached two pertinent conclusions. First, the court found that the Indemnity Agreements, and the relevant case law, drew a clear distinction between the right to collateral security and the right to indemnification. Id. at 18-20. Collateral security is an interim remedy designed to secure a surety against its potential losses until the ultimate issue of indemnification can be resolved. Id. It is a reserve posted by the indemnitor that must be held in trust by the surety and "repaid to the extent that damages are reduced or not awarded." Id. at 20 (citation omitted). Under the Indemnity Agreements, the court held that Safeco had a right to collateral security separate and distinct from its right to indemnification. Id. Second, the court found that defendants' allegations that Safeco acted in bad faith by causing defendants' default on the bonded projects were irrelevant to the court's enforcement of the collateral security provisions; rather, those allegations were to be addressed at the indemnification stage of litigation. Id. at 20-25. The court acknowledged that the case law did not squarely address the question of whether allegations of bad faith should be considered at the indemnification stage of litigation as opposed to the collateral security stage. Id. at 20. However, a survey of the of the relevant case law demonstrated "that courts addressing bad faith allegations address them only with respect to the ultimate issue of indemnification even when collateral security claims are raised . . . ." Id. at 23. That case law – along with the fact that collateral security is an interim remedy – compelled the conclusion that "defendants' allegations of bad faith are not relevant to the limited issue of collateral security . . . ." Id.

In its May 18 Order, the court declined to address plaintiff's argument that under the Indemnity Agreements it was entitled to an automatic assignment of any claims belonging to the

---

[3] The court also granted Safeco's motion for access to defendants' books and records. Id. at 29.

defendants related to the three bonded projects, as well as a power-of-attorney to effectuate that assignment. Id. at 27. In its brief on that issue, Safeco asserted that an indemnitor may avoid the automatic claims-assignment provision of the Indemnity Agreements by depositing collateral or otherwise securing the surety's discharge from liability. Id. at 28. Thus, because the court granted Safeco summary judgment with respect to its right to collateral security, it declined plaintiff's request for an order enforcing the claims-assignment provision and the power-of-attorney provision at that time. Id. However, the court stated: "To the extent defendants refuse or are unable to provide collateral security, and to the extent the parties are unable to reach an agreement on the assignment of claims if collateral security is not posted, plaintiff is free to resubmit its motion with respect to the assignment of claims provisions." Id. at 28 n.6.

Although the court ordered enforcement of Safeco's right to collateral security in its May 18 Order, it declined to set an amount of collateral security that defendants must provide until Safeco provided support for the reasonableness of its demand. On August 24, 2010, in separate letters to MES defendants and Hirani defendants, Safeco served on defendants the specific demand for collateral security that this court requested in its May 18 Order. Safeco demanded $13,325,000.00 in collateral security from MES defendants and $8,800,000.00 from Hirani defendants. Oct. 8, 2010 Affidavit of Caryn Mohan-Maxfield, Esq., ("Mohan-Maxfield Aff."), Dkt. No. 110-1, Ex. 1-2. Safeco's collateral demand to MES defendants reflected its "actual and anticipated losses" on each of the three bonded projects at issue in this litigation. Id. Ex. 1. That demand to MES defendants also included Safeco's projected legal and consulting fees related to the three projects. Id. Because Hirani defendants were only involved in the High Energy Propellant Formulation Facility Project ("HEPFF") Project, Safeco's collateral demand to them reflected its "actual and anticipated losses" solely on that project. Id. Ex. 2. Safeco's demand to

Hirani defendants did not include projected legal and consulting fees.  Id.  To each letter, Safeco attached backup documentation for its demand for collateral security, including accounting spreadsheets detailing expenditures and receipts on each bonded project.  Id. ¶¶ 5-10.

On September 30, 2010, in response to defendants' motion for reconsideration of the court's May 18 Order, the court issued an Order directing Safeco to revise its August 24 demand for collateral security and to submit that revised demand to the court.  Dkt. No. 107.  The court directed Safeco to eliminate from its August 24 demand "all amounts for losses attributable to each project already paid as of that date . . . ."  Id. at 10.  That ruling was grounded in Paragraph 2 of the "Indemnity to Surety" section and Paragraph 5 of the "General Provisions" section of the Indemnity Agreements.  Respectively, those provisions afford Safeco the right to demand collateral security from defendants "to discharge any claim against Surety on any Bond" and "to cover all exposure under such bond or bonds."  The court determined that those provisions drew a distinction between anticipated losses (i.e. unpaid claims) and existing losses already incurred (i.e. paid claims).[4]  Dkt. No. 107 at 3-5.  Based on that distinction, and an analysis of the relevant case law, the court found that "specific performance to enforce a collateral security provision is available for losses under a bond that are uncertain but anticipated at some point in the future." Id. at 6.  However, "where an obligation is certain and paid, the surety has an adequate remedy at law, that is, enforcing the indemnification clause of the bargained for agreement, and thus specific performance under a collateral security provision is unavailable."  Id.  Thus, because Safeco had an adequate remedy at law for paid claims, the court ordered elimination of those claims from its collateral demand, such that the resulting demand only consisted of Safeco's

---

[4] Specifically, the court stated: "Paragraph 2 of the Indemnity to Surety section[] clearly specifies that collateral security is to be provided by the indemnitor for unpaid claims, not existing losses already incurred . . . .  The term 'exposure' in Paragraph 5 [of the General Provisions section] unambiguously refers to the risk of loss or future loss faced by Safeco, not to losses already sustained . . . ."  Id. at 5.

anticipated losses. Id. at 10. The court also ordered Safeco to "justify the reasonableness of its resulting demand for collateral security by any necessary explanation and documentation," and the court directed Safeco not to include in its revised demand additional claims not previously sought. Id. at 10-11. In light of the ongoing nature of the contracts and payments, the court adopted August 24, 2010, the date of Safeco's formal demand, as the date on which to fix paid versus unpaid claims and to calculate the amount of collateral security. Id. at 10-11.

On November 22, 2010, after reviewing the parties' submissions regarding the appropriate amount of collateral security necessary to cover Safeco's anticipated losses, the court held that Safeco is entitled to $6,614,634.41 in collateral security from MES defendants and $4,960,067.44 in collateral security from Hirani defendants. Dkt. No. 121 at 25. Because MES and Hirani defendants are jointly and severally liable for the $4,960,067.44 in collateral security for the HEPFF Project, the court directed defendants to reach an agreement regarding apportionment of that amount and to provide Safeco with a total of $4,960,067.44 in collateral security for the HEPFF Project by December 1, 2010. Id. If the defendants could not reach an agreement regarding apportionment, the court directed MES and Hirani defendants to each provide Safeco with $2,480,033.72 in collateral security for the HEPFF Project by that date. Id. The court also directed MES defendants to provide Safeco with the additional $779,566.97 in collateral security for the Pyrotechnics Research Technology Facility ("PRTF") Project and $875,000 in collateral security for projected legal and consulting fees by December 1, 2010. Id.

In setting the appropriate amount of collateral security, the court contrasted the collateral security provisions in Paragraph 2 of the "Indemnity to Surety" section ("Paragraph 2") and Paragraph 5 of the "General Provisions" section ("Paragraph 5") with the collateral security provision in Paragraph 1 of the "Security to Surety" section ("Paragraph 1") of the Indemnity

Agreements. Id. at 12-14. The court pointed out that these provisions are different in character. Paragraph 2 and Paragraph 5 – which were addressed in the court's May 18 and September 30 Orders – require defendants, upon demand from Safeco, to provide collateral security in the form of monetary payment to cover Safeco's anticipated losses. Id. at 13. However, those provisions do not entitle Safeco to demand monetary payment from defendants as collateral security to cover previously incurred costs. Id. By contrast, at the moment defendants are declared to be in default, without making a demand, Safeco is entitled to certain rights enumerated in Paragraph 1 as collateral security "to repay all loss and expense to Surety." Id. The collateral security received by Safeco under that provision can only be applied to costs already incurred by Safeco, not anticipated losses. Id. Thus, because Paragraph 1 provides a different form of collateral security to cover different types of losses, the court held that any collateral security provided under that provision did not reduce the amount of collateral security that defendants are required to provide to Safeco under Paragraph 2 and Paragraph 5. Id. at 13-14.

By letter dated November 24, 2010, MES defendants asked the court to reconsider its November 22 Order or, in the alternative, to grant a stay of that Order pending defendants' appeal to the Second Circuit. Dkt. No. 122. Hirani defendants joined that request by letter dated November 29, 2010. Dkt No. 123. In their letters, defendants argued that the court should reconsider its November 22 Order because that Order required them to post collateral security in an amount that "far exceeds" their assets. Dkt. No. 122, 123. Defendants argued that, if they are required to post that collateral security, they would become insolvent, and they would not have sufficient assets to continue their defense of this case. Id. Because that argument had not been previously raised to the court, the court denied defendants' motion for reconsideration on November 30, 2010. Dkt. No. 125. However, the court directed the parties to submit briefs

regarding defendants' motion for a stay. Id.

On December 8, 2010, after it received the parties' submissions regarding defendants' motion for a stay, the court issued an Order to Show Cause. That Order directed the parties to submit briefs to the court regarding why, if this court grants a stay of its November 22 Order pending appeal, it should not also grant Safeco an assignment of claims pursuant to Paragraph 1.d. of the "Security to Surety" section of the Indemnity Agreements.

III.    The Instant Motion

Presently before the court are (i) defendants' motion for a stay of the court's November 22 Order pending their appeal of that Order to the Second Circuit and (ii) Safeco's motion for enforcement of its right to an assignment of defendants' claims related to the three bonded projects, and its right to a power-of-attorney to effectuate that assignment, under the Indemnity Agreements. In their motion for a stay, defendants contend that the requirements for a stay pending appeal under Federal Rule of Civil Procedure 62(c) are satisfied in this instance. In response, Safeco disputes that the requirements of that Rule have been met and argues that a stay should not be granted. In the alternative, should the court grant a stay, Safeco asks the court to require defendants to each post a bond during the pendency of defendants' appeal. With respect to Safeco's motion for enforcement of its rights to an assignment of claims and a power-of-attorney, Safeco asserts that it is entitled to those rights under the Indemnity Agreements. In response, defendants do not contest that Safeco is entitled to those rights; rather, they urge the court to stay enforcement of those rights until after defendants have prosecuted their appeal of the court's November 22 Order.

For the reasons set forth below, the court grants defendants' motion for a stay of the court's November 22 Order pending appeal. The stay shall become effective upon the posting of

court-approved bonds in the amount of $200,000 by MES defendants and $1,000,000 by Hirani defendants. The court also grants Safeco's motion for enforcement of its right to an assignment of defendants' claims, and its right to exercise a power-of-attorney to effectuate that assignment, under the Indemnity Agreements. The court declines to stay its Order enforcing those rights.

## **DISCUSSION**

I.     <u>Defendant's Motion for a Stay Pending Appeal</u>

The court must analyze defendants' motion for a stay of the November 22 Order under Rule 62(c).[5] Rule 62(c) provides, in part: "While an appeal is pending from an interlocutory order or final judgment that grants, dissolves, or denies an injunction, the court may suspend, modify, restore, or grant an injunction on terms for bond or other terms that secure the opposing party's rights." A stay pending appeal under Rule 62(c) "is not a matter of right, even if irreparable injury might result." <u>Nken v. Holder</u>, 129 S.Ct. 1749, 1760 (2009) (citation omitted). Rather, it is "an exercise of judicial discretion, and [t]he propriety of its issue is dependent upon the circumstances of the particular case." <u>Id.</u> (internal quotation marks and citations omitted; alteration in original). "The party requesting a stay bears the burden of showing that the circumstances justify an exercise of that discretion." <u>Id.</u> at 1761 (citations omitted).

"The fact that the issuance of a stay is left to the court's discretion does not mean that no legal standard governs that discretion . . . . [A] motion to [a court's] discretion is a motion, not to its inclination, but to its judgment; and its judgment is to be guided by sound legal principles." <u>Id.</u> (internal quotation marks and citations omitted; alterations in original). "[T]hose legal principles have been distilled into consideration of four factors: (1) whether the stay applicant

---

[5] In its November 30 Order, the court held: "Although the November 22 Order does not provide injunctive relief, its enforcement of Safeco's right to collateral security through specific performance is injunctive in character. Accordingly, the court must analyze defendants' request for a stay of the November 22 Order under Rule 62(c)." Dkt. No. 125 at 4.

has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant

will be irreparably injured absent a stay; (3) whether the issuance of the stay will substantially

injure the other parties interested in the proceeding; and (4) where the public interest lies." Id.

(internal quotation marks and citations omitted). "[T]he degree to which a factor must be present

varies with the strength of the other factors, meaning that more of one [factor] excuses less of the

other." In re: World Trade Ctr. Disaster Site Litig., 503 F.3d 167, 170 (2d Cir. 2007) (internal

quotation marks and citations omitted). However, in conducting this analysis, the Supreme

Court has instructed that the first two factors are the "most critical." Nken, 129 S.Ct. at 1761. A

district should only grant a stay "when it is necessary to preserve the status quo pending the

appeal." Kidder, Peabody & Co. v. Maxus Energy Corp., 925 F.2d 556, 565 (2d Cir. 1991).

"*Maintaining the status quo* means that a controversy will still exist once the appeal is heard."

12 Moore's Federal Practice § 62.06[1] (Matthew Bender 3d ed.) (emphasis in original).

To protect the non-moving party's interests, a district court may require the moving party

to post a bond before granting a stay under Rule 62(c). Fed. R. Civ. P. 62(c); In re: Tower

Automotive, Inc., 2007 U.S. Dist. LEXIS 49282, at *4 (S.D.N.Y. July 3, 2007). "The propriety

of any security posted is a discretionary determination made by the court." Arlington Indus., Inc.

v. Bridgeport Fittings, Inc., 2010 U.S. Dist. LEXIS 21426, at *22 (M.D.Pa. March 9, 2010)

(internal quotation marks and citations omitted). The purpose of requiring a bond pending

appeal "is to secure the judgment throughout the appeal process against the possibility of the

judgment debtor's insolvency." Frommert v. Conkright, 2007 U.S. Dist. LEXIS 15370, at *5

(W.D.N.Y. March 6, 2007) (citing Grubb v. FDIC, 833 F.2d 222, 226 (10th Cir. 1987)). Thus,

requiring the moving party to post a bond before granting a stay pending appeal is the "usual

rule." Exxon Corp. v. Esso Worker's Union, Inc., 963 F.Supp. 58, 60 (D. Mass. 1997) (citing

F.D.I.C. v. A & R Constr., Inc., 921 F.Supp. 153, 155 (E.D.N.Y. 1996)).

Based on its analysis of the four factors for a stay under Rule 62(c), as articulated by the Supreme Court in Nken, the court finds that defendants have met their burden of demonstrating circumstances that justify a stay of the court's November 22 Order. The court also finds it appropriate to require each defendant to post a bond during the pendency of defendants' appeal.

   A.    *Defendants' Likelihood of Success on the Merits*

To be granted a stay pending appeal, the moving party must demonstrate a "strong showing that he is likely to succeed on the merits." Nken, 129 S.Ct. at 1761. "There is no precise threshold of probability that must be demonstrated in order to satisfy this factor." Barclay's Capital Inc. v. Theflyonthewall.com, 700 F.Supp.2d 310, 350 (S.D.N.Y. 2010) (citation omitted). The Supreme Court has indicated that "[m]ore than a mere 'possibility' of relief is required." Nken, 129 S.Ct. at 1761 (citation omitted; alteration in original). However, the moving party need not demonstrate that it is more likely than not to succeed on the merits of its appeal. Citigroup Global Markets, Inc. v. VCG Special Opportunities Master Fund Ltd., 598 F.3d 30, 37 (2d. Cir. 2010). "The probability of success that must be demonstrated is inversely proportional to the amount of irreparable injury [the moving party] will suffer absent the stay. Simply stated, more of one excuses less of the other." Mohammed v. Reno, 309 F.3d 95, 102 (2d Cir. 2002) (internal quotation marks and citation omitted). The gravity of the injury faced by the moving party if a stay is denied may indicate that "the degree of likelihood of success on appeal need not be set too high." Id.

In this instance, the court finds that the "likelihood of success on appeal need not be set too high." Id. As discussed below, denial of a stay in this case would result in significant irreparable harm to defendants; the award of collateral security threatens to render defendants

insolvent, such that they will not have sufficient funds to prosecute their appeal. Given the inverse relationship between the irreparable injury defendants will suffer absent the stay and the probability of success that they must demonstrate, id., the court holds that defendants must simply show "more than a mere possibility" of success on appeal, Nken, 129 S.Ct. at 1761.

Although it is a close question, the court finds that defendants have made the requisite showing. It is unlikely that defendants' will succeed on their appeal of the court's November 22 Order to the Second Circuit. The parties have thoroughly briefed the collateral security issue, and the court has thoroughly considered that issue in its previous Orders. In their motion for a stay pending appeal, defendants rehash the same arguments previously made to this court as to why their allegations of bad faith should be addressed at the collateral security stage of litigation. The court has previously rejected those arguments, and it rejects them again for the reasons set forth in its previous Orders. See, e.g., Dkt. No. 80 at 20-25. Defendants have presented the court with no new authority or arguments that would undermine its decision. Nonetheless, although the relevant case law strongly indicates that the issue of bad faith should be addressed at the indemnification stage of litigation, the court recognizes that the case law does not provide definitive guidance on this issue. For that reason, the court holds that defendants have demonstrated "more than a mere possibility" of success on appeal. See Ctr. for Int'l Envtl. Law v. Office of the United States Trade Representative, 240 F.Supp.2d 21, 22 (D.D.C. 2003) (finding that the moving party satisfied its burden under this factor because the case presented an issue of first impression).

    B.    Irreparable Harm to Defendants

The second Nken factor is "whether the applicant will be irreparably injured absent a stay." 129 S.Ct. at 1761. "To establish irreparable harm, plaintiffs must demonstrate 'an injury

that is neither remote nor speculative, but actual and imminent.'" Tucker Anthony Realty Corp. v. Schlesinger, 888 F.2d 969, 975 (2d Cir. 1989) (citations omitted). "The injury must be one requiring a remedy of more than mere money damages. A monetary loss will not suffice unless the movant provides evidence of damage that cannot be rectified by financial compensation." Id. (citations omitted). Thus, "[r]ecoverable monetary loss may constitute irreparable harm only where the loss threatens the very existence of the movant's business." Malarkey v. Texaco, Inc., 794 F.Supp. 1248, 1250 (S.D.N.Y. 1992) (internal quotation marks and citations omitted); see Nemer Jeep-Eagle, Inc. v. Jeep-Eagle Sales Corp, 992 F.2d 430, 435 (2d Cir. 1993) ("[*T*]*hreat* to the continued existence of a business can constitute irreparable injury.") (internal quotation marks and citations omitted; emphasis in original); Schlesinger, 888 F.2d at 975 (stating that bankruptcy constitutes irreparable harm); Vaqueira Tres Monjitas, Inc. v. Irizarry, 587 F.3d 464, 485 (1st Cir. 2009) ("[S]ome economic losses can be deemed irreparable. For instance, . . . where the potential economic loss is so great as to threaten the existence of the movant's business.") (internal quotation marks and citations omitted).

Defendants have provided the court with evidence regarding their financial status and their ability to post collateral security in the amount set by the court in its November 22 Order. With respect to MES defendants, Mr. Makhoul has provided the court with a sworn affidavit regarding his personal finances and the financial status of MES and MCES. In his affidavit, Mr. Makhoul states that, at the end of December 2010, his personal assets will be limited to the $800,000 in his personal bank accounts and less than $200,000 equity in his home. Dec. 3, 2010 Affidavit of George Makhoul ("Makhoul Aff."), Dkt. No. 128-1, at ¶ 16, 22. He also states that "MES and MCES have no assets to speak of." Id. ¶ 22. MES has ceased business operations and "has had no work other than the management of this case and related litigations . . . ." Id. ¶

18.  MCES has one design contract worth $29,000.  Id.  The financial documents submitted by

Safeco to the court do not contradict Mr. Makhoul's affidavit.  See Plaintiff's Memorandum in

Opposition to Defendant's Motion for a Stay Pending Appeal ("Pl. Mem."), Dkt. No. 129, at 20,

Ex. 1.[6]  Thus, the evidence submitted to this court demonstrates that, in total, MES defendants

have assets worth approximately $1,029,000.00.  With respect to Hirani defendants, Mr. Hirani

has provided the court with a sworn affidavit summarizing his and Mrs. Hirani's personal

finances.  His affidavit shows that they have $10,122.70 in cash, three life insurance policies

with a total cash value of $98,769.59, and "no significant assets other than other than Hirani

Engineering and three properties where the total equity is less than $80,000.00."  Dec. 2, 2010

Affidavit of Jitendra Hirani ("Hirani Aff."), Dkt. No. 127-1, at ¶ 10, Ex. A.  In his affidavit, Mr.

Hirani does not detail the financial condition of Hirani Engineering.  Rather, he simply states that

"Hirani defendants have provided Safeco with Hirani Engineering's consolidated financial

statements for fiscal year 2007, 2008, and 2009."  Id.  Safeco has provided the court with Hirani

Engineering's financial statement for 2009, which indicates that Hirani Engineering had

approximately $2.5 million in stockholder equity as of December 31, 2009.  Pl. Mem. at 20, Ex.

2 at 6.  Hirani defendants have submitted nothing to the court that disputes the amount of

stockholder equity in Hirani Engineering.  Thus, the evidence submitted to this court

demonstrates that Hirani defendants have assets worth approximately $2.69 million.

Based on the evidence submitted regarding defendants' financial status, it is clear that the

court's November 22 Order imminently threatens to render defendants insolvent.  Under that

Order, MES and Hirani defendants are jointly and severally liable for the $4,960,067.44 in

---

[6] Safeco has not disputed that, in accordance with its rights under Paragraph 5 of the "Security to Surety" section of
the Indemnity Agreements, it has placed a lien on certain construction equipment owned by MES through a Uniform
Commercial Code filing.  Because Safeco has a security interest in that equipment, the court does not include the
value of that equipment in MES' assets.

collateral security due to Safeco for the HEPFF Project.  MES defendants must further provide

Safeco with an additional $779,566.97 in collateral security for the PRTF Project and $875,000

in collateral security for projected legal and consulting fees.  The collateral security that MES

defendants are required to post far exceeds their $1,029,000.00 in assets.  Likewise, Hirani

defendants' approximately $2.69 million in assets is insufficient to cover the collateral security

for which they are jointly and severally liable on the HEPFF Project.  Thus, enforcement of the

court's November 22 Order imminently threatens to render both MES and Hirani defendants

insolvent.[7]  Such harm constitutes irreparable injury.[8]

### C.      Harm to Safeco

The third <u>Nken</u> factor is "whether the issuance of the stay will substantially injure the

other parties interested in the proceeding."  129 S.Ct. at 1761.  There is no question that Safeco

will be harmed if this court grants a stay of its November 22 Order.  Safeco bargained for a right

to collateral security for anticipated losses under the Indemnity Agreements.  That right is

intended to secure Safeco against anticipated losses until the ultimate issue of indemnity can be

resolved.  Should the court grant a stay of its November 22 Order enforcing that right, Safeco

---

[7] While the imminent threat of insolvency constitutes irreparable harm under the <u>Nken</u> analysis, the court notes that defendants' inability to post the full amount of collateral security due to Safeco is not a basis for reducing that amount.  <u>Am. Motorists Ins. Co, v. Pa. Beads Corp.</u>, 983 F.Supp. 437, 441 (S.D.N.Y. 1997) ("While [defendant's bankruptcy] would indeed be unfortunate, it does not, standing alone, provide a valid justification for denying plaintiff access to the security it specifically bargained for."); <u>Safeco Ins. Co. v. Dematos Enter., Inc.</u>, 2003 U.S. Dist. LEXIS 7651, at *15 (E.D.Pa. 2003) ("The Court finds that Indemnitor Defendants' ability to pay is not a factor in determining the appropriateness of specific performance of the collateral security provision.").  Under the Indemnity Agreements, Safeco is entitled to collateral security regardless of the financial impact upon defendants.
[8] Safeco argues that defendants' "alleged present financial hardship . . . pre-dates the Court's ruling on collateral" and thus "there exists no irreparable harm that will arise solely from the denial of their request for a stay pending appeal."  Pl. Mem. 21.  That argument is unpersuasive.  While defendants' present financial hardship may be "traced all the way back to the Government's three terminations in 2008," <u>id.</u> at 20, the irreparable harm here is not financial hardship.  It is the imminent threat of insolvency.  That irreparable harm derives from the November 22 Order.  Absent that Order, defendants face only a speculative, not imminent, threat of insolvency.  Similarly unpersuasive is Safeco's argument that the court's November 22 Order will not necessarily put defendants out of business because "Safeco could ultimately be ordered to return this collateral."  <u>Id.</u> at 21.  That argument fails for two reasons.  First, the possible return of the collateral security at a later date does not change the fact that defendants are likely to immediately become insolvent if ordered to comply with the November 22 Order.  Second, should defendants' become insolvent, they will not have funds to litigate the merits of this case and seek return of the collateral security.

will not get the benefit of its bargain; its right to collateral security will not be enforced until defendants' appeal is resolved. In the meantime, during the pendency of appeal, the financial condition of defendants likely will continue to deteriorate. Thus, following appeal, Safeco will be able to obtain less collateral security from defendants than it would be able to at this time. Furthermore, if defendants file for bankruptcy before the appeal is resolved, "absent enforcement of the Indemnity Agreement[s'] collateral security clause, plaintiff could . . . be relegated to an unsecured claim and therefore be forced to share its debtor's property with other creditors . . . . [I]t is that precise situation that [plaintiff] sought to avoid in bargaining for the collateral security clause." Am. Motorists, 983 F.Supp. at 441. Thus, Safeco faces substantial injury if the court grants a stay of its November 22 Order enforcing Safeco's right to collateral security.

D.      Public Interest

The final Nken factor is a consideration of "where the public interest lies." 129 S.Ct. at 1761. Here, the public interest lies in favor of denying defendants' motion for a stay. Courts nationally have recognized the vital role of sureties in the construction industry. Liberty Mutual Ins. Co. v. Aventura Engineering & Constr. Corp., 534 F.Supp.2d 1290, 1303 (S.D.Fla. 2008). "The many parties to a typical construction contract – owners, general contractors, subcontractors, and sub-subcontractors – look to sureties to provide assurance that defaults by any of the myriad other parties involved will not result in a loss to them." Gen. Accident Ins. Co. of America v. Merritt-Meridian Const. Corp., 975 F.Supp. 511, 516 (S.D.N.Y. 1997). "Courts have recognized that 'as a practical matter the suppliers and small contractors on large construction projects need reasonably prompt payment for their work and materials in order for them to remain solvent and stay in business.'" Id. (citation omitted). To ensure that they can perform this vital function without incurring loss, "[s]ureties draft their indemnity agreements

broadly, and with extensive protections, and the courts, understanding the importance of the indemnity agreement, consistently enforce the agreements and the remedies granted to the sureties." Aventura, 534 F.Supp.2d at 1303-1304. Thus, the public interest lies in favor of promptly enforcing Safeco's right to collateral security under the Indemnity Agreements by denying defendants' motion for a stay.

> E.      *Balancing the* Nken *Factors*

To determine whether to grant defendants' motion for a stay, the court must balance the four Nken factors. New York State Rest. Ass'n v. New York City Bd. of Health, 545 F.Supp.2d 363, 366 (S.D.N.Y. 2008). In balancing those factors, the court must be mindful of the Supreme Court's instruction that the first two factors are the "most critical." Nken, 129 S.Ct. at 1761. Moreover, the court must weigh the factors in light of the purpose of a stay pending appeal, which is to maintain the status quo, such that "a controversy will still exist once the appeal is heard." 12 Moore's Federal Practice § 62.06[1]; Kidder, 925 F.2d at 565. Consideration should also be given to what extent a bond can be utilized to safeguard the non-moving party's interests during the pendency of appeal. See Frommert, 2007 U.S. Dist. LEXIS 15370, at *5; Arlington, 2010 U.S. Dist. LEXIS 21426, at *22. The court will only grant a stay pending appeal if the moving party has met its heavy burden of establishing a favorable balance of the Nken factors. See Nken, 129 S.Ct. at 1761.

Defendants have met that burden here. The two "most critical" factors – the likelihood of success on the merits and the irreparable harm to defendants – weigh in favor of granting a stay. Although the other two Nken factors – the harm to Safeco and the public interest – weigh in favor of denying the stay, the balance tips in defendants' favor when the purpose behind a stay pending appeal is considered. To maintain the status quo, such that a controversy will exist

when defendants' appeal is heard, a stay must be granted. Absent a stay of the Court's

November 22 Order, defendants face an imminent threat of insolvency. If they become

insolvent, defendants will lack the funds necessary to prosecute their appeal of that Order. Thus,

enforcement of that Order would alter the status quo by depriving defendants of their ability to

appeal. In such circumstances, a stay pending appeal is warranted. Moreover, the harm caused

to Safeco by granting the stay can be mitigated by requiring defendants to each post a bond

before the stay issues. Those bonds will not eliminate the harm caused to Safeco by the stay, but

they will provide Safeco some security during the pendency of defendants' appeal. Thus, in this

instance, the court finds that the appropriate balance is struck by issuing a stay that maintains the

status quo under conditions that mitigate the harm to Safeco. Accordingly, defendants' motion

for a stay of the court's November 22 Order during the pendency of their appeal is granted.

### F.     *The Amount of Defendants' Bonds*

The court has discretion to set the amount of the bonds that defendants must post before

the stay issues. Fed. R. Civ. P. 62(c); <u>Arlington Indus.</u>, 2010 U.S. Dist. LEXIS 21426, at *22.

As previously discussed, MES defendants have approximately $1,029,000.00 in assets and

Hirani defendants have approximately $2.69 million in assets. The court recognizes that

defendants need to maintain sufficient assets to pay their legal fees and other expenses during the

pendency of their appeal. Thus, prior to issuance of the stay, the court is requiring MES

defendants to post a court-approved bond in the amount of $200,000.00 and Hirani defendants to

post a court-approved a bond in the amount of $1,000,000.00.

### II.    <u>Safeco's Motion for Enforcement of Its Right to an Assignment of Defendants' Claims and Its Right to a Power-of-Attorney</u>

Safeco argues that, under the Indemnity Agreements, it is entitled to an automatic

assignment of any claims belonging to defendants on the bonded projects, as well as a power-of-

attorney to effectuate that assignment. Defendants do not contest that Safeco is entitled to those rights under the Indemnity Agreements; rather, they urge the court to stay enforcement of those rights until defendants have appealed the court's November 22 Order. For the reasons that follow, the court grants Safeco's motion for enforcement of its rights to an assignment of claims and a power-of-attorney, and it denies defendants' request to stay enforcement of those rights.

      A.     *Safeco is Entitled to Enforcement of Its Right to an Assignment of Defendants'*                   *Claims and Its Right to a Power-of-Attorney*

In its May 18 Order, the court declined to address plaintiff's request for an order enforcing its right to an assignment of defendants' claims related to the bonded projects and its right to a power-of-attorney to effectuate that assignment. In its briefs to the court regarding that issue, plaintiff contended that an indemnitor may avoid the automatic claims-assignment provision by depositing collateral or otherwise securing the surety's discharge from liability. Thus, because the court ordered enforcement of plaintiff's right to collateral security, it declined to address Safeco's rights to an assignment of claims and a power-of-attorney under the Indemnity Agreements. However, the court noted that Safeco was free to resubmit its motion with respect to those rights should defendants be unable to provide sufficient collateral security. After defendants submitted their motion for a stay of the court's November 22 Order – in which they asserted that they could not afford to post the requisite collateral security – the court issued an Order to Show Cause on December 8, 2010. That Order directed the parties to show cause as to why, if this court grants a stay of its November 22 Order pending appeal, it should not also grant Safeco an assignment of claims pursuant to Paragraph 1.d. of the "Security to Surety" section of the Indemnity Agreements. In their response to that Order, defendants do not contest that Safeco is entitled to an assignment of defendants' claims and a power-of-attorney. In its response to that Order, Safeco argues that it is entitled to those rights irrespective of whether the

court stays its November 22 Order.  The court agrees with Safeco.

Whether a contract is clear or ambiguous is a question of law.  <u>Kass v. Kass</u>, 91 N.Y.2d 554, 566 (1998).  To determine parties' rights under a contract, courts begin with the terms of the contract itself to see if the intent of the parties can be gleaned without resort to extrinsic evidence.  <u>Hugo Boss Fashions, Inc. v. Fed. Ins. Co.</u>, 252 F.3d 608, 617 (2d Cir. 2001).  "Contract language is not ambiguous if it has a definite and precise meaning, unattended by danger of misconception in the purport of the [contract] itself, and concerning which there is no reasonable basis for a difference of opinion."  <u>Id.</u> (citation omitted).  "A familiar and eminently sensible proposition of law is that, when parties set down their agreement in a clear, complete document, their writing should as a rule be enforced according to its own terms."  <u>Id.</u> (citation omitted).

With respect to Safeco's right to an assignment of defendants' claims on the bonded projects, the Indemnity Agreements are clear.  Under Paragraph 1.d. of the "Security to Surety" section of the Indemnity Agreements, "as of the date of execution of any Bond," defendants assigned their rights to Safeco in:

> Any actions, causes of action, claims or demands whatsoever which Contractor may have or acquire against any party to the Contract, or arising out of or in connection with any Contract . . . , and [Safeco] shall have the full and exclusive right, in its name or in the name of the Contractor, but not the obligation, to prosecute, compromise, release or otherwise resolve such actions, causes of actions, claims or demands.

Safeco agreed "to forebear exercising the rights granted to it [in that provision] until there [was] a Default under the [Indemnity Agreements]."  <u>Id.</u>  A declaration of default by the obligee of any bond constitutes a "Default" under the Indemnity Agreements.  Indemnity Agreements at "Default" ¶ (1).  Thus, upon such a declaration, Safeco was entitled to exercise its right to an assignment of claims.  <u>Id.</u>  Accordingly, because the Army Corps of Engineers' ("Corps")

declared defendants to be in default on all three bonded contracts, Safeco has a right to an assignment of defendants' claims related to those projects under the Indemnity Agreements.

Safeco's right to an assignment of defendants' claims is independent of its right to collateral security to cover its anticipated losses. The latter right derives from Paragraph 2 of the "Indemnity to Surety" section ("Paragraph 2") and Paragraph 5 of the "General Provisions" section ("Paragraph 5") of the Indemnity Agreements. Paragraph 2 states that Safeco may demand collateral security from defendants "to discharge any claim against Surety on any Bond," while Paragraph 5 states that Safeco may request collateral security "to cover all exposure under such bond or bonds." As explained in the court's September 30 Order, those provisions require defendants, upon demand from Safeco, to provide collateral security in the form of monetary payment to cover Safeco's anticipated losses. Dkt. No. 107 at 3-5. By contrast, Paragraph 1 of the "Security to Surety" section ("Paragraph 1") provides that, at the moment of defendants' default, without making a demand, Safeco is entitled to certain rights as collateral security "to repay all loss and expense to Surety." November 22 Order, Dkt. No. 121 at 13. The collateral security under that provision is for costs already incurred by Safeco, not anticipated losses. Id. Thus, Paragraph 1 provides a different form of collateral security to cover different types of losses than Paragraph 2 and Paragraph 5. In other words, Paragraph 1 affords rights to Safeco that are separate and distinct from the right to collateral security for anticipated losses. Accordingly, Safeco is entitled to an assignment of claims under Paragraph 1 regardless of whether defendants can post the requisite collateral security under Paragraph 2 and Paragraph 5, and the court's stay of its November 22 Order is irrelevant to enforcement of

Safeco's right to an assignment of claims.[9]

The Indemnity Agreements also are clear with respect to Safeco's right to a power-of-attorney to effectuate that assignment. Under Paragraph 2 of the "Security to Surety" section, as collateral security "to repay all loss and expense to Surety," defendants agreed to:

> Irrevocably nominate and appoint any officer of Surety as the true and lawful attorney-in-fact of the Undersigned, with full right and authority in the event of Contractor's default to:
>
> a. Sign the name of the Undersigned to any voucher, release, satisfaction, check, bill of sale of property referred to herein, or any other paper or contract necessary or desired to carry into effect the purposes of this agreement;
>
> b. Dispose of performance of any Contract by subletting it in Contractor's name or otherwise.

This provision is clear that, upon defendants' default, Safeco has the right to exercise a power-of-attorney to effectuate its rights under the Indemnity Agreements. Thus, because the Corps declared defendants to be in default on the three bonded projects, Safeco has the right to exercise a power-of-attorney to effectuate its right to an assignment of defendants' claims on the projects.

### B. Defendants' have not Satisfied the Requirements for a Stay of the Court's Order

Although defendants do not contest that, under the Indemnity Agreements, Safeco is entitled to an assignment of defendants' claims, and a power-of-attorney to effectuate that assignment, they urge the court to stay enforcement of those rights. As previously discussed, the

---

[9] In a previous brief to the court regarding this issue, Safeco asserted that it is "entitled to an Order affirming this automatic assignment, unless the Defendants deposit collateral to cover Safeco's full loss exposure." Dkt. No. 64-1 at 19. In support of that assertion, Safeco cited case law interpreting indemnification agreements that contained express language making the surety's rights to the indemnitor's claims contingent upon the indemnitor's inability to post adequate collateral security. See, e.g., Hutton Const. Co. v. County of Rockland, 52 F.3d 1191, 1192 (2d Cir. 1995) ("The Agreement of Indemnity unambiguously provides that all [the indemnitor's] rights 'growing in any manner out of' the insured contracts were assigned to the Sureties when [the indemnitor] breached the Agreement by failing to indemnify the Sureties on demand."); Merritt-Meridian, 975 F.Supp. at 516 ("Under the terms of the Indemnity Agreement, [the surety] had the right to make payments and settle all claims, unless the defendants requested that [the surety] litigate *and* posted collateral to secure the amount of a possible judgment and expenses of litigation.") (citation omitted; emphasis in original). However, the Indemnity Agreements at issue do not contain such language. Thus, Safeco's assertion is incorrect with respect to those agreements.

four <u>Nken</u> factors must be balanced to determine whether a stay during the pendency of appeal is justified. 129 S.Ct. at 1760-1761. The two "most critical" factors are (i) whether the stay applicant has made a strong showing that he is likely to succeed on the merits and (ii) whether the applicant will be irreparably injured absent a stay. <u>Id.</u> at 1761. Here, consideration of those two factors demonstrates that the court should not grant defendants' request for a stay.

First, if defendants appeal the court's Order, they will have no chance of success on the merits. As discussed above, Safeco's right to an assignment of defendants' claims, and its right to a power-of-attorney to effectuate that assignment, are unambiguously stated in the Indemnity Agreements. Because the Corps declared defendants to be in default on the three bonded projects, Safeco is entitled to exercise those rights with respect to those projects. Thus, defendants will not prevail on an appeal of the court's Order enforcing those rights. Where a moving party fails to show *any* likelihood of success on the merits, a stay is not warranted. <u>See</u> <u>Nken</u>, 129 S.Ct. at 1761 ("It is not enough that the chance of success on the merits be 'better than negligible.'"); <u>S.E.C. v. Universal Express, Inc.</u>, 2007 U.S. Dist. LEXIS 56950, at *4-*7 (S.D.N.Y. August 3, 2007) (denying stay where movant failed to show a likelihood of success on the merits); <u>Motorola Credit Corp v. Uzan</u>, 275 F.Supp.2d 519, 524 (S.D.N.Y. 2003) (same).

Second, defendants have failed to demonstrate that they will be irreparably injured absent a stay. Defendants claim that they will suffer irreparable harm if their claims are assigned to Safeco, because "there is a clear intention on the part of the Corps and Safeco to dismiss MES' claims and settle Safeco's claims only in an amount necessary to satisfy its own claims." Memorandum of Law of MES Defendants in Response to Order to Show Cause ("Def. Mem."), Dkt. No. 130, at 4.[10] Thus, "[e]ven if MES prevailed in this case, it would be faced with the

---

[10] Hirani defendants joined in MES defendants' brief in response to the court's December 8 Order to Show Cause. Dkt. No. 131.

impossible task of proving what it would have recovered [on its claims against the Corps] had its claims not been jettisoned in mediation." Id. In short, defendants argue that they will be irreparably harmed absent a stay because Safeco will not seek to maximize the settlement of their claims against the Corps and because defendants will lose the opportunity to litigate the merits of those claims. The court disagrees.

Defendants cannot establish irreparable harm here. Under the Indemnity Agreements, Safeco has the right to settle defendants' claims against the Corps related to the three bonded projects. Indemnity Agreements at "Security to Surety" ¶ 1.d. That right is enforceable. Hutton, 52 F.3d at 1192 (holding that, under an indemnity agreement, the surety had the authority to settle all claims on behalf of its principal, including principal's affirmative claims growing out of its insured contracts); Merritt-Meridian, 975 F.Supp. at 516 (enforcing surety's right to settle principal's claims under an indemnity agreement). Safeco, however, is obligated to settle defendants' claims against the Corps in good faith. Id. ("This right to make payments and settle claims is limited only by [the surety's] obligation to settle claims in good faith."); Bell BCI Co. v. Old Dominion Demolition Corp., 294 F.Supp.2d 807, 815 (E.D.Va. 2003) (addressing indemnitor's bad faith arguments against surety's settlement of claims). If defendants desire to challenge the good faith of Safeco's settlement with the Corps, "such an argument is properly asserted as a defense to [Safeco's] claim against [defendants] for indemnification." Bell, 294 F.Supp.2d at 815. Moreover, in this indemnity action, if defendants establish not only Safeco's bad faith in settling their claims, but also the merits of those claims, defendants may be able to recover the value of those claims from Safeco. See id. Thus, within the context of this action, defendants will be able to (i) challenge Safeco's settlement of defendants' claims against the Corps and (ii) litigate the merits of those claims. Defendants therefore cannot demonstrate

irreparable harm absent a stay of the court's Order.

Defendants cannot establish a likelihood of success on the merits or irreparable harm. Thus, the court denies defendants' request to grant a stay of its Order enforcing Safeco's rights to an assignment of claims and a power-of-attorney under the Indemnity Agreements.

## **CONCLUSION**

For the foregoing reasons, the court grants defendants' motion for a stay of the court's November 22 Order pending their appeal of that Order to the Second Circuit. The stay shall become effective upon the posting of court-approved bonds in the amount of $200,000 by MES defendants and $1,000,000 by Hirani defendants. Defendants shall post those bonds by December 29, 2010 or comply with the court's November 22 Order by that date. The court also grants Safeco's motion for enforcement of its right to an assignment of defendants' claims related to the three bonded projects, and its right to exercise a power-of-attorney to effectuate that assignment, under the Indemnity Agreements. The court denies defendants' request to stay the Order enforcing Safeco's right to an assignment of defendants' claims and its right to a power-of-attorney. The court also denies Safeco's request to stay the entire proceeding while defendants' appeal of the court's November 22 Order is pending.

SO ORDERED.

/s/ARR_____
Allyne R. Ross
United States District Judge

Dated:          December 17, 2010
               Brooklyn, New York