UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x

SAFECO INSURANCE COMPANY                          09-CV-3312 (ARR) (ALC)
OF AMERICA,

                            Plaintiff,            <u>NOT FOR PRINT OR
                                                  ELECTRONIC
                                                  PUBLICATION</u>

        -against-

M.E.S., INC., et al.,                             <u>OPINION & ORDER</u>

                        Defendants.
------------------------------------------------------------------------x

ROSS, United States District Judge:

        On July 30, 2009, plaintiff Safeco Insurance Company of America ("Safeco" or "plaintiff")

filed a complaint in the instant case against defendants M.E.S., Inc., M.C.E.S., Inc., and George

Makhoul (collectively, "MES defendants"), and defendants Hirani Engineering & Land Surveying,

P.C. ("Hirani Engineering"), Hirani/MES JV, Jitendra S. Hirani, and Sarita Hirani (collectively,

"Hirani defendants" and, together with MES defendants, "defendants"). The complaint asserts

multiple claims arising from written Indemnity Agreements among the parties. Presently before

the court is Hirani defendants' motion for reconsideration of the $1 million bond imposed upon

them by the court's December 17, 2010 Order, Dkt. No. 133. For the reasons set forth below,

Hirani defendants' motion is denied; however, the court grants them an extension of time to

deposit $800,000.00 of the $1 million bond with the court.

## <u>BACKGROUND</u>[1]

        On November 22, 2010, this court held that Safeco is entitled to $6,614,634.41 in

collateral security from MES defendants and $4,960,067.44 in collateral security from Hirani

---

[1] Familiarity with the court's previous Orders in this case is presumed.

1

defendants. Nov. 22, 2010 Order, Dkt. No. 121, at 27. The court directed defendants to provide

Safeco with the requisite collateral security by December 1, 2010. Id.[2]

By letter dated November 24, 2010, MES defendants asked the court to reconsider its

November 22 Order or, in the alternative, to grant a stay of that Order pending defendants' appeal

to the Second Circuit. Dkt. No. 122. Hirani defendants joined that request by letter dated

November 29, 2010. Dkt No. 123. The court denied defendants' motion for reconsideration on

November 30, 2010, but it directed the parties to submit their briefs and supporting documents

regarding defendants' motion for a stay. Dkt. No. 125 at 5. The court temporarily stayed its

November 22 Order pending its ruling on defendants' motion for a stay pending appeal. Id. at 5.

On December 8, 2010, after it received the parties' submissions regarding defendants'

motion for a stay, the court issued an Order to Show Cause. That Order directed the parties to

submit briefs to the court regarding why, if this court granted a stay of its November 22 Order

pending appeal, it should not also grant Safeco an assignment of claims pursuant to Paragraph

1.d. of the "Security to Surety" section of the Indemnity Agreements.

On December 17, 2010, the court granted defendants' motion for a stay of the court's

November 22 Order pending their appeal of that Order to the Second Circuit. Dkt. No. 133 at

26. Prior to issuance of the stay, the court ordered the posting of court-approved bonds in the

amount of $200,000.00 by MES defendants and $1 million by Hirani defendants. Id.[3] In

imposing the $1 million bond upon Hirani defendants, the court noted that Hirani defendants had

---

[2] Because MES and Hirani defendants are jointly and severally liable for the $4,960,067.44 in collateral security for the High Energy Propellant Formulation Facility ("HEPFF") Project, the court directed defendants to reach an agreement regarding apportionment of that amount and to provide Safeco with a total of $4,960,067.44 in collateral security for the HEPFF project by December 1, 2010. Id. If the defendants could not reach an agreement regarding apportionment, the court directed MES and Hirani defendants to each provide Safeco with $2,480,033.72 in collateral security for the HEPFF Project by that date. Id. The court also directed MES defendants to provide Safeco with the additional $779,566.97 in collateral security for the Pyrotechnics Research Technology Facility Project and $875,000 in collateral security for projected legal and consulting fees by December 1, 2010. Id.
[3] The court subsequently increased the amount of MES defendants' bond to $445,000.00. Dec. 29 Order, Dkt. No. 144.

failed to submit any documentation to the court regarding the financial condition of Hirani Engineering.  Id. at 15.  However, the evidence submitted by Safeco showed that Hirani Engineering had $2.5 million in stockholder equity and demonstrated that Hirani defendants had sufficient assets to post a $1 million bond.  Id. at 15, 19.  The court directed defendants to post their respective bonds by December 29, 2010 or to comply with the court's November 22 Order by that date.  Id. at 26.  The court also granted Safeco's motion for enforcement of its right to an assignment of defendants' claims related to the three bonded projects at issue in this litigation, and its right to exercise a power-of-attorney to effectuate that assignment, under the Indemnity Agreements.  Id.  The court denied defendants' request to stay the enforcement of Safeco's right to an assignment of defendants' claims and its right to a power-of-attorney pending defendants' appeal.  Id.  The court also denied Safeco's request to stay the entire proceeding pending defendants' appeal.  Id.

By letter filed December 28, 2010, one day before Hirani defendants were required to post their bond, Hirani defendants asked the court to reconsider the amount of the $1 million bond set by the court's December 17 Order.  Dkt. No. 140 at 1.  In their letter, Hirani defendants assert that the "approximately $2.5 million in stockholder equity in Hirani Engineering is not an acceptable 'asset' to secure a bond."  Id.  They claim that Hirani defendants made numerous attempts to secure the requisite bond, but they have failed due to their "dire financial condition."  Id.  In short, they state that "it is impossible and impractical for the Hirani defendants to secure the requisite $1,000,000.00 bond."  Id.  Thus, Hirani defendants "seek reconsideration of the $1,000,000.00 bond requirement with an issuance of a stay without a bond or, in the alternative, upon the posting of a partial bond, upon the posting of alternative security (e.g. stock equity in Hirani Engineering), an extension in time, or upon an alternative arrangement that could satisfy

the requirement as the court deems appropriate." Id. In support of their motion for reconsideration, Hirani defendants submitted a sworn affidavit from Philip T. Amico, the Vice President of Hirani Engineering, and Hirani Engineering's 2009 tax return. Dec. 27, 2010 Affidavit of Phillip T. Amico, Dkt. No. 140-1, at 1-2, Ex. A.

During a telephone conference on December 28, 2010, the court noted that Hirani defendants previously had ample opportunity to bring the alleged financial hardship of Hirani Engineering to the attention of the court and that it was improper for Hirani defendants to argue for the first time on a motion for reconsideration that Hirani Engineering had insufficient assets to post the $1 million bond. The court further noted that Mr. Amico's affidavit and Hirani Engineering's 2009 tax return failed to provide sufficient documentary support for Hirani defendant's assertions, in that those documents did not detail the assets of Hirani Engineering. Although these significant deficiencies justified denial of Hirani defendants' motion for reconsideration, the court afforded Hirani defendants an additional opportunity to offer documentary support for their motion. Thus, the court directed Hirani defendants to submit a complete and accurate itemized list of all liquid and illiquid assets of Hirani defendants, including a list of all bank accounts and current balances, to the court by December 29, 2010 at 5 p.m. As interim security for Safeco, the court directed the Hirani defendants to post with the court all of the stock equity in Hirani Engineering by that date and time.

Prior to the December 29 deadline, Hirani defendants submitted the requested documentation to the court, Dkt. No.145, and deposited a stock certificate–representing 100% of Hirani Engineering's stock equity–with the Clerk of Court, Dkt. No. 143. Upon receipt of the stock equity and the requested documentation, the court temporarily stayed its December 17 Order requiring Hirani defendants to post a $1 million bond by December 29, 2010 until it could

rule upon Hirani defendants' motion for reconsideration.

In support of their motion for reconsideration, Hirani defendants submitted to the court an itemized list of the personal assets and liabilities of Jitendra and Sarita Hirani and a sworn affidavit from Philip T. Amico regarding Hirani Engineering's finances. With respect to Mr. and Mrs. Hirani's personal assets, Hirani defendants claim that they have $1,528,710.74 in personal assets, including approximately $200,000.00 equity in their home, and that they have $1,344,103.11 in personal liabilities. Dkt. No. 145-2 at 1-2. With respect to Hirani Engineering, Mr. Amico asserts that Hirani Engineering has the following assets: $237,653.67 in cash; $4,709,062.05 in accounts receivable; vehicles valued at $68,930.00; furniture and fixtures valued at $27,919.00; and office and technical equipment valued at $132,152.56. Dec. 29, 2010 Affidavit of Philip T. Amico, Dkt. No. 145-1, at ¶ 9. Mr. Amico claims that the $237,653.67 in cash had been "committed to payment of existing and current obligations." Id. at ¶ 3. He further states that "each and every asset of the company is hypothecated by UCC-1 lien filing to the company's line Bank," and "[w]here applicable, any equipment leased by third parties to Hirani Engineering is pledged to that specific financing agent directly." Id. at ¶ 6. Mr. Amico thus concludes that "Hirani Engineering is financially unable to secure and post a bond and the Court's order would cause irreparable harm to the Hirani defendants." Id. at ¶ 8.

By letter dated December 30, 2010, Safeco responded to Hirani defendants' motion for reconsideration with several arguments. Dkt. No. 146. First, Safeco argues that "any motion for reconsideration is improper." Id. at 1. Safeco contends that the Hirani defendants "were dilatory in disclosing their alleged finances only after these issues had already been litigated in several submissions filed over the past two months and only after the Court had already established the appropriate bond amount as a condition of a stay." Id. Second, Safeco contends that the

documentation submitted by Hirani defendants shows that they have sufficient assets to post the $1 million bond. Id. Given the $1,528,710.74 in personal assets, the $237,653.67 in Hirani Engineering's bank account, and the $229,001.56 in equipment, vehicles, furniture, and fixtures, Safeco argues that Hirani defendants have approximately $2 million in assets. Id. at 2. Additionally, Safeco notes that Hirani defendants have $4,709,062.05 in accounts receivable, which Hirani defendants "make no attempt whatsoever to explain . . . , or to determine which of such funds are immediately forthcoming . . . ." Id. Based on their current assets and accounts receivables, Safeco argues that Hirani defendants can post the requisite bond. Lastly, Safeco argues that Hirani defendants have provided an incomplete picture of their finances and have undervalued certain assets. Id. at 2-3. Most significantly, Safeco points to a substantial sum of money–more than $270,000.00–that was transferred from Hirani Engineering's bank account to related Hirani entities, "Hirani Construction, Inc." and "Hirani Management," in November 2010. Id. at 2. Safeco asserts that these transfers raise questions about Hirani Engineering's finances. Id. Based on these arguments, Safeco states "that the Court's Order requiring payment of a bond in the amount of $1,000,000.00 is reasonable . . . ." Id. at 3.

For the reasons that follow, the court agrees with Safeco that the $1 million bond imposed on Hirani defendants in the court's December 17 Order is reasonable, and the court thus denies Hirani defendants' motion for reconsideration of that amount. However, the court grants Hirani defendants an extension of time to post $800,000.00 of the $1 million bond.

## DISCUSSION

Reconsideration of a previous order by the court is an "extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources." In re Health Mgmt. Sys. Inc. Sec. Litig., 113 F. Supp. 2d 613, 614 (S.D.N.Y. 2000) (citation and

internal quotation marks omitted). "The major grounds justifying reconsideration are 'an intervening change in controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'" <u>Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.</u>, 956 F.2d 1245, 1255 (2d Cir. 1992) (citation omitted). The standard for granting a motion for reconsideration "is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked - matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." <u>Shrader v. CSX Transportation, Inc.</u>, 70 F.3d 255, 256-57 (2d Cir. 1995) (citations omitted). The court may not permit a party to "use the motion . . . as a substitute for appealing from a final judgment." <u>Shamis v. Ambassador Factors Corp.</u>, 187 F.R.D. 148, 151 (S.D.N.Y. 1999). Consequently, "a motion for reconsideration is neither an occasion for repeating old arguments previously rejected nor an opportunity for making new arguments that could have been previously advanced." <u>Associated Press v. United States Dep't of Def.</u>, 395 F. Supp. 2d 17, 19 (S.D.N.Y. 2005).

The court holds that Hirani defendants' failure to previously submit evidence regarding the financial condition of Hirani Engineering warrants denial of Hirani defendants' motion for reconsideration. The financial condition of Hirani Engineering was a critical issue before the court when it granted defendants' motion for a stay pending appeal in its December 17 Order. Dkt. No. 133 at 13-16. Information regarding Hirani Engineering's finances was pertinent to the analysis of the irreparable harm faced by Hirani defendants absent a stay and the amount of the bond that Hirani defendants could post before a stay issued. <u>Id.</u> at 13-16, 19. The burden was squarely on Hirani defendants to show that circumstances justified the issuance of a stay pending appeal. <u>Nken v. Holder</u>, 129 S.Ct. 1749, 1761 (2009). Despite that burden, Hirani defendants neglected to provide the court with information regarding Hirani Engineering's finances. Dkt.

No. 133 at 15.  Indeed, in his affidavit in support of Hirani defendants' motion for a stay, Mr. Hirani simply referred to Hirani Engineering as a "significant asset" and stated that "Hirani defendants have provided Safeco with Hirani Engineering's consolidated financial statements for fiscal year 2007, 2008, and 2009."  Id.  Hirani defendants provided no additional financial information regarding Hirani Engineering.  To be clear, Hirani defendants' submissions were inadequate to meet their burden, and the court would have been justified in denying Hirani defendants' motion for a stay.  However, in its response to Hirani defendants' motion, Safeco provided the court with Hirani Engineering's financial statement for 2009.  Id.  Based on the court's review of that document, and notwithstanding Hirani defendants' obfuscation of their finances, the court determined that a stay was warranted under the circumstances and that Hirani defendants had sufficient assets to post a $1 million bond.  Id.  Therefore, despite their inadequate submissions in support, the court granted Hirani defendants' motion in its December 17 Order.  Hirani defendants now seek reconsideration of the bond amount set by that Order based upon evidence of Hirani Engineering's financial condition.  Hirani defendants had not only the opportunity, but also the obligation, to submit such evidence in support of their motion for a stay.  They failed to do so.  Accordingly, their motion for reconsideration is improper, and it is denied.  See Associated Press, 395 F. Supp. 2d at 19.

Moreover, the court holds that the documents submitted by Hirani defendants in support of their motion for reconsideration provide independent grounds for denying that motion.  The court is troubled by the questions raised by those documents.  Although the court directed Hirani defendants to supply it with a complete and accurate listing of Hirani defendants' assets, it appears that the documents submitted do not present a comprehensive picture of their finances.  Most notably, the court is concerned that Hirani defendants make no mention of "Hirani

Management" or "Hirani Construction, Inc." in their submissions. They do not explain the relation of those entities to Mr. and Mrs. Hirani or Hirani Engineering, the current financial condition of the entities, or why Hirani Engineering transferred significant sums of money to those entities in November 2010. Also troubling is the lack of information regarding Hirani Engineering's $4,709,062.05 in accounts receivable. The lack of information about those funds is a significant hindrance to the court's ability to understand Hirani Engineering's financial condition. Although Hirani defendants' indicate that this substantial sum of money is owed to Hirani Engineering, they provide no indication of when or from whom the company will receive those funds. In short, the evidence submitted by Hirani defendants is ambiguous with respect to their financial condition. Their submissions raise significant questions about their financial status, questions that preclude a finding that Hirani defendants are incapable of posting a $1 million bond. Thus, for those reasons as well, the court denies Hirani defendants' motion.

Based on the documents submitted by Hirani defendants in support of their motion, the court finds that Hirani defendants are capable of posting a portion of the $1 million bond with the court immediately. Specifically, Mr. and Mrs. Hirani have $200,000.00 equity in their home, which is available for Hirani defendants' to post at this time. The court, however, does recognize that the majority of Hirani defendants' assets appear to be in form of accounts receivable. Thus, in order to allow Hirani defendants' to draw on those funds in posting the full amount of their bond, the court finds it reasonable to establish a payment schedule for the remaining $800,000.00 of the $1 million bond. The court therefore grants Hirani defendants' an extension of time to post that remaining amount.

## CONCLUSION

For the foregoing reasons, this court denies Hirani defendants' motion for reconsideration of the amount of the $1 million bond set by the court's December 17 Order. However, the court grants Hirani defendants an extension of time to post $800,000.00 of the $1 million bond. The bond is to be posted in accordance with the following payment schedule: Hirani defendants must post the $200,000.00 of equity in Mr. and Mrs. Hirani's home with the court no later than January 3, 2011; they must post $400,000.00 with the court no later than March 4, 2011; and they must post the remaining $400,000.00 with the court no later than May 3, 2011. Failure to abide by this schedule may result in the court revoking the stay issued in its December 17 Order. Upon posting of the full amount of the $1 million bond on May 3, 2011, the Clerk of Court shall return to Hirani defendants the stock certificate that they have posted as interim security.

SO ORDERED.

/s/ARR_____
Allyne R. Ross
United States District Judge

Dated:      December 30, 2010
          Brooklyn, New York