UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------------x

| | |
|---|---|
| SAFECO INSURANCE COMPANY<br>OF AMERICA, | 09-CV-3312 (ARR) (ALC) |
| Plaintiff, | <u>NOT FOR PRINT OR</u><br><u>ELECTRONIC</u><br><u>PUBLICATION</u> |
| -against- | |
| M.E.S., INC., et al., | <u>OPINION & ORDER</u> |
| Defendants. | |

----------------------------------------------------------------------x
ROSS, United States District Judge:

On July 30, 2009, plaintiff Safeco Insurance Company of America ("Safeco" or "plaintiff") filed a complaint in the instant case against defendants M.E.S., Inc., M.C.E.S., Inc., and George Makhoul (collectively, "MES defendants"), and defendants Hirani Engineering & Land Surveying, P.C. ("Hirani Engineering"), Hirani/MES JV, Jitendra S. Hirani, and Sarita Hirani (collectively, "Hirani defendants" and, together with MES defendants, "defendants"). The complaint asserts multiple claims arising from written Indemnity Agreements among the parties. Presently before the court is Hirani defendants' motion for modification of the court's December 30, 2010 Order, Dkt. No. 148, in which the court established a payment schedule for the $1 million bond imposed on Hirani defendants by the court's December 17, 2010 Order, Dkt. No. 133. For the reasons set forth below, Hirani defendants' motion is denied.

## **BACKGROUND**[1]

On November 22, 2010, this court held that Safeco is entitled to $6,614,634.41 in collateral security from MES defendants and $4,960,067.44 in collateral security from Hirani

---

[1] Familiarity with the court's previous Orders in this case is presumed.

1

defendants. Dkt. No. 121 at 27. The court directed defendants to provide Safeco with the requisite collateral security by December 1, 2010. Id.[2]

By letter dated November 24, 2010, MES defendants asked the court to reconsider its November 22 Order or, in the alternative, to grant a stay of that Order pending defendants' appeal to the Second Circuit. Dkt. No. 122. Hirani defendants joined that request by letter dated November 29, 2010. Dkt No. 123. The court denied defendants' motion for reconsideration on November 30, 2010, but it directed the parties to submit their briefs and supporting documents regarding defendants' motion for a stay. Dkt. No. 125 at 5. The court temporarily stayed its November 22 Order pending its ruling on defendants' motion for a stay pending appeal. Id. at 5.

On December 8, 2010, after it received the parties' submissions regarding defendants' motion for a stay, the court issued an Order to Show Cause. That Order directed the parties to submit briefs to the court regarding why, if this court granted a stay of its November 22 Order pending appeal, it should not also grant Safeco an assignment of claims pursuant to Paragraph 1.d. of the "Security to Surety" section of the Indemnity Agreements.

On December 17, 2010, the court granted defendants' motion for a stay of the court's November 22 Order pending their appeal of that Order to the Second Circuit. Dkt. No. 133 at 26. Prior to issuance of the stay, the court ordered the posting of court-approved bonds in the amount of $200,000.00 by MES defendants and $1 million by Hirani defendants. Id.[3] In imposing the $1 million bond upon Hirani defendants, the court noted that Hirani defendants had

---

[2] Because MES and Hirani defendants are jointly and severally liable for the $4,960,067.44 in collateral security for the High Energy Propellant Formulation Facility ("HEPFF") Project, the court directed defendants to reach an agreement regarding apportionment of that amount and to provide Safeco with a total of $4,960,067.44 in collateral security for the HEPFF project by December 1, 2010. Id. If defendants could not reach an agreement regarding apportionment, the court directed MES and Hirani defendants to each provide Safeco with $2,480,033.72 in collateral security for the HEPFF Project by that date. Id. The court also directed MES defendants to provide Safeco with the additional $779,566.97 in collateral security for the Pyrotechnics Research Technology Facility Project and $875,000 in collateral security for projected legal and consulting fees by December 1, 2010. Id.

[3] The court subsequently increased the amount of MES defendants' bond to $445,000.00. Dec. 29 Order, Dkt. No. 144.

2

failed to submit any documentation to the court regarding the financial condition of Hirani Engineering. Id. at 15. The evidence submitted by Safeco, however, showed that Hirani Engineering had $2.5 million in stockholder equity and demonstrated that Hirani defendants had sufficient assets to post a $1 million bond. Id. at 15, 19. The court directed defendants to post their respective bonds by December 29, 2010 or to comply with the court's November 22 Order by that date. Id. at 26. The court also granted Safeco's motion for enforcement of its right to an assignment of defendants' claims related to the three bonded projects at issue in this litigation, and its right to exercise a power-of-attorney to effectuate that assignment, under the Indemnity Agreements. Id. The court denied defendants' request to stay the enforcement of Safeco's right to an assignment of defendants' claims and its right to a power-of-attorney pending defendants' appeal. Id. The court also denied Safeco's request to stay the entire proceeding pending defendants' appeal. Id.

On December 29, 2010, the Second Circuit granted defendants' motion for a temporary stay of the court's December 17 Order enforcing Safeco's right to an assignment of defendants' claims until defendants' motion for a stay pending appeal could be decided. Dkt. No. 147. In its Order, the Second Circuit directed defendants to post the bonds imposed by the court's December 17 Order no later than December 29, 2010. Id.

Previously, on December 28, 2010, Hirani defendants asked the court to reconsider the amount of the $1 million bond set by the court's December 17 Order. Dkt. No. 140 at 1. In their letter request, Hirani defendants asserted that the "approximately $2.5 million in stockholder equity in Hirani Engineering is not an acceptable 'asset' to secure a bond." Id. They claimed that Hirani defendants made numerous attempts to secure the requisite bond, but they failed due to their "dire financial condition." Id. In short, they stated that it was "impossible and

3

impractical for the Hirani defendants to secure the requisite $1,000,000.00 bond." Id. Thus, Hirani defendants sought "reconsideration of the $1,000,000.00 bond requirement with an issuance of a stay without a bond or, in the alternative, upon the posting of a partial bond, upon the posting of alternative security (e.g. stock equity in Hirani Engineering), an extension in time, or upon an alternative arrangement that could satisfy the requirement as the court deems appropriate." Id. In support of their motion for reconsideration, Hirani defendants submitted a sworn affidavit from Philip T. Amico, the Vice President of Hirani Engineering, and Hirani Engineering's 2009 tax return. Dec. 27, 2010 Affidavit of Phillip T. Amico, Dkt. No. 140-1, at 1-2, Ex. A.

During a telephone conference on December 28, 2010, the court noted that Hirani defendants previously had ample opportunity to bring the alleged financial hardship of Hirani Engineering to the attention of the court and that it was improper for Hirani defendants to argue for the first time on a motion for reconsideration that Hirani Engineering had insufficient assets to post the $1 million bond. The court further noted that Mr. Amico's affidavit and Hirani Engineering's 2009 tax return failed to provide sufficient documentary support for Hirani defendants' assertions, in that those documents did not detail the assets of Hirani Engineering. Although these significant deficiencies justified denial of Hirani defendants' motion for reconsideration, the court afforded Hirani defendants an additional opportunity to offer documentary support for their motion. Thus, the court directed Hirani defendants to submit a complete and accurate itemized list of all liquid and illiquid assets of Hirani defendants, including a list of all bank accounts and current balances, to the court by December 29, 2010 at 5 p.m. As interim security for Safeco, the court directed the Hirani defendants to post with the court all of the stock equity in Hirani Engineering by that date and time.

4

Prior to the December 29 deadline, Hirani defendants submitted the requested documentation to the court, Dkt. No.145, and deposited a stock certificate – representing 100% of Hirani Engineering's stock equity – with the Clerk of Court, Dkt. No. 143. Upon receipt of the stock equity and the requested documentation, the court temporarily stayed its December 17 Order requiring Hirani defendants to post a $1 million bond by December 29, 2010 until it could rule upon Hirani defendants' motion for reconsideration.

In support of their motion for reconsideration, Hirani defendants submitted to the court an itemized list of the personal assets and liabilities of Jitendra and Sarita Hirani and a sworn affidavit from Philip T. Amico regarding Hirani Engineering's finances. With respect to Mr. and Mrs. Hirani's personal assets, Hirani defendants claimed that they had $1,528,710.74 in personal assets, including approximately $200,000.00 equity in their home, and that they had $1,344,103.11 in personal liabilities. Dkt. No. 145-2 at 1-2. With respect to Hirani Engineering, Mr. Amico asserted that Hirani Engineering had the following assets: $237,653.67 in cash; $4,709,062.05 in accounts receivable; vehicles valued at $68,930.00; furniture and fixtures valued at $27,919.00; and office and technical equipment valued at $132,152.56. Dec. 29, 2010 Affidavit of Philip T. Amico, Dkt. No. 145-1, at ¶ 9. Mr. Amico claimed that the $237,653.67 in cash had been "committed to payment of existing and current obligations." Id. at ¶ 3. He further stated that "each and every asset of the company is hypothecated by UCC-1 lien filing to the company's line Bank," and "[w]here applicable, any equipment leased by third parties to Hirani Engineering is pledged to that specific financing agent directly." Id. at ¶ 6. Mr. Amico thus concluded that "Hirani Engineering is financially unable to secure and post a bond and the Court's order would cause irreparable harm to the Hirani defendants." Id. at ¶ 8.

By letter dated December 30, 2010, Safeco responded to Hirani defendants' motion for

reconsideration with several arguments. Dkt. No. 146. First, Safeco argued that "any motion for reconsideration is improper." Id. at 1. Safeco contended that Hirani defendants "were dilatory in disclosing their alleged finances only after these issues had already been litigated in several submissions filed over the past two months and only after the Court had already established the appropriate bond amount as a condition of a stay." Id. Second, Safeco contended that the documentation submitted by Hirani defendants showed that they had sufficient assets to post the $1 million bond. Id. Given the $1,528,710.74 in personal assets, the $237,653.67 in Hirani Engineering's bank account, and the $229,001.56 in equipment, vehicles, furniture, and fixtures, Safeco argued that Hirani defendants had approximately $2 million in assets. Id. at 2. Additionally, Safeco noted that Hirani defendants had $4,709,062.05 in accounts receivable, which Hirani defendants "make no attempt whatsoever to explain . . . , or to determine which of such funds are immediately forthcoming . . . ." Id. Based on their current assets and accounts receivables, Safeco argued that Hirani defendants could post the requisite bond. Lastly, Safeco argued that Hirani defendants had provided an incomplete picture of their finances and had undervalued certain assets. Id. at 2-3. Most significantly, Safeco pointed to a substantial sum of money – more than $270,000.00 – that was transferred from Hirani Engineering's bank account to related Hirani entities, "Hirani Construction, Inc." and "Hirani Management," in November 2010. Id. at 2. Safeco asserted that these transfers raised questions about Hirani Engineering's finances. Id. Based on these arguments, Safeco stated "that the Court's Order requiring payment of a bond in the amount of $1,000,000.00 is reasonable . . . ." Id. at 3.

On December 30, 2010, this court denied Hirani defendants' motion for reconsideration of the amount of the $1 million bond set by the court's December 17 Order. Dkt. No. 148. The court held that Hirani defendants' failure to previously submit evidence regarding the financial

condition of Hirani Engineering was sufficient reason to deny Hirani defendants' motion for reconsideration. Id. at 7-8. Moreover, the court found that deficiencies in the documentary evidence submitted by Hirani defendants provided independent grounds for denying Hirani defendants' motion. Specifically, the court stated:

> The court is troubled by the questions raised by those documents. Although the court directed Hirani defendants to supply it with a complete and accurate listing of Hirani defendants' assets, it appears that the documents submitted do not present a comprehensive picture of their finances. Most notably, the court is concerned that Hirani defendants make no mention of "Hirani Management" or "Hirani Construction, Inc." in their submissions. They do not explain the relation of those entities to Mr. and Mrs. Hirani or Hirani Engineering, the current financial condition of the entities, or why Hirani Engineering transferred significant sums of money to those entities in November 2010. Also troubling is the lack of information regarding Hirani Engineering's $4,709,062.05 in accounts receivable. The lack of information about those funds is a significant hindrance to the court's ability to understand Hirani Engineering's financial condition. Although Hirani defendants' indicate that this substantial sum of money is owed to Hirani Engineering, they provide no indication of when or from whom the company will receive those funds. In short, the evidence submitted by Hirani defendants is ambiguous with respect to their financial condition. Their submissions raise significant questions about their financial status, questions that preclude a finding that Hirani defendants are incapable of posting a $1 million bond. Thus, for those reasons as well, the court denies Hirani defendants' motion.

Id. 8-9.

Although the court denied Hirani defendants' motion for reconsideration, because it recognized that the majority of Hirani defendants' assets appeared to be in the form of accounts receivable, the court modified its December 17 Order by setting a payment schedule for Hirani defendants to post the $1 million bond. Id. at 9. The Order required Hirani defendants to post the $200,000.00 equity in Mr. and Mrs. Hirani's home with the court by January 3, 2011, to post $400,000.00 with the court no later than March 4, 2011, and to post the remaining $400,000.00 with the court by May 3, 2011. Id. at 10. The court cautioned that "[f]ailure to abide by this schedule may result in the court revoking the stay issued in its December 17 Order." Id. at 10.

On March 2, 2011, two days before the deadline for Hirani defendants to post $400,000.00 with the court, Hirani defendants filed a letter "to notify the Court" that they would not be complying with the schedule set forth in the court's December 30 Order. Dkt No. 154. Hirani defendants assert that "their financial status has not improved" and that they "have been rejected by each and every surety because [they] (1) lack a letter of credit from a bank and (2) lack the collateral necessary to secure a $400,000.00 bond." Id. at 1. They also claim that "there has been no improvement in Hirani Engineering & Land Surveying, P.C.'s accounts receivable." Id. Hirani defendants claim that requiring them to post the bond would "effectively, foreclose [their] ability to continue to prosecute their appeal and force them out of business." Id. at 2. Thus, they ask that the court to modify its December 30 Order requiring them to post a bond by March 4, 2011. Id. In that regard, Hirani defendants offer to assign their accounts receivable to Safeco and note that they are "willing to entertain any thoughts the Court may have" with respect to such a modification. Id.

In support of their motion, Hirani defendants have submitted an affidavit from Jitendra Hirani. Mr. Hirani states that "Hirani Engineering's financial position remains the same as last reported in Hirani Engineering's submissions to the Court on or about December 29, 2010." March 4, 2011 Affidavit of Jitendra Hirani, Dkt. No. 155-1, at ¶2. He states that the company's current ledger is $45,815.37, lists various liabilities totaling $591,221.52, and asserts that the company has $5,708,503.80 in accounts receivable. Id. He asserts that the financial position of Jitendra and Sarita Hirani remains unchanged since Hirani defendants December 29 submissions to the court. Id. Other than Mr. Hirani's affidavit, Hirani defendants did not submit any additional documentation with their letter supporting their alleged financial position.

**DISCUSSION**

"Where there is no indication which Federal Rule of Civil Procedure applies, 'the courts have considered [a] motion [for modification of judgment to be] either a Rule 59(e) motion to alter or amend a judgment, or a Rule 60(b) motion for relief from a judgment or order.'" Assoc. for Retarded Citizens v. Thorne, 68 F.3d 547, 552 (2d Cir. 1995) (citation omitted; alterations in original). Because a Rule 59(e) motion would be untimely, the court construes Hirani defendants' motion for modification as brought pursuant to Rule 60(b)(6). Fed. R. Civ. P. 59(e).

Rule 60(b)(6) permits the court, upon motion from a party and just terms, to relieve a party from an order for any reason that justifies relief. Fed. R. Civ. P. 60(b)(6). "Rule 60(b)(6) has been used sparingly as an equitable remedy to prevent manifest injustice. The rule is to be utilized only where extraordinary circumstances prevented a party from taking timely action to prevent or correct an erroneous judgment." Lee v. Marvel Enters., Inc., No. 02 Civ. 8945, 2011 U.S. Dist. LEXIS 11297, at *25 (S.D.N.Y. Feb. 4, 2011) (citing U.S. v. Alpine Land & Reservoir Co., 984 F.2d 1047, 1049 (9th Cir. 1993)). "In order to qualify for such relief, a party must set forth 'highly convincing material' in support of its motion." Id. (citing In re Evergreen Mut. Funds Fee Litig., 240 F.R.D. 115, 119 (S.D.N.Y. 2008) (Rule 60(b)(6) relief denied where movants' "blanket assertions of extraordinary-circumstances and undue hardship [we]re insufficient to support consideration under [Rule 60(b)(6)].")).

The court holds that Hirani defendants' motion for modification must be denied because, once again, they have failed to present the court with a complete and accurate picture of their finances. In its December 30 Order, the court rejected Hirani defendants' motion for reconsideration of the $1 million dollar bond amount because, despite having numerous opportunities and the obligation to do so, Hirani defendants failed to provide the court with the

necessary documentary evidence to evaluate their claims of financial distress. Indeed, in that Order, the court identified specific deficiencies in Hirani defendants' submissions that precluded the court from finding that Hirani defendants were unable to pay a $1 million bond. In particular, the court noted that it was troubled by the unexplained transfers of significant sums of money from Hirani Engineering to other Hirani-related entities and the complete lack of information regarding Hirani Engineering's accounts receivable.

In their latest motion, Hirani defendants do not trouble themselves with correcting these deficiencies. In fact, in support of their claim that the $1 million bond will "force them out of business," they do not submit *any* financial documents at all. Rather, they rely solely on Mr. Hirani's affidavit, which simply lists various assets and liabilities without offering any documentary support for those figures or evidence that those figures present a comprehensive picture of Hirani defendants' finances. Furthermore, although Mr. Hirani's affidavit lists $5,708,503.80 in accounts receivable, like Hirani defendants' previous submissions to this court, it provides no indication of when or from whom the company will receive that substantial sum of money. In its December 30 Order, the court noted that "[t]he lack of information about those funds is a significant hindrance to the court's ability to understand Hirani Engineering's financial condition." Dkt. No. 148 at 9. In light of that statement, it is startling that Hirani defendants' would submit this motion without providing additional information about Hirani Engineering's accounts receivable. Due to Hirani defendants' deficient submissions, significant questions still remain about their financial status. Those questions preclude a finding that Hirani defendants are incapable of posting a $1 million bond. Accordingly, the court rejects Hirani defendants' motion for modification.

On numerous occasions, this court has expressed its dismay with Hirani defendants'

inability, or unwillingness, to provide a transparent account of their finances. The court has repeatedly requested documentation, and Hirani defendants have repeatedly responded with obfuscation. Nonetheless, in its December 30 Order, the court granted Hirani defendants an extension of time to post the requisite bond and created a four-month payment schedule. Hirani defendants specifically requested an extension in their December 28 letter; thus, the court created the payment schedule with the expectation that Hirani defendants would make a good faith effort to comply. Following the court's December 30 Order, Hirani defendants had more than two months to inform the court that they were financially unable to meet the March 4 deadline and to submit documentation sufficient to establish that fact. During that time period, Hirani defendants' did not provide the court with adequate notice of their anticipated noncompliance nor did they submit evidence establishing their alleged financial distress. Instead, two days prior to the deadline, they elected to "notify the Court" that they would not comply with its Order, and they submitted an anemic affidavit to justify their noncompliance. Based on their actions, the court questions whether Hirani defendants take their obligations to this court seriously.

Both this court and the Second Circuit have directed Hirani defendants to post the requisite $1 million bond. In its December 30 Order, this court cautioned that noncompliance with the payment schedule for that bond would result in the court lifting the stay issued in its December 17 Order and the reinstitution of the court's November 22 Order requiring Hirani defendants to provide Safeco with $4,960,067.44 in collateral security. Thus, because Hirani defendants have not complied with the payment schedule, the court is lifting the stay of its November 22 Order and directing Hirani defendants to comply with that Order.[4]

---

[4] The stay issued in the court's December 17 Order remains in effect with respect to MES defendants.

## **CONCLUSION**

Hirani defendants' motion for modification of the court's December 30 Order is denied. Because Hirani defendants have not complied with the payment schedule set forth in that Order, the court is lifting the stay issued in its December 17 Order and reinstituting its November 22 Order requiring Hirani defendants to provide Safeco with $4,960,067.44 in collateral security. Hirani defendants shall provide that collateral security to Safeco no later than April 4, 2011.

SO ORDERED.

/s/ARR_____
Allyne R. Ross
United States District Judge

Dated:     March 22, 2010
           Brooklyn, New York