UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF NEW YORK

----------------------------------------------------------------X

SAFECO INSURANCE COMPANY OF
AMERICA,

                  Plaintiff,                        **<u>ORDER</u>**

      -against-                        09-CV-3312 (ARR) (ALC)

**M.E.S., INC., a New York Corporation, M.C.E.S.,
INC., a New York Corporation, HIRANI
ENGINEERING & LAND SURVEYING, P.C., a
New York Professional Corporation,
HIRANI.MES, JV, a joint venture, GEORGE
MAKHOUL, an individual, and SARTA
HIRANI, an individual.**

                  Defendants.

----------------------------------------------------------------X

**CARTER, UNITED STATES MAGISTRATE JUDGE:**

      On July 30, 2009, plaintiff Safeco Insurance Company of America ("Safeco" or

"plaintiff") filed a complaint in the instant case against defendants M.E.S., Inc. ("MES"),

M.C.E.S., Inc. ("MCES"), and George Makhoul (collectively, "MES defendants"), and

defendants Hirani Engineering & Land Surveying, P.C. ("Hirani Engineering"), Hirani/MES JV,

Jitendra S. Hirani, and Sarta Hirani (collectively, "Hirani defendants" and, together with MES

defendants, "defendants").  The complaint asserts multiple claims arising from written indemnity

agreements among the parties.  After a series of motions before Judge Ross, Safeco has been

1

granted the right to three interim remedies as per the terms of the indemnity agreements: (1) the right to collateral security; (2) the right to an assignment of defendants' claims arising out of the construction projects (and the right to a power-of-attorney to pursue those claims); and (3) the right to access defendants' books and records.  The parties are currently seeking court resolution of a series of discovery disputes.

The Current Discovery Motions

Defendants move to compel the production of certain documents withheld by Safeco under a claim of privilege.  Specifically, defendants argue that Safeco cannot claim an attorney-client privilege or work-product protection over: (1) documents created during the period when Safeco's external counsel, Watt, Tieder, Hoffar & Fitzgerald, LLP ("WTHF"), was also allegedly representing MES in their negotiations with the Corps to prevent a default on the construction projects; (2) consultant reports; (3) CSF invoices; (4) documents sent to third parties; (5) documents to or from Safeco employees acting in an administrative capacity; (6) notes of Safeco employees; (7) documents where WTHF is performing non-legal duties, and (8) legal invoices.  In addition, defendants claim that Safeco must produce its internal claims manual.  Lastly, defendants object to Safeco's privilege logs as generally inadequate.

Safeco moves to compel the production of documents pursuant to Federal and Local Rules of Civil Procedure 26, 34, and 37.  Specifically, Safeco is seeking: (1) documents relating to the defendants' assignment of claims, and (2) documents relating to the defendants' books and records.  Safeco likewise contends that the MES defendants' privilege log is inadequate and seeks production of all documents improperly withheld under the attorney-client privilege or work-product doctrine.

2

## DISCUSSION

It is worth noting as an initial matter that many of the attorney-client privilege and work-product issues require a fact-specific inquiry that are not capable of a categorical presumption.[1] *See AIU Ins. Co. v. TIG Ins. Co.*, No. 07 CV 7052 (SHS) (HBP), 2008 WL 4067437, at *14 (S.D.N.Y. Aug. 28, 2008). To this end, rather than address in the abstract each of the specific categories of documents listed by defendants, I will set forth the applicable standards that the parties must meet in order to assert the attorney-client privilege or work-product doctrine. To the extent that these standards may be further tailored when applied in a particular context or to a certain type of document—for example, Safeco's communications with CSF or Safeco's internal claims manual—these standards will be explained and applied to the facts of this case. Similarly, rather than addressing the parties' numerous objections to specific privilege log entries, I will instead identify their general deficiencies, citing a few examples, and instruct the parties to apply the standards set forth herein when revising their privilege logs.

*Attorney-Client Privilege*

Since this is a diversity action involving only state-law claims, "it is state law that defines the elements of the attorney-client privilege." *Bowne of New York City, Inc. v. AmBase Corp.*, 150 F.R.D. 465, 470 (S.D.N.Y. 1993) (citing Fed. R. Evid. 501).[2] In New York, the elements of

---

[1] This is especially true with regard to the work-product doctrine, which requires an inquiry into the circumstances surrounding the preparation of a particular document. *See* discussion on work product *infra*. While the attorney-client privilege still requires a determination that a particular communication was made for the purpose of providing legal advice, some issues, such as whether a third-party is covered by the privilege, can be considered without a document-to-document inquiry.

[2] Both parties rely on New York law in their moving papers and thus implicitly consent to the application of New York law. *See Amusement Indus., Inc. v. Midland Avenue Assoc., LLC*, ---F. Supp.2d---, No. 10 CV 5064 (LAK) (GWG), 2011 WL 3463117, at *4 (S.D.N.Y. Sept. 27, 2011).

the attorney-client privilege are "the existence of an attorney-client relationship, a communication made within the context of that relationship for the purpose of obtaining legal advice, and the intended and actual confidentiality of that communication."[3] *Abu Dhabi Commercial Bank v. Morgan Stanley*, 08 CV 7508 (SAS), 2011 WL 4716334, at \*2 (S.D.N.Y. Oct. 3, 2011) (quoting *Bourne of New York City, Inc. v. AmBase Corp.*, 161 F.R.D. 258, 264 (S.D.N.Y. 1995).

"Generally, communications made between a defendant and counsel in the known presence of a third party are not privileged." *Abu Dhabi*, 2011 WL 4716334, at \*2. An exception to this general rule has been recognized for communications between an attorney and the agent or employee of his or her corporate client.[4] *Id.* Another exception has been recognized for communications between a company's lawyers and its independent contractor. When an independent contractor "assumes the functions and duties of a full-time employee" such that he or she is a "*de facto* employee" of the company, then his or her communications will receive protection. *Id.* (quoting *Export-Import Bank of the United States v. Asia Pulp & Paper Co.*, 232 F.R.D. 103, 113 (S.D.N.Y. 2005)).[5]

---

[4] A third-party has been found to be an "agent" where employees were "acting at the direction of their corporate superiors"; were in possession of "information [that] was needed to supply a basis for legal advice concerning potential litigation relating to the subject matter of the communications"; communicated "matters within the scope of [his] corporate duties; and, were "aware that the communications were for the purpose of rendering legal advice for the corporation." *In re Copper*, 200 F.R.D. 213, 218 (S.D.N.Y. 2001) (citing *Upjohn Co. v. United States*, 449 U.S. 383, 394 (1981)).

[5] This exception has been referred to as the "functional equivalent" doctrine, and has been applied in situations where "'the consultant had primary responsibility for a key corporate job, . . . there was a continuous and close working relationship between the consultant and the company's principals on the matters critical to the company's position in litigation, and . . . the consultant is likely to possess information possessed by no one else at the company.'" *Abu Dhabi*, 2011 WL 4716334, at \*3 (quoting *Export-Import Bank*, 232 F.R.D. at 113).

*Work-Product Doctrine*

"[F]ederal law governs the applicability of the work product doctrine." *Bowne*, 150 F.R.D. at 471. "The work product doctrine is codified in Fed. R. Civ. P. 26(b)(3), which provides that a party is not entitled to obtain discovery of 'documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative' unless a showing of substantial need and lack of undue hardship is made." *Abu Dhabi*, 2011 WL 4716334, at *3. Whether materials are protected under this rule is "necessarily [a] fact-specific" determination. *Id.* The party asserting work-product immunity bears the burden of establishing that it applies. *Id.*

"A document is prepared in anticipation of litigation if, 'in light of the nature of the document and the factual situation in the particular case, [it] can fairly be said to have been prepared or obtained *because of* the prospect of litigation.'" *Id.* (quoting *United States v. Adlman*, 134 F.3d 1194, 1196 (2d Cir. 1998)) (emphasis in original). However, the possibility of litigation must be more than "remote." *Abu Dhabi*, 2011 WL 4716334, at *3. "[D]ocuments prepared both for litigation and business purposes may be protected under Rule 26(b)(3)," but if the material was prepared "in the ordinary course of business" or "would have been created in essentially similar form irrespective of the litigation," then it is not afforded protection under Rule 26(b)(3). *See id.*; *Adlman*, 134 F.3d at 1202 & 1204.

1. Adequacy of Privilege Logs

"As the Second Circuit has repeatedly noted, 'the burden is on a party claiming the protection of a privilege to establish those facts that are the essential elements of the privileged relationship." *Bowne*, 150 F.R.D. at 470 (quoting *von Bulow v. von Bulow*, 811 F.2d 136, 144

(2d. Cir.), *cert. denied*, 481 U.S. 1015 (1987)).  "[T]he party asserting either the attorney-client privilege or attorney work product protection has the 'heavy burden' of proving that privilege or protection applies to the documents or communications at issue." *Abu Dhabi*, 2011 WL 4716334, at *1 (citations omitted).  "This burden can be met only by an evidentiary showing based on competent evidence . . . and cannot be 'discharged by mere conclusory or ipse dixit assertions.'" *Bowne*, 150 F.R.D. at 470 (quoting *von Bulow*, 811 F.2d at 144 & 146) (internal citations omitted).

Courts thus require a party to prove the factual basis for the claim of privilege or work-product protection.  *See Bowne*, 150 F.R.D. at 473.  This showing could be based on affidavits or, when a large number of documents are at issue, identified in a privilege log.  *See id.* at 473–74.  If this showing is made through a privilege log, then it must be "adequately detailed" and used "in conjunction with evidentiary submissions to fill in any factual gaps."  *Id.* at 474.  A privilege log is "adequately detailed" if, "as to each document, it sets forth specific facts that, if credited, would suffice to establish each element of the privilege or immunity."  *Golden Trade S.r.L. v. Lee Apparel Co.* 92 CV 1667 (JMC), 1992 WL 367070, at *5 (S.D.N.Y. Nov. 20, 1992) (quoting *von Bulow*, 811 F.2d at 146).  "[C]onclusory invocation[s] of the privilege or work-product rule" will not suffice; rather, "[t]he focus in on the specific descriptive portion of the log."  *Golden Trade*, 1992 WL 367070, at *5.

The Second Circuit has rejected a privilege log as inadequate where the descriptions provided did not support the "general allegations of privilege."  *See United States v. Constr. Prods. Research, Inc.*, 73 F.3d 464, 473–74 (2d Cir. 1996).  In that case, the court determined that the descriptions were "cursory" and therefore did "not provide enough information to

support the privilege claim." *Id.* at 473–74.  This was especially so, the court added, because of "the glaring absence of any supporting affidavits or other documentation." *Id.* at 474.  Similarly, the court in *Bowne* found a privilege log to be inadequate where "[n]othing on the log informs us whether the document contains legal advice or was prepared to elicit legal advice from others" or "inform[s] whether the notes were prepared in anticipation of litigation or for any other reason." *Bowne*, 150 F.R.D. at 474–75.

Pursuant to Local Civil Rule 26.2(a)(2)(A), a privilege log "shall" include: "(i) the type of document, e.g., letter or memorandum; (ii) the general subject matter of the document; (iii) the date of the document; and (iv) the author of the document, the addressees of the document, and any other recipients, and, where not apparent, the relationship of the author, addressees, and recipients to each other."   The nature of the privilege claimed must also be identified.  Rule 26.2(1).

### A.  Safeco's Privilege Log

Safeco's privilege log has 853 entries. (Dkt. No. 174-3, Exhibit A.)  Safeco has also submitted a log of CSF documents, which has 129 entries. (Dkt. No. 174-3, Exhibit B.)  For each entry, Safeco provides the date, the recipients, the author, a description, the privilege asserted, and comments.  In order to determine the relationship between the author and the recipients, one must look at a separate employee list, which contains 80 individuals, the entity for which they work, their position, and their relation to Safeco. [6] (Dkt 109-9.)

---

[6] The list is not alphabetized, which makes evaluating a particular log entry more time-consuming than necessary.

Safeco's privilege log is not "adequately detailed."  The vast majority of the descriptive portions of the log do not set forth specific facts that establish the elements of the attorney-client privilege or work-product doctrine and rely on conclusory assertions of the claims.  For example, the first entry on Safeco's privilege log, which is representative of many of the other entries, is an email on "3/18/2008" from "Caryn Mohan-Maxfield, Esq." to "Mark Sgarlata, Esq." regarding "General Agreements of Indemnity and Bond."  In the comment section, it states "Attorney work product/selection of documents."  Safeco is claming both the attorney-client privilege and work-product doctrine for this document.  By referencing the employee list, we learn that Caryn Mohan-Maxfield is a "Senior Surety Claims Representative" and "Home Office Counsel" for Safeco and that Mark Sgarlata is an attorney for WTHF.

Focusing on the descriptive portion on the log and ignoring the conclusory labels, at most, this entry shows that on March 8, 2008, a Safeco employee—acting either as a claims representative or in a legal capacity—sent an email to WTHF, Safeco's external counsel, about "General Agreements of Indemnity and Bond" and this somehow has to do with a "selection of documents."  These facts do not establish the elements of a claim of attorney-client privilege (e.g., that the email contains legal advice or was prepared to elicit legal advice from Sgarlata) or the work-product doctrine (e.g., that this email was prepared in anticipation of litigation).  *See Bowne*, 150 F.R.D. at 474–75.[7]  Significantly, Safeco does not submit evidentiary submissions to fill in any factual gaps.  *See Bowne*, 150 F.R.D. at 473.  Accordingly, Safeco has not met its

_____

[7] The descriptive portions of the entries in *Construction Products* were: (1) "Fax Re: DOL Findings" with "cover sheet"; (2) "Fax: Whistleblower article" with comment "Self-explanatory"; (3) "Letter Re: Customer Orders" with comment "Re: Five Star Products"; and (4) "Summary of Enclosures" with comment "Self-explanatory." 73 F.3d at 473–74.  Similarly, the descriptive portion of Safeco's first entry—"General Agreements of Indemnity and Bond" with comment "selection of documents"—does not provide enough information to support the claims.

"'heavy burden' of proving that the privilege or protection applies to the documents or communications at issue." *See Abu Dhabi*, 2011 WL 4716334, at *1.

B.  *MES Defendants' Privilege Log*[8]

The privilege log for the MES defendants is much more deficient than Safeco's.  Not only does the MES privilege log fall far short of setting forth specific facts that would establish the elements of the privilege or immunity claimed, but it also fails to contain some of the basic documentation required by Local Civil Rule 26.2., such as the privilege being asserted.

The MES defendants' privilege log contains 3,325 entries. (Dkt. No. 175-6.)  For each entry, MES provides the date, the document file name, the type of document, the subject, the author, and the recipient.  The log does not indicate whether the author or recipient of the communication is an attorney.  In many instances, the author or recipient is simply listed as "MES," and individuals are listed without indicating where they worked, what their position is, or their relationship to MES.  For example, all that can be gleaned from the first entry is that the document being withheld has a subject of "Exhibit list ERDLF [one of the bonded construction projects]," was authored by "MES," and is dated "2/12/2010."  We do not even know the privilege being asserted, let alone the underlying facts necessary to establish the privilege.  The MES defendants do not fill in factual gaps with other evidentiary submissions.  Therefore, they do not come close to satisfying their burden to show that any privilege applies.

Safeco's and the MES defendants' privilege logs are inadequate and must be revised in accordance with the standards set forth herein.

---

[8] As of the drafting of this opinion, the Hirani defendants have not provided a privilege log.  *See* Safeco's Motion to Compl. at 8.

2. <u>Documents Withheld by Safeco Under a Claim of Attorney-Client Privilege or Work-Product Doctrine</u>

    A. *Communications Between Safeco and CSF and Safeco and Perini*

        1. Communications with Perini

Safeco asserts that some of its communications with Perini are privileged.  In order for Safeco to show that its communications with a third-party such as Perini are protected, Safeco must show that Perini is an agent of Safeco or has "assumed the functions and duties" of a full-time Safeco employee such that it is a "*de facto* employee." *Abu Dhabi*, 2011 WL 4716334, at *2. (quoting *Export-Import Bank*, 232 F.R.D. at 113).  However, the only fact Safeco offers in this regard is that it retained Perini, "in part, to assist with its evaluation of potential loss exposure."[9]  Safeco's Motion in Opposition at 17.  Safeco does not give any indication why Perini should be deemed an agent or *de facto* employee of Safeco.  *See Abu Dhabi*, 2011 WL 4716334, at *2.  Therefore, communications between Safeco and Perini are not covered by the attorney-client privilege and must be produced.

        2. CSF's "consultant reports"

---

[9] Vivian Katsantonis, a lawyer at WTHF, also stated that

> Safeco and WTHF further hired Perini as a non-testifying expert with respect to various issues on the HEPFF and ERDL [two of the bonded projects].  In this regard, Perini completed certain cost estimates that were used by WTHF in order to render legal advice to Safeco.  Moreover, WTHF provided legal advice to Safeco and Perini at various times throughout the proceedings in order to facilitate Perrini's successful performance of assigned duties.

Katsantonis Affidavit at ¶ 16.  As noted above, Safeco's burden to prove the privilege applies cannot be "discharged by mere conclusory or ipse dixit assertions." *Bowne*, 150 F.R.D. at 470.

Defendants challenge Safeco's withholding of CSF's "consultant reports" as work-product on the ground that "Safeco has not met its burden of demonstrating that the reports were prepared 'because of' litigation." Specifically, defendants argue that "Safeco would have undertaken its investigation of the underlying projects irrespective of whether litigation was anticipated." In support of their position, defendants refer to three CSF invoices produced by Safeco that show that CSF "was involved exclusively in construction management" and "performed technical analysis of the projects' claims." Defendants' Motion to Compel at 15–16.

In response, Safeco contends that it and CSF had prepared these "documents and analyses" in anticipation of litigation resulting from potential loss exposure under the bonds. As evidence for this assertion, Safeco states that it retained CSF as a surety consultant "in anticipation that MES' default termination would lead to extensive disputes and litigation." Safeco's Opposition at 10. Safeco states, through the affidavit of Vivian Katsantonis, that CSF was hired "for the joint purpose of assisting with claims analyses . . . and to serve in a construction management role." Katsantonis also asserts that Safeco and WTHF directed CSF "to perform tasks, analyses and services . . . upon which WTHF relied in issuing legal advice to Safeco and which were performed in anticipation that litigation would arise out of the Corps' default termination of the MES and Hirani Defendants." Katsantonis Affidavit at ¶¶ 11–13.

Courts in the Second Circuit have applied the work-product doctrine to documents created by third-party consultants. *See, e.g.*, *William A. Gross Constr. Ass'n v. Am. Mfrs. Mut. Ins. Co.*, 262 F.R.D. 354 (S.D.N.Y. 2009); *In re Copper Market*, 200 F.R.D. 213; *cf. AIU Ins. Co. v. TIG Ins. Co.*, 07 CV 7052 (SHS) (HBP), 2008 WL 4067437 (S.D.N.Y. Aug. 28, 2008) (applying the work-product doctrine to a defendant insurance company's claims files).

11

In *Gross Construction Association*, the court denied a motion to compel production of documents pertaining to a claims analysis performed by a non-party consultant. The court concluded that the documents were protected work-product over the defendant's objection that the claims consultant "was performing the same sort of ordinary business review of contractor claims" that was done by a previous construction company. The court found relevant that the claims consultant was not involved with construction management work and did not have contact with contractors. Moreover, the court noted that unlike the continuous involvement of the construction management group, the claims consultant was "involved [in] a short-term assignment that was scheduled to end . . . about three weeks before [the] litigation commenced." *See Gross*, 262 F.R.D. at 362–63. In addition, the claims analyses included "a particular possible litigation position" and "performed a litigation analysis" of certain documents. *Id.* at 364. Taken together, these facts established that the third-party documents containing a claims analysis were protected work-product *because* they were created in anticipation of litigation, and not in the ordinary course of business. *Id.* at 365.

Similarly, in *In re Copper*, the court denied a motion to compel production of documents created by a public relations firm hired in the wake of a trading scandal. The court held that, through a combination of the withholding party's privilege log and affidavits submitted by the public relations firm, it was clear that the materials were prepared "in the context of litigation." *Id.* at 221. In support of this conclusion, the court noted, among other things, that the public relations firm "specialized in litigation-related crisis management," that the firm was hired "when it was apparent" that a government agency might commence an enforcement action, and that the materials were prepared "in collaboration with" the client's attorney. *Id.*

12

Here, Safeco asserts in conclusory fashion that it hired CSF in anticipation of litigation. However, the party asserting the work-product doctrine must rely on more than conclusory allegations to discharge its burden.  *See Gross*, 262 F.R.D. at 360; *Bowne*, 150 F.R.D. at 474. Safeco also states that CSF was hired, in part, to analyze claims.  However, as the above cases demonstrate, there is no presumption that a claims analysis is protected work-product; rather, whether material is protected turns on the specific facts of the case.  *See Gross*, 262 F.R.D. at 362–65; *In re Copper*, 200 F.R.D at 221.  The pertinent question remains to be whether, under the specific facts of the case, the claims analysis would have been created because of anticipated litigation or whether it would have been created in the ordinary course of business.  In fact, in the context of an insurance company's claims file, since insurance companies routinely investigate and evaluate claims, "it is particularly important that the party opposing production of the documents, on whom the burden of proof as to privilege rests, demonstrate by specific and competent evidence that the documents were created in anticipation of litigation." *See AIU Ins. Co.*, 2008 WL 4067437, at *13 (citation omitted).

Safeco does not offer any facts to this effect.  The fact that CSF was also hired in a capacity as construction manager further suggests that any type of presumption of protection is not appropriate here.  *See Gross*, 262 F.R.D. at 362–63 (noting that the claims analyst group had no interaction with the construction management group); *In re Copper*, 200 F.R.D at 221 (noting that the firm specialized in litigation-related matters).  Thus, under the facts provided, Safeco has not met is burden of showing that documents created by CSF are entitled to work-product protection.

B.  *Safeco's Internal Claims Manuals and Procedures*

13

Safeco objects to the defendants' request for its internal claims manuals and procedures ("claims manuals").  Safeco argues that Defendants are not entitled to these materials because (1) they are not relevant and (2) they are privileged attorney-client communications and protected work product.  Safeco argues that the claims manuals are not relevant because MES has not demonstrated that a departure from Safeco's claims procedures would constitute evidence of bad faith.  As to the privilege and work-product claims, Safeco argues that the claims procedures used by Safeco representatives go to "the very core" of Safeco's legal strategy and "inherently contain direction for not only resolving claims in the ordinary course of business, but for determining when to pursue alternative resolutions or litigation." Safeco's Opposition at 21–22.  Defendants respond that the claims manuals are relevant to their bad-faith argument because they cannot prove bad faith on Safeco's part without knowing how Safeco usually handles its claims.  Defendants also object to Safeco's claims of attorney-client privilege and the work-product doctrine.  Defendants' Reply at 14.

     *a.*  Relevancy

The court finds that the claims manuals should be produced because they are relevant to defendants' claim that Safeco acted in bad faith.  *See* Fed. R. Civ. P. 26(b)(1); *Mid-Continent Cas. Co. v. Eland Energy, Inc.*, No. 3:7 MC 78 (CFD), 2007 WL 948154, at 1 (D. Conn. Mar. 26, 2007) (finding that documents concerning an insurance company's handling of particular claims are relevant to, *inter alia*, allegations of bad faith); *U.S. Fire Ins. Co. v. Bunge N. Am., Inc.*, 244 F.R.D. 638, 642 (D. Kan 2007) (upholding a magistrate judge's ruling that an insurer's claims manuals could lead to the discovery of admissible evidence relating to the insurers' alleged bad faith); *Evans v. United Servs. Auto. Ass'n*, 541 S.E.2d 782, 792 (N.C. App. 2001)

14

(affirming lower court's order that insurance company must produce its claims procedure manual because the court could not "say as a matter of law that the information sought is not 'reasonably calculated' to lead to the discovery of admissible evidence").  Safeco has not met its burden to show that its claims manual is not relevant.  *See Cohalan v. Genie Indus., Inc.*, 276 F.R.D.161, 166 (S.D.N.Y. 2011) ("Generally, the burden is on the party resisting discovery to clarify and explain precisely why its objections are proper given the broad and liberal construction of the federal discovery rules.") (quotation marks and citation omitted).

Safeco's reliance on *Garvey v. Nat'l Grange Mut. Ins. Co.*, 167 F.R.D. 391, 396 (E.D. Pa. 1996), for the principle that claims procedures are not relevant to allegations of bad faith is misplaced.  As made clear by another court in that district, *Santer v. Teachers Ins. & Annuity Ass'n*, 06 CV 1863, 2008 WL 755774, at *2 (E.D. Pa. Mar. 18, 2008), courts have disallowed discovery of an insurance company's claims manuals when a plaintiff alleges a broad corporate policy of bad faith—but not when a plaintiff alleges that a bad faith policy was applied to the specific plaintiff.  Here, defendants claim that Safeco acted in bad faith in applying its own procedures to these particular defendants, and so the *Garvey* case is distinguishable.[10]

    *b.*  Attorney-Client Privilege/Work-Product Doctrine

Safeco's contention that its claims manuals are covered by the attorney-client privilege or work-product rule is also unconvincing.  Safeco does not cite to any rule providing that internal claims manuals are privileged or protected work-product.  Instead, Safeco cites to two cases—

---

[10] Safeco's reliance on *Gov't Emp. Ins. Co. v. Rodriguez*, 960 So.2d 794 (Fla. App. 3d Dist. 2007) is also misplaced because in that case the cause of action was brought under a Florida bad faith statute.  The court there held that, under the statute, "a party is not entitled to discovery of an action for insurance benefits combined with a bad faith action until the insurer's obligation to provide coverage has been established."  *Id.* at 795–96.

one from a state court in Florida and the other from a federal court in Indiana—where insurance claims manuals were among the materials found to be privileged or work-product protected. *See* Safeco's Opposition at 22 (citing *State Farm Florida Ins. Co v. Gallmon*, 835 So.2d 389, 390 (Fla. Dist. Ct. App. 2003) and *Bartlett v. State Farm Mut. Auto. Ins.*, 206 F.R.D. 623 (S.D. Ill 2002)). This court is not bound by those decisions and, in any event, does not find them applicable to the situation here.

The *Gallmon* case did not provide any reasoning into why the insurance claim files were protected work-product, but rather, simply cited to a another case where that court found that surveillance photographs, witness statements, and repair estimates contained in a claims file were covered by the work-product doctrine. *See Gallmon*, 835 So.2d at 390 (citing *State Farm Fire & Cas. Co. v. Valido*, 662 So.2d 1012 (Fla. Dist. Ct. App. 1995)). The *Bartlett* case addressed a situation where a defendant sought to withhold correspondence—which was contained in a claims file—with its trial counsel from a prior case. The court there found that the defendant presented sufficient evidence that these communications were covered by the attorney-client privilege and work-product doctrines. 206 F.R.D. at 627–29. In both those cases, the materials covered by the attorney-client privilege or work-product doctrine had discernible litigation-related characteristics. Safeco does not make a similar showing here.

Safeco's assertion that its claims manuals "go to the very core" of its "legal strategy" is not enough, on its own, to establish that it was made within the context of a confidential attorney-client relationship for the purpose of obtaining legal advice. *See Abu Dhabi*, 2011 WL 4716334, at *2. Moreover, Safeco admits that its claims manuals "inherently contain direction

16

for . . . resolving claims in the ordinary course of business," which cuts against a finding that its claims manuals were prepared in anticipation of litigation.  *See id.* at *3.

The court finds that Safeco's claims manuals are relevant and not protected by the attorney-client privilege or work-product doctrine.  Accordingly, Safeco must produce its claims manuals to defendants.[11]

C.  *Documents Created During the Period of Alleged Dual Representation of Safeco and Defendants by WTHF*

Defendants object to Safeco's withholding of certain documents that were created during the period in which WTHF allegedly represented both Safeco and the defendants under a claim of work-product production.  Specifically, defendants argue that "Safeco makes the untenable argument that it was contemplating litigation against MES at the same time MES was relying on WTHF at Safeco's urging."  Defendants' Motion to Compel at 1.  The court construes this argument as inextricably tied to defendants' motion to disqualify, which this court has held in abeyance pending the outcome of the current discovery motions.  (*See* Dkt. Minute Entry on July 6, 2011.)  It would therefore be inappropriate to address this motion at this time and on this factual record.

3. Safeco's Motion to Compel Documents Relating to Defendants' Assignment of Claims and Books and Records

---

[11] Safeco also objects to production of its claims manuals on the ground that it constitutes propriety information protected from disclosure by Fed. R. Civ. P. 26(c)(1)(G).  *See* Safeco's Opposition at 22.  Safeco offers nothing except for the conclusory assertion that its claims manuals are entitled to protection, and its request is therefore denied.  *See Nycomed U.S., Inc. v. Glenmark Generics, Inc.*, No. 08 CV 5023 (CBA), 2010 WL 889799, at *6 (E.D.N.Y. Mar. 8, 2010) (holding that a "conclusory assertion of confidentiality does not come close to satisfying [the trade secret standard] and does not outweigh the strong presumption of public access").

Safeco challenges defendants' withholding of "documents related to" the provisions of the indemnity agreement granting Safeco (1) an assignment of defendants' claims and (2) the right to access defendants' "books and records."  In essence, Safeco argues that since it has the right to defendants' assigned claims and access to its books and records, it is also entitled to the documents relating thereto.  In support of this position, Safeco argues that defendants have an implied duty to cooperate with Safeco regarding its rights under the agreement.  Safeco's Motion to Compel at 8.

In response, defendants argue that Safeco is not entitled to documents relating to the assignment of their claims that would otherwise be covered by the attorney-client privilege.  As to the documents related to the books and records, defendants contend that the indemnity agreement only asks for "books and records," which they have already produced, and does not obligate it to produce the documents relating to the books and records.  Defendants' Motion in Opposition at 2.

Under the liberal relevancy standard of the Federal Rule of Civil Procedure 26, Safeco is entitled to receive documents relating to the assigned claims and the books and records.[12]  *See* Fed. R. Civ. Proc. 26(b) ("Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense . . . ."); *Pegorano v. Marrero*, No. 10 CV 051 (VM) (KNF), 2011 WL 5223652, at *3 (S.D.N.Y. Nov. 2, 2011) ("The scope of discovery under Fed. R. Civ. P. 26(b) is very broad, encompassing any matter that bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in the case.") (quoting

---

[12] MES conceded as much in its October 22, 2010 letter to this court, when MES wrote that documents relating to the ASBCA proceedings are not relevant "at this time" because Judge Ross had not yet granted Safeco's request for assignment of claims.  (Dkt. No. 111.)

*Maresco v. Evan Chemetics, Div. of W.R. Grace & Co.*, 964 F.2d 106, 114 (2d Cir. 1992)). The documents relating to defendants' claims against third-parties (e.g., the Corps), and the documents relating to defendants' books and records could, at the very least, lead to other matters that bear on this case, such as which party is ultimately responsible for the default and the financial condition of the MES and Hirani defendants. Safeco has not satisfied its burden to persuade the court otherwise. *See Cohalan*, 276 F.R.D. at 166.

The more difficult question is whether defendants are able to assert a privilege over documents related to assigned claims and books and records. The parties have not cited a New York or Second Circuit case directly on point. Indeed, courts from other jurisdictions are split on this issue. *See Excess Ins. Co., Ltd. v. Saunee*, No. 95 CV 3024, 1996 WL 409224, at *2 (E.D. La. July 19, 1996) (noting some authority for the principle that an assignee "stands in the shoes" of the assignor in a privilege analysis and other cases that "hold exactly the opposite").

New York courts have addressed the somewhat analogous issue in the context of corporate acquisitions, where the question is whether the attorney-client privilege transfers to a corporation's new owners. *See Orbit One Commc'ns v. Numerex Corp.*, 255 F.R.D. 98, 104 (S.D.N.Y. 2008) (citing *Tekni-Plex, Inc. v. Meyner and Landis*, 89 N.Y.2d 123 (1996)).[13] Significantly, even in those circumstances where the successor company is deemed to have

---

[13] The rule under New York state law is:

> If the transaction is nothing more than an asset transfer, the successor company does not acquire the former company's privilege. Conversely, 'where efforts are made to run the pre-existing business entity and manage its affairs, successor management stands in the shoes of prior management and controls the attorney-client privilege with respect to matters concerning the company's operations.

*Orbit One*, 255 F.R.D. at 104 (quoting *Tekni-Plex.*, 89 N.Y.2d at 133) (internal citations omitted).

acquired the predecessor's privilege, New York courts have carved out an exception for confidential communications related to the acquisition itself.  *See Orbit One*, 255 F.R.D. at 105 (discussing *Tekni-Plex*, 89 N.Y.2d at 135–36).  Otherwise, the successor company would have access to the confidential information of its direct adversary in the recently concluded negotiations.  *See id*.  Such a scenario, the courts reason, "would significantly chill attorney-client communication during such transactions."  *Id.*

The same concerns are present in this case.  If Safeco were to acquire the defendants' documents relating to the assignment of claims (or books and records) irrespective of defendants' claims of privilege, then Safeco would have access to the confidential information of its direct adversary in the current litigation.  As in the context of corporate acquisitions, this result would significantly chill attorney-client communications in future indemnification negotiations.  Moreover, the court is reluctant to imply such a provision into the parties' agreements when the parties could have provided it expressly.[14]

Based on the foregoing, Safeco is entitled to the documents relating to the assignment of claims and those relating to the books and records subject to any claims of attorney-client privilege or work-product doctrine over those documents.

---

[14]*See VIA Techs. v. SonicBlue*, 782 F. Supp. 2d 843, 876 (N.D. Ca. 2011) (finding that "a duty to disclose privileged information cannot be implied from . . . [the] agreement [at issue in the case]"); *In re Hicks*, 252 S.W.3d 790, 794 (Tex. App. 2008) ("An assignment of rights and claims does not automatically include a waiver of attorney-client privilege unless specifically stated in the language of the assignment.").

## <u>CONCLUSION</u>

Defendants' and Safeco's motions to compel are granted, subject to the limitations of a properly asserted claim of attorney-client privilege or work product protection set forth above.

**SO ORDERED**

**Dated: December 6, 2011**

**Brooklyn, New York**

/s/ ALC

_____

**ANDREW L. CARTER, JR.**

**UNITED STATES MAGISTRATE JUDGE**