D1F

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------- X
:
SAFECO INSURANCE COMPANY OF AMERICA,   :   09-CV-3312 (ARR)(VMS)
:
Plaintiff,   :   NOT FOR ELECTRONIC
:   OR PRINT PUBLICATION
-against-   :
:   MEMORANDUM AND
M.E.S., INC., M.C.E.S., INC., HIRANI ENGINEERING & :   ORDER
LAND SURVEYING, P.C., HIRANI/MES, JV, GEORGE :
MAKHOUL, JITENDRA S. HIRANI, and SARITA   :
HIRANI,   :
:
Defendants.   :
:
---------------------------------------------------------------- X

ROSS, United States District Judge:

Defendants M.E.S., Inc., M.C.E.S., Inc., and George Makhoul ("defendants" or "MES") appeal two non-dispositive orders of Magistrate Judge Vera M. Scanlon. Their complaints primarily allege legal error relating to multiple documents ruled privileged. First, defendants argue that Judge Scanlon erred in conducting in camera review of certain documents in the possession of plaintiff Safeco Insurance Company of America ("Safeco"), which she subsequently ruled were protected by attorney-client privilege and work product privilege; second, defendants argue Judge Scanlon misapplied the Second Circuit's decision in United States v. Adlman, 134 F.3d 1194 (2d Cir. 1998), when determining that some of the documents were protected by work product privilege. Finally, defendants argue that Judge Scanlon's orders are internally inconsistent. Because I find that Judge Scanlon neither failed to apply nor misapplied the relevant law, I deny both of defendants' appeals.

1

## BACKGROUND

I assume familiarity with the facts of the case from previous orders. Of relevance here, on August 17, 2011, MES filed a motion for discovery of documents that Safeco claimed were privileged before then-Magistrate Judge Andrew L. Carter. Dkt. #174. Safeco simultaneously filed its own motion to compel. Dkt. #175. Safeco resisted MES's motion to compel on the grounds that the documents "plainly constitute work product prepared by Safeco or its representatives in anticipation of litigation and attorney-client communications between Safeco and its counsel." Dkt. #178, at 1. MES disputed Safeco's claim of privilege for multiple reasons, but most relevant here is the fact that Safeco shared documents with its third-party surety consultant, Cashin, Spinelli & Ferretti LLC ("CSF"), Dkt. #174-4, at 12, and its takeover contractor, Perini Corporation ("Perini"), id. at 13. Both MES and Safeco urged Judge Carter to conduct an in camera review of the documents to determine whether they should be produced or not. See id. at 3 ("Safeco should be required to produce the documents identified in this brief to the court for inspection."); Dkt. #178, at 10 n.5 (noting Safeco documents are "available for in camera review by the Court as the Court may deem necessary").

On December 6, 2011, Judge Carter issued an order "set[ting] forth the applicable standards that the parties must meet in order to assert the attorney-client privilege or work-product doctrine." Dkt. #185, at 3. The order went on to explain that both parties' privilege logs were not adequately detailed. Id. at 7-9. Judge Carter did not conduct in camera review of the documents. However, he held that an affidavit submitted by one of Safeco's attorneys was insufficient to establish that Perini was an agent of Safeco, such that communications between Safeco and Perini would be protected by the attorney-client privilege (he did not rule as to work

2

product privilege for the Perini documents). Id. at 10. With respect to whether the work product privilege covered CSF's "consultant reports," id. at 11, Judge Carter explained the legal standard and stated, "[U]nder the facts provided, Safeco has not met i[t]s burden of showing that documents created by CSF are entitled to work-product protection." Id. at 13.

Two days after Judge Carter issued his order, he became United States District Judge for the Southern District of New York. The Southern District's gain was MES's loss, however, because Judge Scanlon, who ultimately took over the case, reversed Judge Carter's order. On a motion for reconsideration by Safeco, Dkt. #195, Judge Scanlon undertook in camera review of the documents at issue, which, she noted, "effectively grants the kind of review that both sides sought on the initial matter but which the Court did not conduct at the time." Dkt. #249, at 6. In a pair of orders, Dkt. #228 & 249, she determined, based on her in camera review, that Perini was, in fact, Safeco's agent. Dkt. #249, at 9-10. Accordingly, she ruled, the Perini documents were protected by attorney-client privilege. Id. at 13-17.

With respect to work product privilege, Judge Scanlon noted that documents "prepared both for litigation and business purposes may be protected" by the privilege, "but if the material was prepared in the ordinary course of business or would have been created in essentially similar form irrespective of the litigation, then it is not afforded protection." Id. at 11 (quoting Adlman, 134 F.3d at 1202) (internal quotation marks omitted). She further noted that determining whether a document was produced in anticipation of litigation was especially difficult in insurance cases, since the potential for litigation always exists when an insurance company investigates a claim; nevertheless, the work product doctrine may be applied following a "fact-sensitive inquiry by the Court." Id. at 11-12 (quoting Magee v. Paul Revere Life Ins. Co., 172

F.R.D. 627, 640 (E.D.N.Y. 1997)) (internal quotation marks omitted). Applying these principles to her in camera review of the Perini documents, Judge Scanlon found they were prepared in anticipation of litigation, and were thus protected by work product privilege. Id. at 13-17.

MES moved separately to compel the production of thirty-five documents, including documents shared with Perini and CSF. Dkt. #202. Judge Scanlon again conducted in camera review of the documents and held discovery hearings. See Dkt. #253, at 2. She granted MES's motion in part and denied it in part. Id. Among the documents Judge Scanlon held were privileged, all but four were protected by either attorney-client privilege or both attorney-client and work product privilege. See id. at 3-11. Only three documents were protected solely by work product privilege. Id. at 4-5 (S-677, S-801, C-106).[1]

Defendants now appeal Judge Scanlon's reconsideration of Judge Carter's order, as well as her order on the motion to compel, to the extent that it denied their motion.

## DISCUSSION

I. *Standard of Review*

Rule 72(a) and the Federal Magistrates Act establish that a district court shall reverse a Magistrate Judge's order regarding a non-dispositive matter only where the order is "clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a). Because pretrial discovery matters are generally considered "non-dispositive," they are reviewed under this "clearly erroneous" standard. See Thomas E. Hoar, Inc. v. Sara Lee Corp., 900 F.2d 522, 525 (2d Cir. 1990); Popular Imports, Inc. v. Wong's Int'l, Inc., 166 F.R.D. 276, 277 (E.D.N.Y. 1996).

---

[1] Judge Scanlon deferred decision on the sole remaining document that she observed might be protected by work product privilege, S-14, see id. at 3, but Safeco subsequently produced this document with a redaction, see Dkt. #269, at 2.

A party seeking to overturn a magistrate judge's discovery order bears a "heavy burden." Perez v. Consol. Edison Co., No. 02 Civ. 2832(SAS), 2003 WL 22586492, at *2 (S.D.N.Y. Nov. 7, 2003) (citing Com-Tech. Assocs. v. Computer Assoc. Int'l, 753 F. Supp. 1078, 1079 (E.D.N.Y. 1990), aff'd, 938 F.2d 1574 (2d Cir. 1991)). A finding is "clearly erroneous" if the reviewing court is "left with the definite and firm conviction that a mistake has been committed." Easley v. Cromartie, 532 U.S. 234, 242 (2001) (quoting United States v. U.S. Gypsum Co., 333 U.S. 364, 395 (1948)) (internal quotation marks omitted). A finding "is 'contrary to law' 'when it fails to apply or misapplies relevant statutes, case law or rules of procedures.'" MacNamara v. City of N.Y., 249 F.R.D. 70, 77 (S.D.N.Y. 2008) (quoting Thompson v. Keane, No. 95 Civ. 2442(SHS), 1996 WL 22987, at *1 (S.D.N.Y. May 6, 1996)). Under this "highly deferential standard of review," magistrate judges are "'afforded broad discretion in resolving discovery disputes and reversal is appropriate only if their discretion is abused.'" Lyondell-Citgo Ref., LP v. Petroleos de Venez., S.A., No. 02 Civ. 0795(CBM), 2005 WL 1026461, at *3 (S.D.N.Y. May 2, 2005) (quoting Derthick v. Bassett-Walker Inc., Nos. 90 Civ. 5427 (JMC), 90 Civ. 7479 (JMC) and 90 Civ. 3845 (JMC), 1992 WL 249951, at *8 (S.D.N.Y. Sept. 23, 1992); see also Perez, 2003 WL 22586492, at *2.

II. *Grounds for Appeal*

MES does not quarrel with any of Judge Scanlon's specific findings based on her in camera review of the Perini and CSF documents. Instead, defendants raise the following arguments with respect to Judge Scanlon's orders on both reconsideration of Judge Carter's order and her order denying in part MES's motion to compel: (1) Judge Scanlon erred in reconsidering Judge Carter's order on the basis of in camera review of Safeco's documents. Dkt. #262-1, at

13-15. (2) Judge Scanlon misapplied Second Circuit case law in her determination as to work product privilege, because she did not determine whether the documents would have been created in essentially similar form irrespective of litigation. Dkt. #262-1, at 15-18; Dkt. #263-1, at 3-6. (3) Judge Scanlon's orders are internally inconsistent because they hold the CSF documents are privileged work product while "leav[ing] untouched," Dkt. #262-1, at 20, Judge Carter's finding that Safeco had not met its burden of showing that the CSF documents were entitled to work product protection. Id.; Dkt. #263-1, at 6.[2] I address each point briefly:

(1)  In Camera Review

MES complains that Judge Scanlon should not have conducted in camera review of the Perini document because "[t]he issue . . . was squarely before Magistrate [Judge] Carter, yet he declined to conduct the in camera inspection." Dkt. #262-1, at 14. MES argues that because the decision whether to conduct in camera review is within the sound discretion of the court, Judge Scanlon could not have conducted in camera review unless she found that Judge Carter abused his discretion. Id.

This argument misconstrues the standard for reconsideration. Reconsideration may be granted if the moving party can point to "controlling decisions or data that the court overlooked-matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." Shrader v. CSX Transp., Inc., 70 F.3d 255, 257 (2d Cir. 1995). This standard does not

---

[2]MES also contends within its first argument that Safeco never raised work product privilege as to the Perini documents at issue in Judge Scanlon's reconsideration order. See Dkt. #262-1, at 11-13. However, even presuming this were true (a presumption easily rebutted by the invocations of the work product privilege in Safeco's memorandum in opposition to the motion to compel before Judge Carter, see Dkt. #178), it is immaterial because Judge Scanlon ruled the Perini documents were protected both by the work product privilege and the attorney-client privilege.

become more or less stringent simply because the case is reassigned to a different judge. See Dandong v. Pinnacle Performance Ltd., No. 10 Civ. 8086(JMF), 2012 WL 6217646, at *2 (S.D.N.Y. Dec. 3, 2012).

Here, Judge Scanlon applied the correct standard and found that reconsideration was warranted based on in camera review of the documents at issue. Dkt. #249, at 6-7. The fact that Judge Carter did not conduct in camera review of the Perini documents means, ipso facto, that he "overlooked" material in the documents, which both parties proposed making available to the court.[3] In camera review is "a practice both long-standing and routine in cases involving claims of privilege." In re Grand Jury Subpoenas Dated Mar. 19, 2002 & Aug. 2, 2002, 318 F.3d 379, 386 (2d Cir. 2003); see, e.g., In re Dow Corning Corp., 261 F.3d 280, 282-83 (2d Cir. 2001) (submitting documents to district court for in camera review of attorney-client and work product claims); In re Richard Roe, Inc., 168 F.3d 69, 71 (2d Cir. 1999) (reviewing documents in camera to evaluate claims of attorney-client and work product protection); Adlman, 134 F.3d at 1204 (conducting in camera review of memorandum for which work product protection was asserted); In re Six Grand Jury Witnesses, 979 F.2d 939, 942 (2d Cir. 1992) (reviewing cost analyses in camera where witnesses claimed preparation was at behest of counsel and constituted work product); In re Grand Jury Subpoenas Dated Oct. 22, 1991 & Nov. 1, 1991, 959 F.2d 1158, 1162, 1167 (2d Cir. 1992) (affirming district court's finding, after in camera review, that subpoenaed telephone company records did not constitute attorney work product). Accordingly, Judge

---

[3] It is not even clear from Judge Carter's order that he did, in fact, decide not to conduct in camera review, as defendants contend. The decision is tentative, contemplates further actions of the parties based on the principles set forth in the order, and nowhere does it preclude in camera review from being conducted later. Under either interpretation of Judge Carter's order, however, Judge Scanlon's reconsideration based on in camera review is appropriate.

7

Scanlon's decision to review the documents, as requested by both Safeco and MES, and her reconsideration of Judge Carter's order based on that review, was neither "clearly erroneous" nor "contrary to law." 28 U.S.C. § 636(b)(1)(A).

(2) Work Product Privilege

MES's next argument is that Judge Scanlon misapplied circuit case law in her determination as to work product privilege, because she did not determine whether the documents would have been created in essentially similar form irrespective of litigation. Dkt. #262-1, at 15-18; Dkt. #263-1, at 3-6. In Adlman, the Second Circuit rejected the requirement that documents be produced "primarily or exclusively to assist in litigation" in order to be protected by the work product privilege. 134 F.3d at 1198. The court instead adopted the formulation of the Wright & Miller treatise, that documents should be deemed prepared in anticipation of litigation when they were prepared "because of" litigation, id. at 1202 (citing 8 Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, Federal Practice and Procedure § 2024 (1994)), even if the documents were also created in order to assist with a business decision, id. However, the court warned, "it should be emphasized that the 'because of' formulation that we adopt here withholds protection from documents that are prepared in the ordinary course of business or that would have been created in essentially similar form irrespective of the litigation." Id. MES argues that Judge Scanlon did not apply this rule of law and did not determine, before deciding the documents were prepared in anticipation of litigation, that they would not have been created in essentially similar form irrespective of litigation.

To be sure, courts must be careful in cases involving insurance and surety disputes "not to hold that documents are protected form discovery simply because of a party's 'ritualistic

8

incantation' that all documents created by insurers are made in preparation for litigation." Weber v. Paduano, No. 02 Civ. 3392(GEL), 2003 WL 161340, at *4 (S.D.N.Y. Jan. 22, 2003); accord U.S. Fid. & Guar. Co. v. Braspertro Oil Servs. Co., Nos. 97Civ.6124 (JGK)(THK), 98Civ.3099 (JGK)(THK), 2000 WL 744369, at *12-13 (S.D.N.Y. June 8, 2000) (applying Aldman to documents prepared in course of surety investigation). "Because all insurance investigations are likely performed with an eye towards the prospect of future litigation, 'it is particularly important that the party opposing production . . . demonstrate by specific and competent evidence that the documents were created in anticipation of litigation.'" QBE Ins. Corp. v. Interstate Fire & Safety Equip. Co., No. 3:07cv1883 (SRU), 2011 WL 692982, at *3 (D. Conn. Feb. 18, 2011) (quoting Weber, 2003 WL 161340, at *4). In assessing work product privilege in such a context, courts in this circuit "have declined to follow any per se rule." Weber, 2003 WL 161340, at *6. Instead, courts engage in a "fact-sensitive inquiry," Magee, 172 F.R.D. at 640, to determine whether a document may be protected as work product. See U.S. Fid. & Guar. Co., 2000 WL 744369, at *9 n.7 (citing cases in which courts undertake a "fact-specific determination").

It is plain from Judge Scanlon's orders that she was acutely aware of the relevant case law and engaged in just the sort of fact-sensitive inquiry that other courts follow. Judge Scanlon quoted directly the passage from Adlman that defendants now contend she ignored. Dkt. #249, at 11. She cited a decision of Magistrate Judge James Orenstein discussing the difficulty of determining whether documents constitute work product in insurance cases. Id. at 11-12. Moreover, in the hearing on the motion to compel underlying Judge Scanlon's order at Dkt. #253, MES presented argument on precisely whether the CSF documents would have been created as part of a normal surety investigation. Dkt. #263-2, at 4. Judge Scanlon thus

9

considered the relevant legal principles when she conducted her in camera investigation of each document. MES complains that it was "erroneous for the court to have made its work product rulings without first determining a benchmark from which to determine what part of Safeco's investigation was in the ordinary course of business and would have been conducted irrespective of litigation." Dkt. #263-1, at 5. But neither the case law of the circuit nor that of my sister district courts requires a court to first determine such a "benchmark" – only a fact-sensitive inquiry is required. Judge Scanlon plainly engaged in such an inquiry, reviewing each document, after taking into consideration the legal standard and the difficulty of applying it to a case such as this one. Accordingly, I cannot say her rulings were clearly erroneous or contrary to law.

(3)   Internal Consistency of Judge Scanlon's Orders

Finally, MES argues Judge Scanlon's orders are internally inconsistent because they determined some of the documents were privileged work product while "leav[ing] untouched," Dkt. #262-1, at 20, Judge Carter's finding that Safeco had not met its burden of showing that the CSF documents were entitled to work product protection. Id.; Dkt. #263-1, at 6. This argument is unavailing. First, as noted above, Judge Scanlon ruled all but four documents (one of which Safeco eventually produced in redacted form) were protected by both attorney-client and work product privilege, so MES's argument touches only three documents. Second, and more importantly, the ruling of Judge Carter on which defendants rely stated, "Thus, under the facts provided, Safeco has not met i[t]s burden of showing that documents created by CSF are entitled to work-product protection." Dkt. #185, at 13 (emphasis added). The emphasized clause makes clear that the ruling was based on the facts then before Judge Carter; in other words, excluding the facts revealed by in camera review. As has now been repeated enough, Judge Scanlon's

10

rulings were based on her in camera review of the documents. Therefore, her finding that the CSF documents were protected by work product privilege is not in any way inconsistent with Judge Carter's finding that absent in camera review, Safeco had not established work product protection. Judge Scanlon's orders are internally consistent and display no clear error that would warrant reversal.

## CONCLUSION

For the foregoing reasons, defendants' appeals of Judge Scanlon's orders, Dkt. # 228, 249 & 253, are denied.

SO ORDERED.

s/ ARR

Allyne R. Ross
United States District Judge

Dated: April 16, 2013
Brooklyn, New York